UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br>ALLSTATE INDEMNITY COMPANY,<br>ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, AND<br>ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>ADVANCED RECOVERY EQUIPMENT AND SUPPLIES LLC,<br>ARES MEDICAL SUPPLIES LLC,<br>JONATHAN LEWIN, MD P.C.,<br>   a/k/a "CENTER FOR MUSCULOSKELETAL DISORDERS"<br>   a/k/a "CENTER FOR PAIN MANAGEMENT OF NEW JERSEY"<br>   a/k/a "CENTER FOR SPINAL DISORDERS OF NEW JERSEY"<br>   a/k/a "CENTER FOR HAND DISORDERS OF NEW JERSEY"<br>BROOKLYN PREMIER ORTHOPEDICS AND PAIN MANAGEMENT PLLC,<br>   f/k/a "BROOKLYN PREMIER ORTHOPEDICS, PLLC"<br>FJ ORTHOPAEDICS AND PAIN MANAGEMENT PLLC<br>   f/k/a "FJ ORTHOPAEDICS, PLLC"<br>BERGENFIELD SURGICAL CENTER, LLC,<br>INTERSTATE CAPITAL PARTNERS, LLC,<br>STEVEN HOROWITZ, M.D.,<br>JONATHAN LEWIN, M.D.,<br>RAZ WINIARSKY, M.D.,<br>JONATHAN SIMHAEE, M.D., AND<br>DANIEL HOROWITZ,<br><br>Defendants. | C.A. No. |

## **PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire &

Casualty Insurance Company, and Allstate Property & Casualty Insurance Company (collectively,

"Allstate" and/or "plaintiffs"), by their attorneys, King, Tilden, McEttrick & Brink, P.C., allege as

follows:

1

## I.    **INTRODUCTION**

1.    Defendants Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D.,[1] and Daniel Horowitz took advantage of New York's No-Fault laws, whose protections provide eligible claimants with at least $50,000 in coverage for accident-related medical expenses and other losses ("No-Fault benefits").

2.    Claimants can assign their No-Fault benefits to medical providers, which enables providers to submit No-Fault bills directly to the claimants' insurers.

3.    The Defendants operated a series of entities named Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC"), FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC ("Brooklyn Premier"), Bergenfield Surgical Center PLLC ("Bergenfield"), Advanced Recovery Equipment and Supplies LLC ("Advanced Recovery"), and ARES Medical Supplies LLC ("ARES"), and used these entities to bill Allstate directly for No-Fault payments.

4.    The Defendants relied on a steady stream of No-Fault claimants because each new claimant represented another new opportunity to bill for medically unnecessary services at unlawfully excessive rates.

5.    The Defendants evaluated claimants and ordered them to undergo procedures and other treatments that the claimants did not need.

6.    The Defendants' orders generated massive medical fees, but the procedures and treatments were unwarranted and often ineffective.

---

[1] The term "Physician Defendants" means Horowitz, Lewin, Winiarsky, and Simhaee when used herein.

7.      The Defendants put profits ahead of patients, risking harm for the sake of additional billing.

8.      In one case, a New York patient died after undergoing surgery with Horowitz at a New Jersey ambulatory surgery center.[2]

9.      The patient allegedly sought treatment with Horowitz through Brooklyn Premier following an automobile accident; Horowitz ordered and performed surgery even though Lewin recommended against it; the patient allegedly went into cardiac arrest during or immediately after the procedure and remained in a coma until his death.

10.     In another case, a New York patient died following injection procedure performed by Horowitz.[3]

11.     The patient allegedly became violently ill from anesthesia that was administered in connection with a pain management injection performed by Horowitz, and died shortly thereafter.

12.     These allegations highlight the grave risks involved in the Defendants' scheme.

13.     The Defendants operated at several different locations around New York where they evaluated patients, and ordered them to undergo surgeries, injections and other needless treatments.

14.     The scheme was fueled by referrals between and among the Defendants' entities, which enabled them to bill separately for examinations, office-based procedures, surgeries, injections, facility fees, and durable medical equipment ("DME").

---

[2] *See Estate of Linford Miller v. Horowitz, et al.*, Docket No. BER-L-005730-19 (N.J. Sup. Ct.).

[3] *See Estate of Ronoldo Javier Rios v. Horowitz, et al.*, Index No. 507436/2018 (N.Y. Supreme Ct.).

15.     As part of the scheme, claimants were referred to ambulatory surgery centers in New Jersey for the procedures, including Bergenfield, which was owned by Horowitz, Lewin, Winiarsky, and Simhaee through an entity named Interstate Capital Partners LLC ("ICP").

16.     Sending claimants to Bergenfield for procedures allowed the Defendants to bill professional physician fees and facility fees each time.

17.     As with all the Defendants' referrals, claimants were sent to Bergenfield without input, and the Defendants' conflicting financial interests were never properly disclosed to claimants.

18.     The procedures at Bergenfield ("Bergenfield Procedures") produced massive fees.

19.     For example, the Defendants billed over $94,000 in connection with Bergenfield Procedures involving claimant R.M. (claim no. 0453964736):

| DATE OF SERVICE: | March 20, 2019 | April 3, 2019 |
|---|---|---|
| TREATING PROVIDER: | Simhaee | Simhaee |
| BILLING PROVIDER: | Lewin PC | Lewin PC |
| FACILITY: | Bergenfield | Bergenfield |
| PROCEDURE TYPE: | Facet joint injection | Facet joint injection |
| START TIME: | 7:33 am | 9:02 am |
| END TIME: | 7:36 am | 9:04 am |
| DURATION OF PROCEDURE: | 3 minutes | 2 minutes |
| PHYSICIAN FEE: | $51,464.58 | $33,695.54 |
| FACILITY FEE: | $4,350.56 | $4,750.58 |
| TOTAL FEE: | **$55,997.14** | **$38,446.12** |

20.     The Bergenfield Procedures also created opportunities to bill for unnecessary and expensive DME, such as continuous passive motion devices ("CPMs") and cold therapy units ("CTUs").

21.     The DME was billed through Advanced Recovery and ARES.

22.     Advanced Recovery and ARES were owned by Daniel Horowitz, the brother of Steven Horowitz, M.D.

4

23.     The familial relationship between Steven Horowitz, M.D. and Daniel Horowitz is significant because Advanced Recovery and ARES billed for DME prescribed by Steven Horowitz, M.D. or one of his companies (i.e., Brooklyn Premier, FJ Ortho, or Lewin PC).

24.     Advanced Recovery and ARES were not eligible to collect No-Fault payments in such cases because they failed to comply with applicable licensing requirements concerning the disclosure of financial interests.

25.     Advanced Recovery and ARES were also not eligible to collect No-Fault payments because they billed for medically unnecessary DME.

26.     Advanced Recovery and ARES's bills for CPMs and CTUs were fraudulent and non-compensable because these devices are ineffective and not medically necessary, especially where the procedures themselves were unwarranted and falsely justified.

27.     The Defendants seriously jeopardized the health, safety, and well-being of claimants through this scheme—their drive for profits unnecessarily exposed patients to serious bodily harm and worse.

28.     The Defendants' scheme also damaged Allstate through the submission of fraudulent No-Fault claims.

29.     The No-Fault claims were fraudulent because the Defendants were not eligible to seek or collect No-Fault payments.

30.     The Defendants were not eligible to collect No-Fault payments because they billed for unnecessary services and engaged in unlawful referrals.

31.     Throughout this scheme, the Defendants knew that Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES were ineligible to collect No-Fault payments, yet

5

they still created statutory claim forms (i.e., NF-3 bills), which falsely certified each entity's eligibility to collect No-Fault payments under New York law.

32.     Allstate reasonably relied on the facial validity of the records and bills mailed by Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES—and the representations contained therein—when making payments on Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES's No-Fault claims.

33.     The Defendants knew that Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES's No-Fault claims were false and fraudulent because the bills and documents submitted to Allstate in support of the claims misrepresented or omitted material facts about Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES's rights to be paid under New York's No-Fault laws.

34.     The success of the Defendants' scheme to defraud relied on the transmission to Allstate, through the U.S. Mail, of invoices, bills, and other No-Fault claim documents warranting Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES's eligibility to collect No-Fault payments under New York law.

35.     Allstate reasonably relied on the facial validity of Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES's documents—and the representations contained therein—when paying No-Fault claims submitted by (or on behalf of) Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES.

36.     By this Complaint, Allstate brings this action against the Defendants for: (a) violations of the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1961, *et seq.*; (b) common-law fraud; and (c) unjust enrichment.

37.    This action seeks actual damages of more than $819,000, which represent No-Fault benefit payments that Allstate was wrongfully induced to make to Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES during the course of this scheme.

38.    Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to Lewin PC, FJ Ortho, or Brooklyn Premier (or their agents) in connection with any No-Fault claims submitted to Allstate in connection with this scheme because (a) the services were not medically necessary and not causally related to the purported underlying motor vehicle accident, (b) the services involved unlawful referrals and undisclosed financial arrangements, and (c) the charges exceeded the amounts allowed under the applicable Fee Schedule.

39.    Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to Bergenfield (or its agents) in connection with any No-Fault claims submitted to Allstate in connection with Bergenfield Procedures because (a) the procedures and all related facility fees were not medically necessary and not causally related to an underlying accident, (b) the services involved unlawful referrals and undisclosed financial arrangements, and (c) the charges exceeded the amounts allowed under the applicable Fee Schedule.

40.    Allstate also seeks a declaration pursuant to 28 U.S.C. § 2201 that it is not legally obligated to make any further payments to Advanced Recovery or ARES (or any of their agents) in connection with any No-Fault claims submitted to Allstate in connection with this scheme because (a) the DME rented to claimants was unnecessary and ineffective, (b) the DME orders involved unlawful referrals and undisclosed financial arrangements, and (c) the rental fees were grossly and unlawfully excessive.

41.    All of the acts and omissions of the Defendants described throughout this Complaint were undertaken intentionally.

42.    The Defendants' fraudulent scheme was designed to elicit payment of automobile insurance contract proceeds from Allstate to, or for the benefit of, the Defendants.

43.    In each claim at issue in this Complaint, an Allstate automobile insurance contract was the platform upon which the Defendants sought—and in many instances obtained—payment for the healthcare and DME services that were not compensable under New York's No-Fault laws.

44.    The Defendants knew that the patients identified in this Complaint were eligible for insurance coverage pursuant to automobile insurance policies issued by Allstate.

45.    Allstate estimates that the Defendants purposely submitted to Allstate hundreds of bills on behalf of Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES knowing that none of the bills were lawfully compensable under prevailing New York law relative to No-Fault insurance coverage and reimbursement eligibility.

## II.    THE PARTIES

### A.    PLAINTIFFS

46.    Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company are corporations duly organized and existing under the laws of the State of Illinois, having their principal place of business in Northbrook, Illinois.

47.    At all times relevant to the allegations contained in this Complaint, Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company were authorized to conduct business in the State of New York.

B.    **DEFENDANTS**

1.    **Steven Horowitz, M.D.**

48.    Horowitz resides in and is a citizen of the State of New York.

49.    Horowitz is a physician and also the brother of Defendant D. Horowitz.

50.    Horowitz was licensed to practice medicine in the State of New York and the State of New Jersey during the relevant period.

51.    Horowitz participated in this scheme by (a) causing FJ Ortho and Lewin PC to bill for medically unnecessary services, (b) prescribing and/or causing the prescription of unnecessary DME through unlawful and unwarranted referrals, (c) causing Advanced Recovery and ARES to bill for unnecessary and unlawfully prescribed DME, (d) engaging in unlawful patient referrals between Lewin PC and Bergenfield for unnecessary surgical procedures, (e) causing Lewin PC and Bergenfield to bill for unnecessary surgical procedures, (f) creating and submitting documents (e.g., treatment records, peer-review rebuttals, and independent medical exam rebuttals) that falsely supported the necessity and compensability of the services billed for by the Provider Defendants[4], DME Company Defendants,[5] and Bergenfield, and (g) taking part in the operation and management of the Lewin PC, FJ Ortho, ICP, and Bergenfield enterprises.

52.    Horowitz participated in the FJ Ortho and Lewin PC enterprises by, among other things, signing treatment records and invoices in support of No-Fault claims.

53.    Horowitz participated in the Advanced Recovery and ARES enterprises by ordering unnecessary DME that was billed for by Advanced Recovery and ARES, and, upon information and belief, by maintaining a financial interest in Advanced Recovery.

---

[4] The term "Provider Defendants" means Brooklyn Premier, FJ Ortho, Lewin PC, and Bergenfield when used herein.

[5] The term "DME Company Defendants" means Advanced Recovery and ARES when used herein.

54.     Horowitz is therefore responsible for the fraudulent and non-compensable No-Fault claims submitted to Allstate by Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES.

### 2.     Jonathan Lewin, M.D.

55.     Lewin resides in and is a citizen of the State of New Jersey.

56.     Lewin is an orthopedic spine surgeon.

57.     Lewin was licensed to practice medicine in the State of New York and the State of New Jersey during the relevant period.

58.     Lewin participated in this scheme by (a) causing Lewin PC to bill for medically unnecessary services, (b) engaging in unlawful patient referrals between Lewin PC and Bergenfield for unnecessary surgical procedures, and (c) creating and submitting documents (e.g., treatment records, peer-review rebuttals, and independent medical exam rebuttals) that falsely supported the necessity and compensability of the services billed for by the Provider Defendants and Bergenfield.

59.     At all relevant times, Lewin participated in the operation and management of Lewin PC, FJ Ortho, ICP, and Bergenfield enterprises by, among other things, holding ownership interests in the companies, and signing treatment records and invoices in support of No-Fault claims.

60.     Therefore, Lewin is responsible for the fraudulent and non-compensable No-Fault claims submitted to Allstate by Lewin PC, FJ Ortho, and Bergenfield.

### 3.     Raz Winiarsky, M.D.

61.     Winiarsky resides in and is a citizen of the State of New York.

62.     Winiarsky is a physician who, at all relevant times, has been licensed to practice medicine in the State of New York and the State of New Jersey.

63.     Winiarsky participated in this scheme by (a) causing FJ Ortho and Lewin PC to bill for medically unnecessary services, (b) prescribing and/or causing the prescription of unnecessary DME through unlawful and unwarranted referrals, (c) causing Advanced Recovery and ARES to bill for unnecessary and unlawfully prescribed DME, (d) engaging in unlawful patient referrals between Lewin PC and Bergenfield for unnecessary surgical procedures, (e) causing Lewin PC and Bergenfield to bill for unnecessary surgical procedures, (f) creating and submitting documents (e.g., treatment records, peer-review rebuttals, and independent medical exam rebuttals) that falsely supported the necessity and compensability of the services billed for by the Provider Defendants, DME Company Defendants, and Bergenfield, and (g) taking part in the operation and management of the Lewin PC, FJ Ortho, ICP, and Bergenfield enterprises.

64.     Winiarsky participated in the FJ Ortho and Lewin PC enterprises by, among other things, signing treatment records and invoices in support of No-Fault claims.

65.     Winiarsky participated in the Advanced Recovery and ARES enterprises by ordering unnecessary DME that was then billed for by Advanced Recovery and ARES, and by maintaining, upon information and belief, an ownership interest in Advanced Recovery.

66.     Therefore, Winiarsky is responsible for the fraudulent and non-compensable No-Fault claims submitted to Allstate by Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES.

### 4.     Jonathan Simhaee, M.D.

67.     Simhaee resides in and is a citizen of the State of New York.

68.     Simhaee is a physician who, at all relevant times, has been licensed to practice medicine in the State of New York and the State of New Jersey.

69.     Simhaee participated in this scheme by (a) causing FJ Ortho and Lewin PC to bill for medically unnecessary services, (b) prescribing and/or causing the prescription of unnecessary DME through unlawful and unwarranted referrals, (c) causing Advanced Recovery and ARES to bill for unnecessary and unlawfully prescribed DME, (d) engaging in unlawful patient referrals between Lewin PC and Bergenfield for unnecessary surgical procedures, (e) causing Lewin PC and Bergenfield to bill for unnecessary surgical procedures, (f) creating and submitting documents (e.g., treatment records, peer-review rebuttals, and independent medical exam rebuttals) that falsely supported the necessity and compensability of the services billed for by the Provider Defendants, DME Company Defendants, and Bergenfield, and (g) taking part in the operation and management of the Lewin PC, FJ Ortho, ICP, and Bergenfield enterprises.

70.     Simhaee participated in the FJ Ortho and Lewin PC enterprises by, among other things, signing treatment records and invoices in support of No-Fault claims.

71.     Simhaee participated in the Advanced Recovery enterprise by ordering unnecessary DME that was then billed for by Advanced Recovery.

72.     Therefore, Simhaee is responsible for the fraudulent and non-compensable No-Fault claims submitted to Allstate under New York's No-Fault laws by Lewin PC, FJ Ortho, Bergenfield, and Advanced Recovery.

### 5.    Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC

73.     Brooklyn Premier is organized as a physician-owned professional limited liability corporation under New York law.

74.      Brooklyn Premier's principal place of business is located at 1414 Newkirk Avenue in Brooklyn, New York.

75.     Horowitz, Lewin, Winiarsky, and Simhaee were members of Brooklyn Premier during the relevant period.

76.     Brooklyn Premier was operated alongside FJ Ortho and Lewin PC, and it helped propel this scheme.

77.     Brooklyn Premier's tradename was used to further this scheme, and, upon information and belief, Brooklyn Premier employed or controlled one or more of the providers who billed for the services involved in this scheme.

78.     Brooklyn Premier was also used to facilitate the referrals among the other entities involved in this scheme.

79.     Brooklyn Premier participated in the operation and management of the FJ Ortho and Lewin PC enterprises, and is therefore responsible for the fraudulent and non-compensable medical services that they billed to Allstate under New York's No-Fault laws.

### 6.     FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC

80.     FJ Ortho is a professional limited liability corporation under New York law.

81.     FJ Ortho's principal place of business is located at 1414 Newkirk Avenue in Brooklyn, New York.

82.     Horowitz, Lewin, Winiarsky, and Simhaee were members of FJ Ortho during the relevant period.

83.     The Defendants used FJ Ortho to bill for examinations of patients of FJ Ortho for the purpose of creating a false justification for a course of wholly unnecessary treatment to be billed to Allstate by one or more of the Provider Defendants, Bergenfield, and/or Advanced Recovery and ARES.

84.    Specifically, the purpose of these examinations was to generate additional billing opportunities for the Physician Defendants' own numerous business interests and those of a relative of a Physician Defendant.

85.    Indeed, the Physician Defendants (or someone acting under their direction or control) routinely referred patients of FJ Ortho to Lewin PC, Bergenfield, Advanced Recovery, and/or ARES without properly or adequately disclosing to patients the Physician Defendants' or Horowitz's immediate family member(s)' ownership and/or financial interest in one or more of these entities, thus depriving the patients of the chance to choose another provider that did not have a financial incentive to perform—and bill for—additional and expensive treatment and services that drained the patients' available No-Fault benefits.

86.    FJ Ortho also billed for services that were not medically necessary or causally related to an underlying motor vehicle accident.

87.    Further, FJ Ortho submitted fraudulent charges to Allstate that were in excess of the amounts permitted to be charged under the applicable Fee Schedule.

88.    FJ Ortho was not lawfully entitled to seek or collect No-Fault payments under N.Y. Ins. Law § 5102.

**7.    Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey**

89.    Lewin PC is organized as a physician-owned professional corporation under New Jersey law.

90.    Lewin PC's principal place of business is located at 177 North Dean Street in Englewood, New Jersey.

91.     Horowitz, Winiarsky, Lewin, and Simhaee were owners of Lewin PC during the relevant period.

92.     Lewin PC has never been authorized to conduct business as a professional corporation in the State of New York.

93.     Therefore, to take advantage of a New York-based patient pool, Lewin PC relies upon referrals from the Physician Defendants (or someone acting under their direction and control) of Brooklyn Premier's and FJ Ortho's patients for surgical procedures and other services to be purportedly performed—and billed for—through Lewin PC in New Jersey.

94.     However, the Physician Defendants, in certain instances, did not properly or adequately disclose their ownership interest in Lewin PC to the New York-based patients referred to Lewin PC for unnecessary surgical procedures in New Jersey thus depriving the patients of the chance to choose another provider that did not have a financial incentive to perform—and bill for—additional and expensive treatment that drained the patients' available No-Fault benefits.

95.     Lewin PC also billed for arthroscopic surgeries, injections, and other services that were not medically necessary or causally related to an underlying motor vehicle accident.

96.     Further, Lewin PC submitted fraudulent charges to Allstate that were in excess of the amounts permitted to be charged under the applicable Fee Schedule.

97.     Lewin PC was not lawfully entitled to seek or collect No-Fault payments under N.Y. Ins. Law § 5102.

### 8.     Bergenfield Surgical Center, LLC

98.     Bergenfield is a limited liability corporation organized under New Jersey law.

99.     Bergenfield operated as an ambulatory care facility with a principal place of business located at 1 North Washington Avenue in Bergenfield, New Jersey.

100.    Horowitz, Winiarsky, Lewin, and Simhaee held financial interests in Bergenfield through their membership in ICP.

101.    Patients referred for injections or surgery by the Defendants were sent to Bergenfield for the procedure.

102.    The patients were not given a choice over where to have the surgeries.

103.    The procedures were expensive and risky, and patients did not have a chance to pick an uninterested provider.

104.    The Physician Defendants had a financial stake in every referral because they owned Bergenfield.

105.    Bergenfield was not lawfully entitled to seek or collect No-Fault payments under N.Y. Ins. Law § 5102 because the services were not medically necessary and not causally related to the purported underlying motor vehicle accident, and also falsely charged.

### 9.    **Interstate Capital Partners LLC**

106.    ICP is a limited liability company organized under New Jersey law.

107.    ICP maintains a principal place of business at 177 North Dean Street, Suite 301 in Englewood, New Jersey.

108.    Horowitz, Winiarsky, Lewin, and Simhaee were members of ICP during the relevant period.

109.    Since 2018, ICP has owned more than 70% of Bergenfield.

110.    The Defendants used ICP to operate Bergenfield and collect No-Fault payments to which Bergenfield was not entitled under N.Y. Ins. Law § 5102.

111.    This control over the operation and management of Bergenfield through ICP was a key component of the Physician Defendants' scheme to defraud because it permitted them to

siphon for their own personal benefit a cut of the thousands of dollars in facility fees charged by Bergenfield in connection with the numerous patients of the Provider Defendants referred by the Physician Defendants (or those acting under their direction and control) for medically unnecessary procedures purportedly to be performed at Bergenfield during the relevant period.

112.    ICP played a role in (a) facilitating the Physician Defendants' control over Bergenfield for the purpose of funneling referrals of their New York-based patients to Bergenfield for unnecessary surgical procedures that were not causally related to injuries supposedly sustained in the purported underlying motor vehicle accident, (b) permitting the Physician Defendants to cause Bergenfield to submit grossly excessive facility fee charges to Allstate seeking reimbursement under New York's No-Fault laws, and (c) concealing the Physician Defendants' ownership interests in Bergenfield.

### 10.    <u>Daniel Horowitz</u>

113.    D. Horowitz resides in and is a citizen of the State of New York.

114.    D. Horowitz is Horowitz's brother.

115.    D. Horowitz participated in this scheme by (a) operating Advanced Recovery and ARES, (b) causing Advanced Recovery and ARES to dispense, or purport to dispense, medically unnecessary DME, including CPMs and CTUs, to Allstate Claimants, including patients of one or more of the Provider Defendants, and (c) causing Advanced Recovery and ARES to submit claims for No-Fault reimbursement to Allstate for this DME that was, as alleged herein, medically unnecessary, excessively charged, and dispensed pursuant to a referral made in violation of applicable law.

116.    Therefore, D. Horowitz is responsible for the fraudulent and non-compensable charges for DME submitted to Allstate under New York's No-Fault laws by Advanced Recovery and ARES.

**11.    Advanced Recovery Equipment and Supplies LLC**

117.    Advanced Recovery is a limited liability company organized under New York law.

118.    Advanced Recovery was a durable medical equipment ("DME") provider with a principal place of business at 1100 Coney Island Avenue in Brooklyn, New York.

119.    Advanced Recovery is owned by D. Horowitz.

120.    Advanced Recovery submitted documents to Allstate during the relevant period that identified Horowitz and Winiarsky as owners of the company.

121.    Advanced Recovery participated in this scheme by (a) dispensing, or purporting to dispense, DME, including medically unnecessary CPMs and CTUs, to Allstate Claimants, (b) accepting prescriptions for unnecessary DME for patients of one or more of the Provider Defendants made pursuant to unlawful referrals motivated by financial gain and in violation of applicable law, and (c) submitting excessive charges for No-Fault reimbursement to Allstate for medically unnecessary DME purportedly dispensed to Allstate Claimants.

122.    Advanced Recovery was not lawfully entitled to collect No-Fault payments under N.Y. Ins. Law § 5102.

**12.    ARES Medical Supplies LLC**

123.    ARES is a limited liability company organized under New Jersey law.

124.    ARES maintains its principal place of business at 177 North Dean Street, Suite 303 in Englewood, New Jersey.

125.     ARES also conducts business from 1100 Coney Island Avenue, Third Floor in Brooklyn, New York, which is Advanced Recovery's principal place of business.

126.     ARES is owned by D. Horowitz.

127.     ARES participated in this scheme by (a) dispensing, or purporting to dispense, DME, including medically unnecessary CPMs and CTUs, to Allstate Claimants, (b) accepting prescriptions for unnecessary DME for patients of one or more of the Provider Defendants made pursuant to unlawful referrals motivated by financial gain and in violation of applicable law, and (c) submitting excessive charges for No-Fault reimbursement to Allstate for medically unnecessary DME purportedly dispensed to Allstate Claimants.

128.     ARES was not lawfully entitled to collect No-Fault payments under N.Y. Ins. Law § 5102.

## III.    JURISDICTION AND VENUE

129.     Subject matter jurisdiction over this action is conferred upon this Court by 28 U.S.C. §§ 1331 and 1332.

130.     Supplemental jurisdiction over the plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

131.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) whereas the vast majority of acts known to Allstate alleged herein were carried out within the Eastern District of New York.

132.     Brooklyn Premier and FJ Ortho both conducted business in the State of New York by providing, or purporting to provide, medical services at a clinic located in Kings County.

133.     Brooklyn Premier and FJ Ortho also conducted business in the State of New York by (a) submitting bills under New York's No-Fault laws for medical services that were purportedly provided to patients who lived in New York or who were covered by New York automobile

insurance policies issued by Allstate, and (b) referring these New York-based patients for arthroscopic surgeries, injections, and other procedures.

134.    Lewin PC also conducted business in the State of New York by maintaining locations in Manhattan and Queens even though Lewin PC is not authorized to provide services in the State of New York.

135.    Lewin PC further conducted business in the State of New York by submitting bills under New York's No-Fault laws for medical services that were purportedly provided to patients who lived in New York or who were covered by New York automobile insurance policies issued by Allstate.

136.    The Physician Defendants (or someone acting under their direction and control) purposely referred patients of one or more of the Provider Defendants to Bergenfield (in which the Physician Defendants, through ICP, maintained a majority ownership interest) for surgical procedures wherein Bergenfield (a) provided, or purported to provide, surgical facility services to New York-based patients, and (b) sought—and, in certain instances, received—payment for those services under New York's No-Fault laws.

137.    The Physician Defendants personally benefitted from the amounts that Allstate paid to Bergenfield under New York's No-Fault laws through payments made by Bergenfield to ICP representing Bergenfield's profits.

138.    The Physician Defendants (or someone acting under their direction and control) also purposely referred patients of one or more of the Provider Defendants to Advanced Recovery or ARES for DME.

139.    Advanced Recovery conducted business in the State of New York by dispensing, or purporting to dispense, DME through a facility located in Kings County.

140.    Advanced Recovery also conducted business in the State of New York by submitting bills under New York's No-Fault laws for DME that was purportedly dispensed to patients who lived in New York or who were covered by New York automobile insurance policies issued by Allstate.

141.    ARES conducted business in the State of New York by operating as a DME provider in the tri-state area and delivering, or purporting to deliver, DME to patients residing in the State of New York.

142.    ARES also conducted business in the State of New York by submitting bills under New York's No-Fault laws for DME that was purportedly dispensed to patients who lived in New York or who were covered by New York automobile insurance policies issued by Allstate.

143.    Moreover, on or about September 20, 2021, ARES applied for authority to do business in the State of New York, and is currently an active foreign limited liability company in the State of New York.

144.    The Defendants have therefore engaged in purposeful activities in New York by conducting business in New York, and by seeking and collecting payments under New York's No-Fault laws.

145.    The Defendants have also engaged in purposeful activities in New York by causing Brooklyn Premier, FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES to initiate arbitration proceedings in New York against Allstate for the purpose of seeking reimbursement under New York's No-Fault laws.

146.    The Defendants' activities in and contact with New York were purposely sought and transacted to take advantage of the benefits available under New York's No-Fault laws.

147.    The allegations and causes of action asserted herein arise from the Defendants' conduct within the State of New York, and their purposeful availment of New York's No-Fault insurance system, and therefore there is no question that there exists a substantial relationship between the transactions at issue, and Allstate's causes of action.

148.    Overall, the fraudulent scheme alleged herein has many ties to the State of New York, and the ends of justice are best served through this Court's exercise of jurisdiction over the Defendants.

## IV.    APPLICABLE NO-FAULT LAWS AND LICENSING STATUTES

### A.    NEW YORK'S NO-FAULT LAWS AND REGULATIONS

149.    Allstate underwrites automobile insurance in the State of New York.

150.    New York's No-Fault laws are designed to ensure that injured victims of motor vehicle accidents have an efficient mechanism to pay reasonable fees for necessary healthcare services.

151.    Under New York's Comprehensive Motor Vehicle Insurance Reparations Act (N.Y. Ins. Law § 5101, *et seq.*), and the regulations promulgated pursuant thereto (11 N.Y.C.R.R. § 65, *et seq.*) (collectively, "the No-Fault laws"), automobile insurers are required to provide Personal Injury Protection Benefits (hereinafter, "No-Fault benefits") to Allstate Claimants.

152.    Under New York No-Fault law, individuals are entitled to be compensated for "basic economic loss" resulting from injuries caused by the operation of a motor vehicle.

153.    "Basic economic loss" is defined to include "all necessary expenses" for medical services.  N.Y. Ins. Law § 5102(a)(1); 11 N.Y.C.R.R. § 65-1.1.

154.    No-Fault benefits include up to $50,000.00 per Allstate Claimant for reasonable expenses that are incurred for necessary healthcare goods and services.

155.    A patient can assign their No-Fault benefits to healthcare service providers.

156.    Pursuant to a duly executed assignment, a healthcare provider may submit claims directly to an insurance company and receive payment for necessary medical services rendered, using the claim form required by the New York State Department of Financial Services formerly known as the New York State Department of Insurance ("DOI") (known as "Verification of Treatment by Attending Physician or Other Provider of Health Service" or more commonly as an "NF-3").

157.    Alternatively, healthcare providers may submit claims to insurance carriers using the Health Insurance Claim Form (known as the "CMS-1500" form and formerly known as the "HCFA-1500" form).

158.    Similarly, an ambulatory surgery center may submit claims to insurance carriers using a Uniform Billing form known as the UB-04 (also known as the "CMS-1450" form).

159.    The NF-3, CMS-1500, and UB-04 forms are important documents in the insurance industry.  They certify that the provider's request for payment is not materially false, misleading, or fraudulent.  11 N.Y.C.R.R. § 65.3-11(a); N.Y. Ins. Law § 403(d).

160.    Pursuant to N.Y. Ins. Law § 403(d), each NF-3, CMS-1500, and UB-04 form carry the same warning by substance: "Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent act, which is a crime."

161.    A healthcare provider or ambulatory surgery center makes a material misrepresentation when it submits an NF-3, CMS-1500, or UB-04 form that either omits or

misrepresents material information about the provider's eligibility to seek or collect payment under New York's No-Fault laws.

162.    It is a material misrepresentation to submit NF-3, CMS-1500, and UB-04 forms for treatment, testing, and other services that: (a) are never provided; (b) are billed as expensive/complex procedures when, in reality, a less complex and less expensive service was actually provided; or (c) are billed at a greater monetary charge than is permitted by the applicable Fee Schedule.

163.    Under New York law, a provider of healthcare services is not eligible for No-Fault reimbursement if the provider fails to meet **any** applicable New York state or local licensing requirement necessary to perform such service in New York, **or** if the provider fails to meet **any** licensing requirement necessary to perform the service in any other state in which the service is performed.  11 N.Y.C.R.R. § 65-3.16(a)(12) (emphasis added).

164.    Accordingly, if a professional healthcare service provider fails to meet any applicable licensing requirement necessary to perform a service, then the provider is not lawfully entitled to seek or collect No-Fault benefits under New York's No-Fault laws.

165.    As alleged herein, the Defendants failed to comply with several laws and regulations when providing healthcare services to claimants during the course of this scheme; therefore, the Defendants are not—and never were—eligible to seek or collect No-Fault benefits from Allstate.

**B.    NEW YORK WORKERS' COMPENSATION FEE SCHEDULE**

166.    In terms of the fees charged by healthcare providers, the New York Workers' Compensation Board has established a schedule of fees known commonly as the "Workers' Compensation Fee Schedule" ("NY Fee Schedule").

167.    The NY Fee Schedule is used by healthcare providers and insurers to determine the level of reimbursement payable on legitimate claims.

168.    The purpose of the NY Fee Schedule is to: (a) provide comprehensive billing guidelines to allow healthcare providers to appropriately describe their services and minimize disputes over reimbursement through the establishment of maximum permissible fees that can be charged for services included in the Fee Schedule; and (b) set limits on charges that can be advanced by healthcare service providers to protect claimants from having their medical benefit limits artificially eroded by excessive fees.

169.    Under Insurance Law § 5102(a)(1), the term "basic economic loss" covers "all necessary expenses incurred for…medical, hospital…, surgical…[and] any other professional health services."

170.    In determining basic economic loss, the expenses incurred under Insurance Law § 5102(a)(1) "shall be in accordance with the limitations" of Insurance Law § 5108.

171.    Pursuant to Insurance Law § 5108(b), the Superintendent of Insurance "shall promulgate rules and regulations implementing and coordinating the provisions of [the No-Fault laws] and the workers' compensation law with respect to the charges for the professional health services specified" in Insurance Law § 5102(a)(1), "including the establishment of schedules for all such services for which schedules have not been prepared and established by the chairman of the workers' compensation board."

172.    Insurance Law § 5108(a) also provides that the "charges for services specified in" Insurance Law § 5102(a)(1) "shall not exceed the charges permissible under the schedule prepared and established by the chairman of the workers' compensation board." *See also* 11 N.Y.C.R.R. §

65-3.16(a)(1) ("Payment for medical expenses shall be in accordance with fee schedules promulgated under section 5108 of the Insurance Law…").

173.    Under 11 N.Y.C.R.R. § 68.6, titled "Health services performed outside New York State," the amounts reimbursable under New York's No-Fault law are limited based upon, among other things, the residence of the eligible injured person.

174.    The recent amendments to section 68.6, effective January 23, 2018, were intended to "address[] the ongoing exploitation of New York's no-fault system by out-of-state providers who, taking advantage of current provisions in the regulation, submit grossly inflated bills for services rendered, thus quickly depleting the $50,000 no-fault coverage limit available to an eligible injured party ("EIP")." *See* Assessment of public comments for the Thirty-Third Amendment to 11 N.Y.C.R.R. 68 (Insurance Regulation 83).

175.    The amended version of 11 N.Y.C.R.R. § 68.6 states, in pertinent part, that "if a professional health service reimbursable under Insurance Law section 5102(a)(1) is performed outside [the State of New York] with respect to an eligible injured person that is a resident of [the State of New York,] the amount that the insurer shall reimburse for the service shall be the *lower* of:

> (1) the amount of the fee set forth in the region of [the State of New York] that has the highest applicable amount in the fee schedule for that service;
>
> (2) the amount charged by the provider; and
>
> (3) the prevailing fee in the geographic location of the provider."

11 N.Y.C.R.R. § 68.6(b) (emphasis added).

176.    As in New York, New Jersey has established a fee schedule (i.e., "NJ Fee Schedule") to govern the charges submitted by healthcare providers under New Jersey's No-Fault laws.

177.    Under New Jersey law, healthcare providers are prohibited from submitting charges that exceed the amounts set forth in the NJ Fee Schedule.

C.    **NEW YORK AND NEW JERSEY LAW REGARDING SELF-REFERRALS**

178.    When a healthcare provider refers a patient to another provider or facility in which the referring provider, or their immediate family member, has a financial relationship, such a referral creates the risk of unnecessary services because the provider's own financial motivations might be placed ahead of the actual needs of the patient, thereby raising healthcare costs and subjecting patients to unnecessary care.

179.    To control the risks posed by such self-referrals, New York Public Health Law § 238-a prohibits certain healthcare service providers from referring patients to another healthcare service provider (or to an immediate family member of the provider) for certain services (namely, clinical laboratory services, pharmacy services, radiation therapy services, physical therapy services, or x-ray or imaging services) where a financial relationship exists between the providers.

180.    Siblings are expressly included in the statute's definition of "immediate family member." *See* N.Y. Pub. Health Law § 238(8); 10 N.Y.C.R.R. § 34-1.2(h).

181.    "Financial relationship" is defined by the statute as "an ownership interest, investment interest, or compensation arrangement." *See* N.Y. Pub. Health Law § 238(3); 10 N.Y.C.R.R. § 34-1.2(c); *see also* N.Y. Pub. Health Law § 238-a(3) (defining ownership interest or investment interest).

182.    New York Public Health Law § 238-d pertains to practitioner disclosure requirements for certain referrals that are not prohibited by, or subject to an exception under, section 238-a. *See also* 10 N.Y.C.R.R. § 34-1.5(a).

183.    Section 238-d(1)(a) prohibits a practitioner from making "a referral to a health care provider for the furnishing of any health or health related items or services where such practitioner or immediate family member of such practitioner has…an ownership or investment interest…with such health care provider" without disclosing the financial relationship to the patient. *See also* 10 N.Y.C.R.R. § 34-1.5(a)(1).

184.    Section 238-d(2) requires that the disclosure "provide notice of any such financial relationship and shall also inform the patient of his or her right to utilize a specifically identified alternative health care provider if any such alternative is reasonably available." *See also* 10 N.Y.C.R.R. § 34-1.5(b).

185.    The applicable regulations prescribe the form that the disclosure must take and also require that the disclosure "be posted prominently in the practitioner's office." *See* 10 N.Y.C.R.R. § 34-1.5(b); 10 N.Y.C.R.R. § 34-1.6.

186.    Accordingly, if a referral is subject to section 238-d and the disclosure requirement is not met, then the provider has failed to comply with applicable licensing regulations and is therefore ineligible to collect No-Fault payments.

187.    The Defendants' scheme also implicates New Jersey law because some of the services were provided by the Defendants in New Jersey.

188.    Under N.J.S.A. 45:9-22.5 (i.e., the "New Jersey Codey Law"), physicians are generally prohibited *from referring, or directing an employee to refer*, a patient to a healthcare provider in which the physician (or an immediate family member) has a significant beneficial interest. *Prudential Prop. and Cas. Ins. Co. of N.J. v. Nardone*, 752 A.2d 859, 863 (N.J. Super. Ct. Law Div. 2000) ("New Jersey statutory law and administrative regulations unequivocally

28

prohibit health care providers from referring patients to a health care service in which the practitioner or his immediate family has a significant beneficial interest.").

189.   "With regard to durable medical equipment, a physician having a significant beneficial interest…who prescribes and refers a patient to a source for said product, shall provide the personal notice copy to a patient in any setting, including the practitioner's office and prior to the time of patient discharge from a hospital, nursing home or free standing health facility (for example, urgent care offices or ambulatory surgery centers)."  N.J.A.C. 13:35-6.17(b)(2).

190.   Moreover, "a licensee who refers a patient to a health care service (such as…a provider of durable medical equipment…) shall not accept from nor give to the health care service a fee directly or indirectly in connection with the referral, whether denominated as a referral or prescription fee or consulting or supervision fee or space leasing in which to render the services (other than as permitted in (h) below), or by any other name, whether or not the licensee has a financial interest."  N.J.A.C. 13:35-6.17(c)(1); *see* N.J.A.C. 13:35-6.17(c)(1)(ii) (explaining that the "section shall be construed broadly to effectuate its remedial intent.").

191.   Providers may refer patients to an ambulatory care facility in which they hold an interest but only if: (a) the referring physician personally performs the procedure; (b) the referring physician's remuneration as owner of the ambulatory care facility is directly proportional to the physician's ownership interest and not the volume of patients referred to the facility; (c) all clinically-related decisions at an ambulatory care facility owned in part by non-physicians are made by physicians and are in the best interest of the patient; and (d) the referring physician's significant beneficial interest in the ambulatory care facility is disclosed to the patient, in writing, at or prior to the time that the referral is made.  N.J.S.A. 45:9-22.5(c)(3)(a)-(d).

192.    Accordingly, if written disclosure of the referring physician's ownership interest in the ambulatory care facility is not provided to the patient at (or before) the time that the referral is made, then the referral violates the New Jersey Codey Law and is thus unlawful.

**D.    NEW YORK LAWS APPLICABLE TO PROFESSIONAL HEALTHCARE SERVICE PROVIDERS**

193.    Additionally, New York's Education Law and Business Corporation Law also apply to professional healthcare providers, such as individual licensees and professional service entities.

194.    New York law requires that foreign medical professional entities operating in New York (a) apply for authority to do business in New York, and (b) obtain a certificate of authority from the New York Department of Education.  *See* N.Y. Bus. Corp. Law § 1530(a).

195.    Accordingly, foreign medical professional entities that operate in New York without obtaining the requisite certificate of authority and authorization are not eligible to seek or collect No-Fault benefits under New York's No-Fault laws.

196.    Under New York Education Law § 6530, it is professional misconduct for a licensed physician to (a) practice the profession fraudulently, (b) order excessive tests or treatment not warranted by the condition of the patient, and (c) fail to maintain a record for each patient that accurately reflects the evaluation and treatment of the patient.

197.    Moreover, New York law prohibits physicians from taking advantage of their patients for their own or someone else's financial gain, such as through accepting fees in exchange for referrals or promoting the sale of certain services or goods.

198.    Specifically, New York Education Law § 6530(18) provides that professional misconduct for physicians includes "[d]irectly or indirectly offering, giving, soliciting, or

receiving or agreeing to receive, any fee or other consideration to or from a third party for the referral of a patient or in connection with the performance of professional services."

199.    Further, a physician engages in professional misconduct in "[e]xercising undue influence on the patient, including the promotion of the sale of services, goods, appliances, or drugs in such manner as to exploit the patient for the financial gain of the licensee or of a third party."  N.Y. Educ. Law § 6530(17).

200.    Similarly, section 6531 provides for an additional definition of professional misconduct for physicians in the case where a physician "has directly or indirectly requested, received or participated in the division, transference, assignment, rebate, splitting, or refunding of a fee for, or has directly requested, received, or profited by means of a credit or other valuable consideration as a commission, discount or gratuity, in connection with the furnishing of professional care or service, including…physiotherapy or other therapeutic service or equipment…[or] orthopedic or surgical appliances or supplies…or any other goods, services, or supplies prescribed for medical diagnosis, care, or treatment under this chapter[.]"  N.Y. Educ. Law § 6531.

## V.    FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### A.    GENERAL OVERVIEW OF DEFENDANTS' SCHEME TO DEFRAUD

201.    The Defendants' scheme was designed to drain their patients' No-Fault benefits by billing for services that were (a) not medically necessary, (b) not related to any accident-related injury, (c) excessively charged, and (d) furnished because of unlawful arrangements that improperly elevated financial gains over patient care.

202.    The Defendants' billing damaged Allstate by causing the payment of No-Fault benefits for the fraudulent and non-compensable services.

203.    The Defendants also took advantage of their patients and Allstate by billing for DME through Advanced Recovery and ARES that was (a) medically unnecessary, (b) charged at inflated rates, and (c) prescribed and furnished through undisclosed referral arrangements.

204.    The Defendants routed their patients through a maze of different entities they owned so they could bill as many services as possible.

205.    Claimants were evaluated at clinics operating under the Brooklyn Premier tradename, and FJ Ortho billed for these encounters.

206.    Claimants were then ordered to undergo surgeries, injections, and other needless treatments.

207.    The procedures were billed for by Lewin PC, which is another entity owned by the Defendants.

208.    These referrals were intended to enrich the Defendants at the expense of the patients.

209.    The referrals were also unlawful because written notice of the Physician Defendants' financial interest in Lewin PC was not given to the patients in accordance with applicable law.

210.    The Defendants also conspired to bill for medically unnecessary procedures, such as surgeries and injections.

211.    The surgeries and injections were lucrative because the procedures could be hosted at Bergenfield, and Bergenfield could bill for facility fees.

212.    The Physician Defendants formed ICP in 2018 and used it to acquire a stake in Bergenfield, an existing surgery center.

213.    The Defendants used Bergenfield as another way to enrich themselves in connection with the surgeries and injections.

214.    The Defendants sent their New York claimants to Bergenfield for the surgeries and injections, which enabled Bergenfield to bill for facility fees.

215.    The Defendants billed the physician fees for these procedures separately through Lewin PC, which gave the Defendants a second bite at their patients' No-Fault benefits.

216.    As members of ICP, the Physician Defendants shared in Bergenfield's profits, including those amounts collected from Allstate in connection with false and fraudulent facility fee charges.

217.    In all instances, the referrals of claimants to Bergenfield were unlawful because Bergenfield was chosen as the location for the surgery not based on the best interests of the Physician Defendants' New York-based patients, but on what was financially advantageous for the Physician Defendants.

218.    Moreover, in certain instances, patients of one or more of the Provider Defendants, including one or more Allstate Claimant, referred to Bergenfield did not receive adequate or proper written notice of the Physician Defendants' financial interests in Bergenfield at or prior to the time of the referral for the procedure purportedly to take place at Bergenfield in violation of applicable law.

219.    The Defendants also used Advanced Recovery and ARES to further exploit their patients' No-Fault benefits.

220.    The Defendants billed for medically unnecessary and expensive DME through Advanced Recovery and ARES, which included CPMs and CTUs prescribed by one or more of the Physician Defendants (or someone acting under their direction and control).

33

221.    The DME orders were motivated by financial gain, not patient need; the close relationships between Advanced Recovery, ARES, and the prescribers were not properly disclosed to claimants.

222.    The failure to properly disclose the relationships between Advanced Recovery, ARES, and the prescribers is unlawful, and all of Advanced Recovery's and ARES's billing for such DME is not compensable under New York's No-Fault laws.

223.    Advanced Recovery and ARES also billed Allstate at unlawfully excessive rates for the DME.

224.    The Defendants were never eligible to collect No-Fault payments from Allstate because of this conduct.

**B.**    **THE NEXUS AMONG THE DEFENDANTS**

225.    The Defendants concealed this scheme by deliberately dispersing claimant billing among several different entities.

226.    The Defendants organized Brooklyn Premier, FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES as separate entities, and then used them to bill Allstate for No-Fault payments.

227.    Brooklyn Premier, FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES shared common ownership and places of business.

228.    Brooklyn Premier, FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES also shared common patients.

**1.**    **The Physician Defendants' Fraudulent Operation of the Provider Defendants**

229.    The Provider Defendants are part of the same network even though they appear to be independent entities.

34

230.    Indeed, as explained below, the Provider Defendants share office space, employees, and common ownership and, in furtherance of the scheme to defraud described herein, are treated by the Physician Defendants as a single business interest.

231.    Winiarsky and Lewin started this scheme through Brooklyn Premier and FJ Ortho.

232.    Brooklyn Premier and FJ Ortho were organized on the same day.

233.    Brooklyn Premier and FJ Ortho share the same principal place of business at 1414 Newkirk Avenue in Brooklyn, New York.

234.    Lewin also incorporated Lewin PC in New Jersey less than 2 months later.

235.    Despite being organized under New Jersey law and not authorized to operate as a professional service corporation in the State of New York, Lewin PC maintains and accepts U.S. Mail at a P.O. Box address in New York, specifically, P.O. Box 21803, New York, New York, which P.O. Box directly neighbors FJ Ortho's P.O. Box 21804 and Brooklyn Premier's P.O. Box 21805.

236.    Horowitz later became a member of FJ Ortho and Brooklyn Premier joining Winiarsky and Lewin.

237.    Winiarsky, Horowitz, and Simhaee also became owners of Lewin PC.

238.    According to Simhaee, his ownership interest in Lewin PC also rendered him an owner of "the rest of the entities affiliated with Jonathan Lewin, MD P.C."

239.    Indeed, Simhaee explained the arrangement as follows:

```
11        Q.    Now, Doctor, you had mentioned
12   that you have ownership interest in Lewin,
13   P.C., does that mean that you have an
14   ownership interest in all these other named
15   entities that are part of the business?
16        A.    Yes.
17        Q.    And are the other owners the same
18   people?
19        A.    Yes, the same.
20        Q.    And do they have, to your
21   knowledge, the same percentage ownership in
22   all of those various named PCs or PLLCs?
23        A.    Correct.
24        Q.    And when you became an owner of
25   Lewin, P.C., is also when you became an
```

```
1               DR. J. SIMHAEE
2    owner of all the other businesses?
3        A.    Correct.
```

240.    According to Simhaee, these other businesses affiliated with Lewin PC include

Brooklyn Premier and FJ Ortho:

```
23        Q.    And what are those entities that
24   are affiliated with Jonathan Lewin?
25        A.    Brooklyn Premier Orthopedics and
```

                              *    *    *

```
14        Q.   Okay.  Now, on the bill it
15   indicates FJ Orthopedics and Pain
16   Management, PLLC, is that one of the
17   companies that falls under that general rule
18   breaker umbrella?
19        A.   Correct.
20        Q.   So that is something else that's
21   owned by you and those other doctors,
22   correct?
23        A.   Yes, yes.
```

241.   However, Simhaee is not disclosed as an owner of either Brooklyn Premier or FJ Ortho according to records maintained by the New York Office of the Professions.

242.   Nonetheless, Simhaee participated in the operation and management of both Brooklyn Premier and FJ Ortho.

243.   The Physician Defendants exploited the Provider Defendants' corporate forms to disguise their connections and to conceal the volume of billing submitted by Physician Defendants by dividing the submissions among several entities.

244.   Each of the Provider Defendants played an important role in the success of the scheme.

245.   First, Brooklyn Premier is the public facing arm of the network and is named on the letterhead submitted to Allstate.

246.   As explained by Simhaee, the "template" used by Lewin PC bears the name Brooklyn Premier:

```
 8   it would be the fifth page, on top, it says
 9   Brooklyn Premier Orthopedic/Center for Pain
10   Management.  Do you see that?
11        A.   Hold on.  Okay.  Yes.
12        Q.   So this is referring to the
13   procedure that was billed by Lewin, P.C.,
14   correct?
15        A.   Yes.
16        Q.   And the reason for being on
17   paperwork that refers to different part of
18   the business, do you know why?
19        A.   That's our template for our bills,
20   that's our template, so we are all salary
21   employees for Brooklyn Premier
22   Orthopedic/Center for Pain Management and if
```

247.    Moreover, Brooklyn Premier maintains a web presence (https://bportho.com/) whereas FJ Ortho does not.

248.    Brooklyn Premier's webpage advises patients that "[a]ppointments outside of Brooklyn are scheduled at The Center For Musculoskeletal Disorders" at "affiliate locations" in Manhattan, Queens, and Englewood, New Jersey.

249.    The Center for Musculoskeletal Disorders is an alternate name registered by Lewin PC.

250.    Similarly, a website maintained for The Center for Musculoskeletal Disorders (www.nynjcmd.com) uses the exact same layout and design as Brooklyn Premier's website.

251.    Likewise, the website for The Center for Musculoskeletal Disorders also advertises an "affiliate location" available for patient appointments at 1414 Newkirk Avenue, Brooklyn, New

York at "BPO," as well as its own locations in Manhattan and Queens, even though Lewin PC is not authorized to provide services in the State of New York.

252.    FJ Ortho purports to perform the majority of its billed-for services, including patient examinations, at a Brooklyn Premier or The Center for Musculoskeletal Disorders location.

253.    However, FJ Ortho, which bills for services purportedly performed at Brooklyn Premier's and Lewin PC's New York locations, does not maintain its own website or use its own letterhead.

254.    For example, Simhaee purportedly performed a reexamination of patient R.C. (claim no. 0538218017) on September 13, 2019, which visit was billed to Allstate by FJ Ortho.

255.    However, the report for this visit does not mention FJ Ortho, but rather only identifies Brooklyn Premier and The Center for Musculoskeletal Disorders, as well as the location of the purported treatment as "CMD Queens":

**Brooklyn Premier Orthopedic**
**Center for Musculoskeletal Disorders**
Steven Horowitz, MD., Jonathan Lewin, MD., Raz Winiarsky, MD., Michael Horowitz, MD.,
Jonathan Simhaee, MD., Vagmin Vora, MD., Seth Grossman, MD., Daniel Popowitz, DPM.,
Don Heitman, MD., Haydeé Brown, MD., Marc Cohen, MD.,
Jacob Peacock, MD., David Mandil, DPM.

| 1414 Newkirk Avenue Brooklyn, NY 11226 Phone 718-759-6100 Fax 718-434-0070 | 142 Joralemon Ave 2nd Floor Brooklyn, NY 11201 Phone 718-759-6100 Fax 718-858-3700 | 76-65 Austin St. Forest Hills, NY 11374 Phone 718-509-1900 Fax 718-509-7117 | 40 Park Avenue, Ste 1 New York, NY 10016 Phone 646-455-1564 Fax 646-205-4041 | 177 N Dean St Englewood, NJ 07631 Phone 201-510-3777 Fax 201-510-3778 |

www.bportho.com    www.cmdnynj.com

| Patient Name | | Appointment Date | 9/13/2019 3:45 PM |
|---|---|---|---|
| DOB | | Type of Visit | Follow up 15 Minute |
| Gender | Female | Provider | Simhaee Jonathan |
| Account No | 102371/1 | Location | CMD QUEENS |

256.    Likewise, Horowitz purportedly reexamined patient S.P. (claim no. 0443040464) on November 20, 2018, which visit was billed to Allstate by FJ Ortho.

257. However, the report for this visit only identifies Brooklyn Premier and The Center for Musculoskeletal Disorders—as opposed to FJ Ortho—as the billing provider, and identifies Brooklyn Premier as the location of the billed-for service:

**Brooklyn Premier Orthopedic**
**Center for Musculoskeletal Disorders**
Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winlarsky, M.D., Michael Horoltz, M.D., Jonathan Simhaee, M.D., Vagmin Vora, M.D., Seth Grossman, M.D
Dr. Daniel Popowitz, DPM, Dr Don Heitman, M.D., Dr Haydee Brown, M.D., Dr Marc Cohen, M.D., Dr Jacob Peacock, M.D.

| 1414 Newark Avenue | 142 Joralemon Ave 2nd Floor | 76-55 Austin St | 40 Park Avenue, Ste 1 | 177 N Dean St |
| Brooklyn, NY 11226 | Brooklyn, NY 11201 | Forest Hills, NY 11374 | New York, NY 10016 | Englewood, NJ 07631 |
| Phone 718-759-6100 | Phone 718-759-6100 | Phone 718-509-1900 | Phone 646-455-1564 | Phone 201-510-3777 |
| Fax 718-434-0070 | Fax 718-858-3700 | Fax 716-509-7117 | Fax 646-205-4041 | Fax 201-510-3778 |

www.bportho.com  www.nymjcmd.com

DOB:
Patient #:   72598/1
Provider:  Horowitz Steven
Type of Visit: Follow up 15 Minute

DOS:   11/20/2018 2:30 PM
Gender:  Female
Location:   BROOKLYN PREMIER ORTH

258. Indeed, one patient who purportedly received services billed to Allstate by FJ Ortho denied any knowledge of FJ Ortho.

259. For its part, Lewin PC also participated in the Defendants' scheme to defraud by accepting referrals of patients of Brooklyn Premier and FJ Ortho from the Physician Defendants (and other physicians acting under their direction and control) for certain procedures, including medically unnecessary arthroscopic surgeries, to be performed in New Jersey.

260. Specifically, after patients are examined by a Physician Defendant (or another healthcare professional employed by the Physician Defendants) and receive certain treatment and services through Brooklyn Premier and/or FJ Ortho, including injections, the patients are routinely recommended to undergo arthroscopic surgeries.

261.    The injection and surgery patients are invariably shuttled by the Physician Defendants across state lines to Bergenfield in New Jersey purportedly to undergo these arthroscopic procedures, which are then billed to Allstate by Lewin PC.

262.    Thus, this scheme was designed to capture the charges for initial patient examinations, follow-up examinations, and various procedures, such as injections, through the Provider Defendants' New York locations by submitting false and fraudulent charges through Brooklyn Premier and FJ Ortho.

263.    Then, to keep charges for subsequent arthroscopic procedures within the Physician Defendants' network, the Physician Defendants referred, or caused the referrals of, patients of Brooklyn Premier and FJ Ortho to Lewin PC in New Jersey to permit Lewin PC to bill for these procedures.

264.    The Physician Defendants then incorporated another opportunity for self-referrals into their scheme to defraud by installing themselves, through ICP, as the majority owners of Bergenfield, a New Jersey ambulatory surgery center serving as the venue for the medically unnecessary arthroscopic procedures and interventional pain management procedures billed to Allstate by Lewin PC.

## 2.    The Physician Defendants' Control of Bergenfield Through ICP

265.    Bergenfield is an ambulatory surgery center located in Bergenfield, New Jersey.

266.    ICP is an entity owned by the Physician Defendants.

267.    ICP became the majority owner of Bergenfield on or about May 1, 2008.

268.    Soon thereafter, the Defendants began referring their patients to Bergenfield for expensive procedures.

269.   The Defendants billed for unwarranted facility fees through Bergenfield in connection with each procedure.

270.   According to Simhaee, the Defendants used Bergenfield as their "Premier Surgery Center" following the acquisition, and ceased performing, or purporting to perform, procedures at other surgery centers:

```
14        Q.   And since you have become a
15   partner, which of those have stopped being a
16   place where the procedures are done and what
17   new, if anything, has been added?
18        A.   So in the past two, two and a half
19   years when we took over Bergenfield Surgical
20   Center, the vast majority, I would say, well
21   above 90 percent were done there at
22   Bergenfield Surgical Center and we don't go
23   to Excel or New Horizon or any of those
24   surgery centers any longer.
25        Q.   And why is that?
```

```
1              DR. J. SIMHAEE
2        A.   Well, we have Bergenfield Surgery
3   Center which is much more efficient and our
4   patients are very happy over there and we
5   made a lot of effort making that into our
6   Premier Surgery Center.
```

42

271.    According to Simhaee, ICP receives profit payments from Bergenfield on a monthly basis, which are distributed to ICP's owners (i.e., the Physician Defendants):

```
11        Q.    Now, besides getting a salary from
12   Lewin and those related entities, do you get
13   paid any proceeds from the profit from
14   Bergenfield?
15        A.    Yes.
16        Q.    And is that divided evenly amongst
17   the doctors, if not, how is that divided?
18        A.    Based on your shares as a
19   shareholder.
20        Q.    And how frequently are those
21   profit payments made?
22        A.    I believe it's monthly at this
23   point.
24        Q.    And at some time you get a check
25   from Bergenfield for?
```

```
1             DR. J. SIMHAEE
2        A.    I don't get a check from it, so I
3   think the owners receive a check and then I
4   will receive a check from ICP.
```

272.    The Defendants had a strong incentive to maximize Bergenfield's profits by hosting procedures.

273.    Patients were routinely referred for arthroscopic surgeries or other interventional pain management procedures even though they did not need such surgeries or procedures to treat any injury sustained in the purported underlying motor vehicle accident.

274.    These arthroscopic surgeries and other procedures were performed at Bergenfield in New Jersey as opposed to other facilities closer to the patients' residences in New York.

275.    The Defendants were able to capture both the surgeon's fees and the facility fees for each procedure by funneling the New York-based patients of Brooklyn Premier and FJ Ortho to Bergenfield in New Jersey.

### 3.    Referrals of Patients of the Provider Defendants to the DME Company Defendants

276.    The Defendants also used medically unnecessary DME to generate additional fraudulent claims.

277.    Patients of Brooklyn Premier, FJ Ortho, and Lewin PC were routinely prescribed DME, such as CPMs and CTUs, following procedures at Bergenfield.

278.    Patients were billed for expensive CPM and CTU rentals even though the patients did not need them, which helped generate business for DME companies Advanced Recovery and ARES, which were owned by Horowitz's brother, D. Horowitz.

279.    The links between and among Advanced Recovery, ARES, and the Provider Defendants are uncommonly close.

280.    ARES's offices are located in the same building as Lewin PC and ICP at 177 North Dean Street in Englewood, New Jersey.

281.    Advanced Recovery and ARES also are associated with 1414 Newkirk Avenue in Brooklyn, New York, which is the registered location of Brooklyn Premier and FJ Ortho.

282.    Advanced Recovery and ARES billed for DME prescribed by the other Provider Defendants or the persons that worked for them, including Horowitz and non-party Michael Horowitz, M.D.

283.    According to Simhaee, Horowitz, Michael Horowitz, M.D., and D. Horowitz are brothers:

```
16        Q.   And do you know if there is any
17   familiar relationship between Dan Horowitz
18   and any of the doctors at your practices?
19        A.   He is a brother of Steven
20   Horowitz.
21        Q.   Now, do you know in this
22   particular instance --
23        A.   He is also a brother of Michael
24   Horowitz who is an employee of the practice.
25        Q.   And what does Michael Horowitz do
```

```
1              DR. J. SIMHAEE
2   at the practice?
3        A.   He is a hand surgeon.
```

284.    When a patient of Brooklyn Premier, FJ Ortho, or Lewin PC is prescribed DME, the patient is routinely referred to Advanced Recovery or ARES for the equipment.

285.    Patients were deprived of the opportunity to find other, less expensive alternatives.

286.    The DME was ordered and furnished before patients had a meaningful opportunity to consider the prescriber's motives for prescribing this DME, or to choose another independent DME provider from which to obtain the prescribed equipment.

287.    The Defendants' conduct was particularly exploitative: Advanced Recovery and ARES billed excessive rates for renting this unnecessary DME to patients

288.    The failure to disclose ownership interests is material because these types of referrals are prohibited if not properly disclosed.

C.    **BILLING FOR MEDICALLY UNNECESSARY SERVICES**

289.    The Defendants further enriched themselves by billing for medically unnecessary services.

290.    The Defendants operated from several different locations around New York where they evaluated patients, and ordered additional tests and treatments.

291.    The scheme was designed so that the Defendants could bill for all aspects of the treatment through other companies they owned.

292.    The Bergenfield Procedures illustrate how the Defendants billed through different entities in connection with the same encounter: (a) FJ Ortho for evaluation and procedure orders (often reported under Brooklyn Premier), (b) Lewin PC for professional physician fees, (c) Bergenfield for facility fees, and (d) Advanced Recovery or ARES for post-procedure DME.

293.    This aspect of the scheme was possible because the Physician Defendants owned and controlled Bergenfield through ICP and could therefore use the facility as a platform to bill for additional procedural fees and facility fees.

294.    Claimants were subjected to services that were unwarranted—even dangerous—such as surgeries and pain management injections performed under anesthesia.

295.    However, the documents and invoices created and submitted to Allstate by (or on behalf of) the Defendants routinely misrepresented that the billed-for services were performed in a legitimate and clinically-reasonable manner.

296.    Even if these treatment and services were medically necessary (which they were not), the Defendants were still not entitled to collect No-Fault payments because the charges for these services were wrongly inflated.

297.    Because of their misconduct, the Defendants violated applicable laws and licensing regulations, and are there not eligible to collect No-Fault payments under Insurance Law § 5102.

1.    **Initial Unnecessary Treatment Through Brooklyn Premier and FJ Ortho**

298.    Brooklyn Premier and FJ Ortho played a crucial role in the Defendants' scheme to defraud.

299.    The Defendants used Brooklyn Premier and FJ Ortho to set the stage for continued treatment and to justify the purported subsequent performance of unnecessary—and expensive— procedures, including arthroscopic surgeries and the resultant prescriptions for equally as unnecessary DME following the surgeries.

300.    In many instances, according to the records submitted to Allstate, these claimants' injuries, if any, were nothing more than sprains or strains from which a patient would generally recover within approximately six (6) to twelve (12) weeks.

301.    However, the examinations billed to Allstate by Brooklyn Premier and FJ Ortho misrepresented or omitted material facts about the patients' alleged injuries, which helped the Defendants manufacture a causal relationship between the purported injuries and the underlying motor vehicle accident.

302.    In some instances, the diagnoses were inconsistent with the findings of the purported examination of the patient

303.    The examination records reported diagnoses that lacked a causal connection to the alleged mechanism of injury (i.e., the purported underlying motor vehicle accident), and also misrepresented degenerative, age-related conditions as accident-related.

304.    Procedure orders were prematurely determined—sometimes just weeks after the accident—before the patients even had a chance to recover on their own.

305.    Procedure orders were also given indiscriminately—in one case, a patient was sent for pain management injections even though the patient had reported to be "doing well" without any significant pain radiating to the extremities.

306.    Overall, the services purportedly rendered through Brooklyn Premier and FJ Ortho created a false justification for medically unnecessary—and excessively charged—pain management procedures by making it appear that the patients required treatment for injuries sustained in the purported underlying motor vehicle accidents even when they did not, and served as a platform for subsequent referrals for medically unnecessary and unwarranted procedures and DME prescriptions.

### 2.    Unnecessary Interventional Pain Management Procedures

307.    The Defendants endangered their patients and damaged Allstate by ordering and billing for unnecessary interventional pain management injections.

308.    The claimants were not suffering from accident-related injuries; indeed, the mechanism of injury for most claimants involved only a solitary and relatively minor motor vehicle accident, which was highly unlikely to result in bilateral and multi-level spinal injuries.

48

309.    The Defendants' records report the presence of acute and traumatic injuries (e.g., traumatic radicular process, disc herniation, or aggravation of underlying facet arthropathy) without objective evidence of same.

310.    If the claimants were actually injured, then they were suffering from underlying degenerative conditions rather than acute, accident-related injuries.

311.    The Defendants' claims for these claimants were still fraudulent and non-compensable because treatment of degenerative, pre-existing conditions is not covered under No-Fault.

312.    By subjecting their patients to unnecessary and unreasonable interventional pain management procedures, the Provider Defendants exposed these patients, including Allstate Claimants, to known risks, including bleeding, infection, post-dural puncture headache, nerve injury, neurologic complications, and even death.

313.    The risks associated with these unnecessary and unreasonable interventional pain management procedures were compounded because the Defendants performed them under anesthesia.

314.    Claimants often received monitored anesthesia care from a third-party anesthesiologist during these procedures.

315.    Monitored anesthetic care ("MAC") is a specific anesthesia service performed by a qualified anesthesia provider—as opposed to the provider performing the underlying procedure—for a diagnostic or therapeutic procedure.

316.    MAC is administered where there is a potential for loss of airway or cardiovascular function due to deep sedation.

317.    Procedures that involve epidural steroid injections ("ESI"), trigger point injections ("TPI"), facet joint injections, sacroiliac joint injections, medial branch nerve blocks, and peripheral nerve blocks do not require sedation.

318.    Rather, only local anesthesia is indicated for interventional procedures, and many patients can undergo interventional pain procedures without the need for supplemental sedation in addition to local anesthesia.

319.    Patients must remain able to communicate pain or other adverse sensations or events during procedures such as spinal ESI, which involve the potential risk for injuries if the patient cannot communicate.

320.    The routine and unwarranted use of MAC in connection with the interventional pain management procedures was both dangerous and irresponsible, and it exposed the patients to unnecessary safety risks associated with MAC.

321.    Therefore, the bills for interventional pain management procedures are fraudulent and not compensable under New York law because the services were not medically necessary and not causally related to the underlying accident.

### 3.    Unnecessary Arthroscopic Surgeries Purportedly Performed for Patients of Lewin PC at Bergenfield

322.    In addition to being unwarranted and not medically necessary, the surgeries at Bergenfield were lucrative because they gave the Defendants additional opportunities to bill for unnecessary services, such as experimental platelet-rich plasma injections ("PRPs").

323.    The PRPs were not medically necessary.

324.    However, Lewin PC billed an additional charge of $5,000 for each PRP—in addition to the already massive fees billed in connection with these surgical procedures.

325. Bergenfield also charged a facility fee totaling almost $1,000 in connection with each PRP.

326. The Physician Defendants (or those acting under their direction and control) fail to provide any justification for these PRP injections.

### 4. Medically Unnecessary DME Purportedly Dispensed by Advanced Recovery and ARES

327. The surgeries at Bergenfield enabled the Defendants to bill for unnecessary DME rentals.

328. Since the surgeries were falsely justified it follows that all related services were equally unjustified.

329. The ordering and billing for medically unnecessary and unwarranted postoperative DME was a routine practice, as illustrated below:

| Claimant | Claim No. | Date of Surgery | Surgeon | Entity Billing for Surgery | DME Prescribed | Date of Prescription | Prescribing Provider | DME Company Defendant |
|---|---|---|---|---|---|---|---|---|
| T.M. | 0504027301 | 3/5/19 | Raz Winiarsky, M.D. | Lewin PC | Left shoulder CTU/CPM | 3/5/19 | Raz Winiarsky, M.D. | Advanced Recovery |
| G.M. | 0524200169 | 2/7/19 | Donald Heitman, M.D. | Lewin PC | Left knee CTU/CPM | 2/7/19 | Donald Heitman, M.D. | ARES |
| I.M. | 0532030814 | 7/16/19 | Raz Winiarsky, M.D. | Lewin PC | Left knee CTU/CPM | 7/16/19 | Raz Winiarsky, M.D. | Advanced Recovery |
| I.M. | 0532030814 | 5/21/19 | Raz Winiarsky, M.D. | Lewin PC | Left knee CTU/CPM | 5/21/19 | Raz Winiarsky, M.D. | Advanced Recovery |
| S.S. | 0545721268 | 7/2/19 | Seth Grossman, M.D. | Lewin PC | Right knee CTU/CPM | 7/2/19 | Seth Grossman, M.D. | ARES |
| W.V. | 0572777605 | 5/18/20 | Daniel Popowitz, DPM | Lewin PC | Right ankle CPM | 5/18/20 | Daniel Popowitz, DPM | ARES |

| Claimant | Claim No. | Date of Surgery | Surgeon | Entity Billing for Surgery | DME Prescribed | Date of Prescription | Prescribing Provider | DME Company Defendant |
|---|---|---|---|---|---|---|---|---|
| M.Z. | 0573283990 | 6/25/20 | Raz Winiarsky, M.D. | Lewin PC | Left knee CTU/CPM | 6/23/20 | Raz Winiarsky, M.D. | Advanced Recovery |
| J.T. | 0445768716 | 11/28/17 | Raz Winiarsky, M.D. | Lewin PC | Left shoulder CTU/CPM | 11/28/17 | Raz Winiarsky, M.D. | Advanced Recovery |

330.    Indeed, as alleged herein, these unnecessary DME prescriptions served only to create an unlawful source of business for Horowitz's brother, D. Horowitz.

331.    The postoperative DME orders included CPMs and CTUs that were owned by D. Horowitz's DME companies—Advanced Recovery and ARES—and "rented" to the Provider Defendants' patients.

332.    D. Horowitz profited from the post-surgical recovery of patients of medical practices owned, in part, by his brother (i.e., Brooklyn Premier, FJ Ortho, and Lewin PC) because the assignment of benefits given to Advanced Recovery and ARES by the Provider Defendants' patients allowed D. Horowitz, through Advanced Recovery and ARES, to seek No-Fault benefit payments in connection with the DME prescribed by a Physician Defendant (or someone acting under the Physician Defendants' direction and control) even when the devices were unnecessary, unneeded, and/or unused by patients.

333.    Indeed, even if the patients' surgeries were warranted (they were not), Advanced Recovery's and ARES's charges for these CPMs and CTUs were still false and non-compensable because the devices were not effective or medically necessary for the patients' recovery from the relatively minor arthroscopic surgeries.

334.    Advanced Recovery and ARES submitted identical documentation to Allstate when billing for the CPMs and CTUs.

335.    Advanced Recovery and ARES state that CPM "is a form of passive motion using specialized machinery that acts to move [the] joint."

336.    Advanced Recovery and ARES further state that a CTU "is a device used to lower body tissue temperature."

337.    According to letters of medical necessity purportedly authored by the Physician Defendants, the CPM "moves a joint through a defined range of motion for an extended period of time" and the CTU applies "consistent cold compression."

338.    Notably, these letters of medical necessity are imprinted with letterhead identifying each of the Physician Defendants as members of the "Brooklyn Premier Orthopedic Group" as depicted in the representative example below:

## Brooklyn Premier Orthopedic Group

Steven Horowitz, M.D., Jonathan Lewin, M.D., Scott Weiss, M.D., Raz Winiarsky, M.D.
Frank Watkins, M.D., Michael Horowitz, M.D., Jonathan Simhaee, M.D.
Seth Grossman, M.D.
1414 Newkirk Avenue
Brooklyn, NY 11226
PH: (718) 759-6100

## LETTER OF MEDICAL NECESSITY

339.    The Physician Defendants represented in these letters that the CPMs and CTUs were prescribed to patients because they were necessary to decrease stiffness and increase range of motion.

340.    Notably, the Defendants' letters of medical necessity regarding CPMs and CTUs are similar and/or identical to letters of medical necessity that were submitted to Allstate by other providers not affiliated with the Defendants.

341.    The existence of identical shared language between the letters of medical necessity of unrelated parties shows the collusive connections among Advanced Recovery, D. Horowitz, and prescribers.

342.    The Defendants' representations about the necessity and effectiveness of the CPMs and CTUs are false because the effectiveness of such devices in recovery from minor arthroscopic surgeries has never been proven.

343.    For example, CPM machines have no proven efficacy, and there is no evidence that such devices are any more useful than standard post-operative physical therapy.

344.    Indeed, even when the devices are clinically warranted for recovery from surgery (e.g., when patients are recovering from a total knee replacement), the use of the device is only effective and warranted for three (3) weeks because there is insufficient evidence to justify the use of these devices for different periods of time or for different applications.

345.    Claimants were ordered to use the CPM devices for excessive periods of four (4) to six (6) weeks following the surgeries, which caused the devices to be used after they stopped being effective—assuming that CPMs were even necessary and warranted in the first place, which they were not.

346.    The CTU devices prescribed for patients of one or more of the Provider Defendants by a Physician Defendant (or another physician acting under the Physician Defendants' direction or control) also were unnecessary and unwarranted.

347.    The excessive DME orders enabled Advanced Recovery and ARES to bill for rental periods ranging from twenty-eight (28) to forty-two (42) days.

348.    Advanced Recovery and ARES owned the CPMs and CTUs and rented the devices to patients pursuant to a "Patient Rental Sales Agreement."

349.    Under New York's No-Fault laws, this arrangement allowed Advanced Recovery and ARES to bill Allstate (on each claimant's behalf) for each day that the device purportedly was supplied.

350.    When Advanced Recovery and ARES filled these prescriptions for CTU devices, they charged Allstate $36.00 per day for each device totaling a charge of $1,008.00 for a twenty-eight (28) day rental.

351.    Instead of these expensive devices, the Physician Defendants' patients could have received the same or better results by using regular ice packs or similar items, which are available at a fraction of the price charged to Allstate by Advanced Recovery and ARES for the CTU devices.

352.    Therefore, the CPMs and CTUs dispensed by Advanced Recovery or ARES, including those prescribed by one or more of the Physician Defendants (or another physician acting under their direction or control), were not medically necessary.

353.    Consequently, Advanced Recovery and ARES are not, and never have been, eligible for reimbursement under New York's No-Fault law for the CPMs and CTUs purportedly furnished to Allstate Claimants.

354.    Because Advanced Recovery and ARES own the CPMs and CTUs, the Defendants stood to profit from each and every unnecessary CPM and CTU device rented to claimants.

355.    Advanced Recovery and ARES falsely billed for unnecessary CPMs and CTUs; therefore, they are not eligible to seek or collect payment for any of these devices under New York's No-Fault laws, including, but not limited to, the bills listed in Exhibits 1-2.

D.    FRAUDULENT BILLING FOR MEDICAL SERVICES AND DME

356.    The Defendants submitted fraudulent billing to Allstate throughout this scheme.

357.    FJ Ortho billed for examinations and unwarranted pain management injections.

358.    Lewin PC also billed for office visits, and for medically unnecessary surgeries and injections.

359.    Bergenfield billed for unwarranted facility fees as part of the injections and surgeries.

360.    Advanced Recovery and ARES billed for the medically unnecessary DME, including that ordered by the other Defendants or persons working for them.

361.    The Defendants billed Allstate using Current Procedural Terminology ("CPT") codes.

362.    CPT codes are published annually by the American Medical Association ("AMA") to facilitate the efficient processing of medical charges by insurance carriers and other private and governmental healthcare payors.

363.    Reimbursement for medical services is directly proportionate to the level of the CPT code billed (i.e., the higher the level of CPT code billed, the greater the amount of reimbursement).

364.    The Defendants' bills were fraudulent because they were excessive, and because they misrepresented the services actually provided (if at all).

    1.      **Lewin PC**

      a.     *Unlawfully Excessive Charges*

365.    Lewin PC charged Allstate unlawfully excessive rates for surgical and pain management procedures.

366.    When New York-based patients receive qualifying healthcare services outside of New York, those services are paid at either (a) the fee set forth in the region of New York that has the highest applicable amount in the Fee Schedule for that service; (b) the provider's charges; **or** (c) the prevailing fee in the geographic location of the provider, whichever amount was the lowest.

367.    However, in nearly every instance, the NY Fee Schedule yielded the lowest amount allowed, and thus represented the appropriate method for calculating the billed-for amounts under New York's No-Fault laws.

368.    Even assuming that the surgeries and other procedures purportedly performed for Allstate Claimants by Lewin PC were necessary in the first instance (they were not), the amounts charged by Lewin PC were grossly and unlawfully inflated.

      i.     Arthroscopic Surgeries

369.    Lewin PC charged grossly excessive rates for arthroscopic surgeries during the relevant period.

370.    For example, for one shoulder arthroscopic surgery purportedly performed for Allstate Claimant T.M. (claim no. 0504027301) on March 5, 2019, Lewin PC charged Allstate a total of $143,094.93 for the surgeon and assistant surgeon's purported services.

371.    As illustrated in the chart below, this amount exceeded the amount permitted to be charged under the NY Fee Schedule, which represented the lowest of the amount charged and the

total amounts permitted to be charged under the NY and NJ Fee Schedules for this procedure, by

more than $138,000.00.

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Arthroscopy, shoulder, surgical; with rotator cuff repair | 29827-LT | $26,217.35 | $2,134.65 | **$24,082.70** |
| Arthroscopy, shoulder, surgical; debridement, limited, 1 or 2 discrete structures | 29822-59; LT | $16,978.85 | $864.63 | **$16,114.22** |
| Arthroscopy, shoulder, surgical; synovectomy, complete | 29821-59; LT | $16,494.90 | $0.00 | **$16,494.90** |
| Arthroscopy, shoulder, surgical; distal claviculectomy including distal articular surface (Mumford procedure) | 29824-LT | $16,229.79 | $593.21 | **$15,636.58** |
| Arthroscopy, shoulder, surgical; decompression of subacromial space with partial acromioplasty, with coracoacromial ligament (ie, arch) release | 29826-LT | $19,475.74 | $451.21 | **$19,024.53** |
| Arthroscopy, shoulder, surgical; with rotator cuff repair | 29827-AS; LT | $13,108.67 | $228.41 | **$12,880.26** |
| Arthroscopy, shoulder, surgical; debridement, limited, 1 or 2 discrete structures | 29822-AS; 59; LT | $8,489.42 | $92.15 | **$8,397.27** |
| Arthroscopy, shoulder, surgical; synovectomy, complete | 29821-59; LT | $8,247.45 | $0.00 | **$8,247.45** |
| Arthroscopy, shoulder, surgical; distal claviculectomy including distal articular surface (Mumford procedure) | 29824-AS; LT | $8,114.89 | $63.47 | **$8,051.42** |

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Arthroscopy, shoulder, surgical; decompression of subacromial space with partial acromioplasty, with coracoacromial ligament (ie, arch) release | 29826-AS; LT | $9,737.87 | $48.28 | **$9,689.59** |
| | **TOTAL** | $143,094.93 | $4,476.01 | **$138,618.92** |

372.    Likewise, Lewin PC also submitted unlawfully inflated charges for knee arthroscopic procedures, such as that purportedly performed for Allstate Claimant S.S. (claim no. 0545721268) on July 2, 2019 for which Lewin PC charged Allstate a total of $75,305.89 for the surgeon and assistant surgeon's purported services.

373.    As illustrated in the chart below, this amount exceeded the amount permitted to be charged under the NY Fee Schedule, which represented the lowest of the amount charged and the total amounts permitted to be charged under the NY and NJ Fee Schedules for this procedure, by more than $72,000.00.

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Arthroscopy, knee, surgical; with meniscectomy (medial and lateral, including any meniscal shaving) | 29880-RT | $19,975.12 | $2,471.34 | **$17,503.78** |
| Arthroscopy, knee, surgical; synovectomy, major, 2 or more compartments | 29876-59; RT | $18,745.24 | $0.00 | **$18,745.24** |
| Arthroscopy, knee, surgical; debridement/shaving of | 29877-59; RT | $17,731.98 | $0.00 | **$17,731.98** |

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| articular cartilage (chondroplasty) | | | | |
| Arthroscopy, knee, surgical; with meniscectomy (medial and lateral, including any meniscal shaving) | 29880-AS; RT | $9,987.56 | $264.43 | **$9,723.13** |
| Arthroscopy, knee, surgical; debridement/shaving of articular cartilage (chondroplasty) | 29877-AS; 59; RT | $8,865.99 | $0.00 | **$8,865.99** |
| | **TOTAL** | $75,305.89 | $2,735.77 | **$72,570.12** |

374.    Additionally, Lewin PC also submitted unlawfully inflated charges for ankle arthroscopic procedures, such as that purportedly performed for Allstate Claimant W.V. (claim no. 0572777605) on May 18, 2020 for which Lewin PC charged Allstate a total of more than $112,000.00 for the surgeon and assistant surgeon's purported services.

375.    As illustrated in the chart below, this amount exceeded the amount permitted to be charged under the NY Fee Schedule, which represented the lowest of the amount charged and the total amounts permitted to be charged under the NY and NJ Fee Schedules for this procedure, by more than $92,000.00.

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Repair, primary, disrupted ligament, ankle; collateral | 27695-RT | $16,523.00 | $758.12 | **$15,764.88** |
| Tenolysis, flexor or extensor tendon, leg and/or ankle; single, each tendon | 27680-RT; 59 | $13,526.30 | $373.34 | **$13,152.96** |

60

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Arthroscopy, ankle (tibiotalar and fibulotalar joints), surgical; debridement, limited | 29897-RT; 59 | $11,620.00 | $1,628.47 | **$9,991.53** |
| Removal of implant; deep | 20680-RT; 59 | $5,294.12 | $549.70 | **$4,744.42** |
| Unlisted procedure, leg or ankle | 27899 | $15,000.00 | $593.21 | **$14,406.79** |
| Repair, primary, disrupted ligament, ankle; collateral | 27695-80; RT | $16,523.00 | $121.30 | **$16,401.70** |
| Tenolysis, flexor or extensor tendon, leg and/or ankle; single, each tendon | 27680-80; RT; 59 | $13,526.30 | $59.73 | **$13,466.57** |
| Arthroscopy, ankle (tibiotalar and fibulotalar joints), surgical; debridement, limited | 29897-80; RT; 59 | $5,294.12 | $260.56 | **$5,033.56** |
| | **TOTAL** | $97,306.84 | $4,344.43 | **$92,962.41** |

376.    Overall, Lewin PC submitted unlawfully excessive and fraudulent charges for arthroscopic surgeries; therefore, Lewin PC is not eligible to seek or collect payment for any of these services under New York No-Fault laws, including, but not limited to, the bills listed in Exhibit 3.

ii.    Injections

377.    Lewin PC also submitted excessive bills to Allstate for pain management injections.

378.    For example, Lewin PC charged Allstate a total of $16,323.59 for ESI and TPI in connection with patient R.C. (claim no. 0538218017).

379.    Lewin PC's charges were inflated by more than $15,000.00:

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Injection(s) of diagnostic or therapeutic substances (eg, anesthetic, antispasmodic, opioid, steroid, other solution), not including neurolytic substances, including needle or catheter placement, interlaminar epidural or subarachnoid, lumbar or sacral (caudal); with imaging guidance (ie, fluoroscopy or CT) | 62323 | $6,500.00 | $343.56 | **$6,156.44** |
| Injection(s); single or multiple trigger point(s), 1 or 2 muscle(s) | 20552-59 | $1,000.00 | $53.82 | **$946.18** |
| Epidurography, radiological supervision and interpretation | 72275-59; 26 | $6,292.83 | $146.64 | **$6,146.19** |
| Fluoroscopic guidance and localization of needle or catheter tip for spine or paraspinous diagnostic or therapeutic injection procedures (epidural or subarachnoid) | 77003-59; 26 | $2,530.76 | $0.00 | **$2,530.76** |
| | **TOTAL** | $16,323.59 | $544.22 | **$15,779.57** |

380.    Additionally, Lewin PC submitted unlawfully inflated charges for bilateral median nerve blocks at multiple spinal levels, as well as TPI, such as those purportedly performed for Allstate Claimant R.C. (claim no. 0538218017) on July 31, 2019 for which Lewin PC charged Allstate a total of $52,380.76 for the surgeon's purported services.

381.    As illustrated in the chart below, this amount exceeded the amount permitted to be charged under the NY Fee Schedule, which represented the lowest of the amount charged and the

total amounts permitted to be charged under the NY and NJ Fee Schedules for this procedure, by

more than $51,000.00.

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Injection(s), diagnostic or therapeutic agent, paravertebral facet (zygapophyseal) joint (or nerves innervating that joint) with image guidance (fluoroscopy or CT), cervical or thoracic; single level | 64490-RT | $8,000.00 | $188.96 | **$7,811.04** |
| Injection(s), diagnostic or therapeutic agent, paravertebral facet (zygapophyseal) joint (or nerves innervating that joint) with image guidance (fluoroscopy or CT), cervical or thoracic; single level | 64490-LT | $8,000.00 | $0.00 | **$8,000.00** |
| Injection(s), diagnostic or therapeutic agent, paravertebral facet (zygapophyseal) joint (or nerves innervating that joint) with image guidance (fluoroscopy or CT), cervical or thoracic; single level | 64491-RT | $8,000.00 | $140.86 | **$7,859.14** |
| Injection(s), diagnostic or therapeutic agent, paravertebral facet (zygapophyseal) joint (or nerves innervating that joint) with image guidance (fluoroscopy or CT), cervical or thoracic; single level | 64491-LT | $8,000.00 | $0.00 | **$8,000.00** |
| Injection(s), diagnostic or therapeutic agent, paravertebral facet (zygapophyseal) joint (or | 64492-RT | $8,000.00 | $140.86 | **$7,859.14** |

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| nerves innervating that joint) with image guidance (fluoroscopy or CT), cervical or thoracic; single level | | | | |
| Injection(s), diagnostic or therapeutic agent, paravertebral facet (zygapophyseal) joint (or nerves innervating that joint) with image guidance (fluoroscopy or CT), cervical or thoracic; single level | 64492-LT | $8,000.00 | $0.00 | **$8,000.00** |
| Injection(s); single or multiple trigger point(s), 3 or more muscles | 20553-59 | $1,850.00 | $0.00 | **$1,850.00** |
| Fluoroscopic guidance and localization of needle or catheter tip for spine or paraspinous diagnostic or therapeutic injection procedures (epidural or subarachnoid) | 77003-59; 26 | $2,530.76 | $0.00 | **$2,530.76** |
| | **TOTAL** | $52,380.76 | $470.68 | **$51,910.08** |

382.    Additionally, Lewin PC submitted unlawfully inflated charges for radiofrequency neurolysis of median branch nerves under fluoroscopic guidance, such as that purportedly performed for Allstate Claimant R.C. (claim no. 0538218017) on March 6, 2020 and June 10, 2020 for which Lewin PC charged Allstate a total of $31,631.16 for the surgeon's purported services.

383.    As illustrated in the chart below, this amount exceeded the amount permitted to be charged under the NY Fee Schedule, which represented the lowest of the amount charged and the total amounts permitted to be charged under the NY and NJ Fee Schedules for this procedure, by more than $30,000.00.

| Procedure | Procedure Code Billed | Amount Charged by Lewin PC | Maximum Amount Allowed Under NY Fee Schedule | Amount Fraudulently Charged by Lewin PC |
|---|---|---|---|---|
| Destruction by neurolytic agent; paravertebral facet joint nerve(s) with imaging guidance (fluoroscopy or CT; cervical or thoracic, single facet joint | 64633-LT | $11,200.00 | $458.08 | **$10,741.92** |
| Destruction by neurolytic agent; paravertebral facet joint nerve(s) with imaging guidance (fluoroscopy or CT; cervical or thoracic, each additional facet joint | 64634-LT | $8,950.20 | $137.42 | **$8,812.78** |
| Destruction by neurolytic agent; paravertebral facet joint nerve(s) with imaging guidance (fluoroscopy or CT; cervical or thoracic, each additional facet joint | 64634-LT; 59 | $8,950.20 | $137.42 | **$8,812.78** |
| Fluoroscopic guidance and localization of needle or catheter tip for spine or paraspinous diagnostic or therapeutic injection procedures (epidural or subarachnoid) | 77003-59; 26 | $2,530.76 | $0.00 | **$2,530.76** |
| | **TOTAL** | $31,631.16 | $732.92 | **$30,898.24** |

384.    Overall, Lewin PC billed unlawfully excessive amounts for pain-management injections; therefore, Lewin PC is not eligible to seek or collect payment for any of these services under New York No-Fault laws, including, but not limited to, the bills listed in Exhibit 4.

iii.    <u>Office Visits</u>

385.    Lewin PC billed for office visits performed in New Jersey under CPT codes 99203, 99204, and 99214.

386.    Lewin PC's charges for these office visits were unlawfully excessive under both the NY and NJ Fee Schedules:

| Claimant | Procedure Code Billed | Date of Service | Amount Charged | Maximum Amount Allowed Under NY Fee Schedule | Maximum Amount Allowed Under NJ Fee Schedule |
|---|---|---|---|---|---|
| S.N. (claim no. 0548833458) | 99204 | 6/13/2019 | **$575.44** | $148.69 | $193.64 |
| S.N. (claim no. 0548833458) | 99214 | 6/28/2019 | **$399.60** | $92.98 | $125.71 |
| S.N. (claim no. 0548833458) | 99214 | 8/5/2019 | **$399.60** | $92.98 | $125.71 |
| S.N. (claim no. 0548833458) | 99203 | 8/9/2019 | **$422.86** | $104.08 | $126.87 |
| M.G. (claim no. 0592133789) | 99204 | 7/17/2020 | **$575.44** | $148.69 | $193.64 |
| M.G. (claim no. 0592133789) | 99203 | 7/22/2020 | **$422.86** | $104.08 | $126.87 |
| M.G. (claim no. 0592133789) | 99214 | 8/13/2020 | **$399.60** | $92.98 | $125.71 |
| I.D. (claim no. 0569307366) | 99203 | 1/13/2020 | **$422.86** | $104.08 | $126.87 |
| I.D. (claim no. 0569307366) | 99204 | 12/2/2019 | **$575.44** | $148.69 | $193.64 |
| I.D. (claim no. 0569307366) | 99214 | 12/26/2019 | **$399.60** | $92.98 | $125.71 |
| M.C. (claim no. 0571626225) | 99204 | 12/24/2019 | **$575.44** | $148.69 | $193.64 |
| M.C. (claim no. 0571626225) | 99214 | 1/7/2020 | **$399.60** | $92.98 | $125.71 |

| Claimant | Procedure Code Billed | Date of Service | Amount Charged | Maximum Amount Allowed Under NY Fee Schedule | Maximum Amount Allowed Under NJ Fee Schedule |
|---|---|---|---|---|---|
| J.C. (claim no. 0508391448) | 99214 | 4/11/2019 | **$399.60** | $92.98 | $125.71 |
| J.C. (claim no. 0508391448) | 99203 | 4/18/2019 | **$422.86** | $104.08 | $126.87 |

387.    Overall, Lewin PC submitted unlawfully excessive and fraudulent charges for office visits; therefore, Lewin PC is not eligible to seek or collect payment for any of these services under New York No-Fault laws, including, but not limited to, the bills listed in Exhibit 5.

### b.    *Fraudulent Unbundling of Charges for PRP Injections*

388.    "Unbundling" of CPT codes is an example of a fraudulent and abusive billing tactic.

389.    Unbundling occurs when multiple CPT codes are billed for the component parts of a procedure when there is a single code available that includes the complete procedure.

390.    For example, Lewin PC wrongfully unbundled the charges associated with the PRP injections purportedly performed upon Allstate Claimants in an attempt to obtain payments far in excess of the amounts permissible under the Fee Schedule.

391.    In connection with these PRP injections performed as part of a larger surgical procedure (e.g., an arthroscopic surgery), Lewin PC billed an additional charge of at least $5,000.00 under CPT code 0232T:

| Claimant | Date of Service | Accompanying Surgical Procedure | Procedure Code Billed for PRP Injection | Amount Billed by Lewin PC |
|---|---|---|---|---|
| S.S. (claim no. 0545721268) | 7/2/2019 | Arthroscopic knee surgery | 0232T | $5,000.00 |

| Claimant | Date of Service | Accompanying Surgical Procedure | Procedure Code Billed for PRP Injection | Amount Billed by Lewin PC |
|---|---|---|---|---|
| L.D. (claim no. 0501906929) | 4/30/2019 | Arthroscopic shoulder surgery | 0232T | $5,000.00 |
| T.M. (claim no. 0504027301) | 3/5/2019 | Arthroscopic shoulder surgery | 0232T | $5,000.00 |
| I.M. (claim no. 0532030814) | 7/16/2019 | Arthroscopic knee surgery | 0232T | $5,000.00 |
| I.M. (claim no. 0532030814) | 5/21/2019 | Arthroscopic knee surgery | 0232T | $5,000.00 |
| M.Z. (claim no. 0573283990) | 6/25/2020 | Arthroscopic knee surgery | 0232T | $5,000.00 |

392.    However, the PRP injections were inclusive components of the operative procedure and are not to be reported separately.

393.    Indeed, according to the American Academy of Orthopedic Surgeons, CPT Code 0232T is to be used only when a PRP injection is performed in a patient encounter that is completely separate from a surgical procedure.

394.    Even if the PRP injections purportedly performed through Lewin PC for Allstate Claimants were clinically necessary and compensable (they were not), the charges for these services were deliberately unbundled as a means to extract additional payment from Allstate because a PRP injection performed as part of a contemporaneous surgical procedure is an inclusive component of the surgical procedure, and is not to be separately charged.

395.    Because Lewin PC's charges for the PRP injections purportedly provided to Allstate Claimants were fraudulently unbundled and purposely misrepresented, the charges submitted to Allstate in connection with these services were false, fraudulent, and not compensable under New York's No-Fault laws, including, but not limited to, the bills listed in Exhibit 6.

### 2.    **Bergenfield**

396.    Bergenfield billed for facility fees in connection with surgical procedures performed at Bergenfield.

397.    Bergenfield charged patients more than $70,000.00 for relatively simple arthroscopic surgeries.

398.    As noted above, for services performed after January 23, 2018, reimbursement under New York No-Fault law must be determined pursuant to the **lowest** of three (3) rate calculation methods: (1) the amount of the fee set forth in the region of New York that has the highest applicable amount in the fee schedule for that service; (2) the amount charged by the provider; **or** (3) the prevailing fee in the geographic location of the provider (i.e., the amount permissible under the NJ Fee Schedule).

399.    As of October 1, 2015, the New York Workers' Compensation Board implemented the Enhanced Ambulatory Patient Group (EAPG) for the Ambulatory Fee Schedule.

400.    To calculate permissible charges under this methodology, each CPT code is assigned an EAPG group.

401.    Each EAPG group is assigned a "base weight."

402.    The "base rate" for an ASC such as Bergenfield located in New Jersey is $295.94.

403.    The "capital add-on payment" for an ASC such as Bergenfield is $81.37.

404.    Reimbursement is then calculated pursuant to the following formula: ([base weight] x $295.94) + $81.37.

405.    This reimbursement, however, is subject to "discounting," which refers to a reduction in the standard payment rate for an APG that is applied when multiple unrelated

significant procedures are performed or the same ancillary service is performed multiple times during a visit.

406.    In other instances, certain multiple related significant procedures may be "consolidated" into a single APG for the purpose of determining payment.

407.    Other items for which Bergenfield submitted charges, such as surgical trays ($750) or orthopedic screws ($11,300), are not reimbursable because the APG-payment system includes lower cost drugs, biologicals and supplies in the payment amount for a significant procedure and medical visit.

408.    The highest applicable amount permitted to be charged under the New York Fee Schedule according to the APG-payment system is routinely thousands of dollars less than the amounts permissible for the same procedures under the New Jersey ASC Fee Schedule, as illustrated in the chart below:

| **Claimant** | **Claim No.** | **Procedure** | **Date of Procedure** | **68.6(b)(2) Total Amount Charged by Bergenfield** | **68.6(b)(3) Prevailing Geographic Fee – NJ** | **68.6(b)(1) Highest Applicable Amount – NY** |
|---|---|---|---|---|---|---|
| W.V. | 0572777605 | Ankle arthroscopy | 5/18/20 | **$70,814.89** | $12,164.53 | $4,584.14 |
| D.R. | 0481555670 | Shoulder arthroscopy | 5/8/18 | **$10,462.9** | $7,228.91 | $3,026.24 |
| L.D. | 0501906929 | Shoulder arthroscopy | 4/30/19 | **$13,882.06** | $9,738.37 | $3,464.20 |
| R.C. | 0538218017 | Radio-frequency ablation, facet joint | 3/6/19 | **$25,000.00** | $1,368.28 | $976.38 |
| R.C. | 0538218017 | Radio-frequency ablation, facet joint | 6/10/20 | **$25,554.72** | $1,422.10 | $1,213.07 |
| R.C. | 0538218017 | Bilateral cervical | 7/31/19 | **$5,150.58** | $2,099.81 | $1,423.89 |

| Claimant | Claim No. | Procedure | Date of Procedure | 68.6(b)(2) Total Amount Charged by Bergenfield | 68.6(b)(3) Prevailing Geographic Fee – NJ | 68.6(b)(1) Highest Applicable Amount – NY |
|---|---|---|---|---|---|---|
| | | median branch nerve blocks and cervical trigger point injections | | | | |
| S.S. | 0545721268 | Knee arthroscopy with PRP injection | 7/2/19 | **$9,141.91** | $6,041.35 | $3,464.20 |

409.    Because Bergenfield's charges submitted to Allstate relating to facility fees billed in connection with surgical procedures and injections purportedly performed as to Allstate Claimants were in excess of the amount permitted under the applicable Fee Schedule and were purposely misrepresented, the charges submitted to Allstate in connection with these services are not compensable under New York's No-Fault laws, including, but not limited to, those bills listed in Exhibit 7.

     **3.**     **FJ Ortho**

     **a.**     ***Unlawfully Excessive Charges***

     i.     Failure to Comply with Surgery Ground Rule 5

410.    FJ Ortho routinely billed Allstate for interventional pain management injections in violation of the applicable Fee Schedule.

411.    Specifically, FJ Ortho consistently disregarded the requirements of Surgery Ground Rule 5 regarding multiple or bilateral procedures.

412.    Under Surgery Ground Rule 5, payment for multiple and bilateral procedures is for the procedure with the highest allowance plus half of the lesser procedure.

413.    FJ Ortho, rather, consistently made two (2) separate CPT submissions for right and left injections when the use of a bilateral modifier was appropriate, which practice resulted in inflated charges to Allstate in excess of the amounts permitted under the applicable Fee Schedule, as illustrated in the representative examples contained in the table below.

| Claimant | Date of Service | CPT Code | Amount Charged | Amount Permitted Under Fee Schedule |
|---|---|---|---|---|
| M.N. (claim no. 0506164565) | 3/1/2019 | 64493 RT | $125.97 | $125.97 |
| M.N. (claim no. 0506164565) | 3/1/2019 | 64493 LT | $125.97 | $62.99 |
| M.N. (claim no. 0506164565) | 3/1/2019 | 64494 RT | $73.29 | $73.29 |
| M.N. (claim no. 0506164565) | 3/1/2019 | 64494 LT | $73.29 | $36.65 |
| M.N. (claim no. 0506164565) | 3/1/2019 | 64495 RT | $73.29 | $73.29 |
| M.N. (claim no. 0506164565) | 3/1/2019 | 64495 LT | $73.29 | $36.65 |
|  |  | **TOTAL:** | **$545.10** | **$408.84** |

414.    Similarly, FJ Ortho also repeatedly failed to apply Surgery Ground Rule 5 to its charges for multiple procedures.

415.    For example, in connection with the medial branch blocks purportedly performed for claimant M.N. (claim no. 0506164565) on March 1, 2019, FJ Ortho also submitted a charge of $119.10 for a TPI under CPT code 20553 without applying the required 50% reduction under Surgery Ground Rule 5.

416. By failing to adhere to the requirements of Surgery Ground Rule 5 for bilateral and multiple procedures, FJ Ortho intentionally inflated its bills and misrepresented its eligibility for reimbursement under the applicable Fee Schedule.

417. Because FJ Ortho improperly submitted charges in violation of Surgery Ground Rule 5 applicable to bilateral and multiple procedures in connection with interventional pain management procedures purportedly provided to Allstate Claimants, the charges submitted to Allstate in connection with these services are not compensable under New York's No-Fault laws, including, but not limited to, those bills listed in Exhibit 8.

ii.    Excessive Charges for Medication

418. FJ Ortho regularly submitted excessive charges for medications purportedly administered during interventional pain management procedures purportedly performed for Allstate Claimants during the relevant period.

419. For instance, according to bills and records submitted to Allstate, FJ Ortho frequently purported to administer to patients 80mg of Kenalog, a corticosteroid, under national drug code (NDC) 00003029328 for which FJ Ortho charged Allstate, in some instances, over $700, as illustrated in the examples contained in the table below.

| Claimant | Date of Service | Medication | NDC Code | Amount Charged |
|---|---|---|---|---|
| M.N. (claim no. 0506164565) | 3/1/2019 | Kenalog (80mg) | 00003029328 | $700.80 |
| M.G. (claim no. 0522078328) | 8/21/2019 | Kenalog (80mg) | 00003029328 | $700.80 |
| M.G. (claim no. 0522078328) | 2/5/2020 | Kenalog (80mg) | 00003029328 | $175.20 |
| V.B. (claim no. 0481439925) | 5/15/2019 | Kenalog (80mg) | 00003029328 | $700.80 |
| M.F. (claim no. 0503277733) | 6/22/2018 | Kenalog (80mg) | 00003029328 | $400.00 |
| R.N. (claim no. 0605524628) | 2/1/2021 | Kenalog (80mg) | 00003029328 | $175.20 |

| Claimant | Date of Service | Medication | NDC Code | Amount Charged |
|---|---|---|---|---|
| K.P. (claim no. 0601993660) | 12/4/2020 | Kenalog (80mg) | 00003029328 | $175.20 |
| A.P. (claim no. 0566947263) | 10/23/2020 | Kenalog (80mg) | 00003029328 | $175.20 |
| C.G. (claim no. 0526832548) | 4/19/2019 | Kenalog (80mg) | 00003029328 | $700.80 |

420.    However, FJ Ortho's charges for Kenalog (NDC 00003029328) are grossly excessive.

421.    The Average Wholesale Price ("AWP") for NDC 00003029328 per 10mg of Kenalog is $8.515.

422.    Therefore, the amount permitted to be charged for 80mg of Kenalog is only $68.08.

423.    Accordingly, FJ Ortho submitted hundreds of dollars in excessive charges for the Kenalog purportedly administered to Allstate Claimants during the relevant period for which FJ Ortho was not entitled under New York's No-Fault laws.

**b.**    ***Fraudulent Unbundling of Charges***

424.    FJ Ortho and Lewin PC wrongfully unbundled the charges for office visits and/or injections to increase the amounts billed to Allstate.

i.    Fraudulent Unbundling of Charges for Fluoroscopic Guidance

425.    FJ Ortho and Lewin PC engaged in extreme unbundling practices when submitting charges to Allstate, including through the submission of bills containing charges under CPT code 77003 (fluoroscopic guidance).

426.    Fluoroscopic guidance is integral to the codes used for techniques such as ESI and facet blocks, and thus should not be reported separately from such procedures.

427.    For example, CPT code 62323 applicable to ESI specifically states that it is used to report such injections performed "with imaging guidance (ie, fluoroscopy or CT)."

428.    Likewise, as another example, CPT codes 64490-64495 applicable to facet joint blocks also specifically state that they are used to report such procedures performed "with imaging guidance (fluoroscopy or CT)."

429.    However, as illustrated through the representative examples contained in the chart below, FJ Ortho and Lewin PC continued to bill separately for fluoroscopic guidance in connection with procedures that specifically include fluoroscopic guidance in a deliberate attempt to generate excessive charges in flagrant disregard of accepted coding principles.

| Claimant | Claim No. | Billing Provider | Unbundled CPT Codes | DOS |
|---|---|---|---|---|
| V.B. | 0481439925 | FJ Ortho | 62323; 77003 | 5/15/2019 |
| M.N. | 0506164565 | FJ Ortho | 64493 RT; 64493 LT; 64494 RT; 64494 LT; 64495 RT; 64495 LT; 77003 | 3/1/2019 |
| M.G. | 0522078328 | FJ Ortho | 64493 RT; 64493 LT; 64494 RT; 64494 LT; 64495 RT; 64495 LT; 77003 | 2/5/2020 |
| M.G. | 0522078328 | Lewin PC | 64493 RT; 64493 LT; 64494 RT; 64494 LT; 64495 RT; 64495 LT; 77003 | 11/22/2019 |
| C.G. | 0526832548 | FJ Ortho | 64490 RT; 64490 LT; 64491 RT; 64491 LT; 64492 RT; 64492 LT; | 4/19/2019 |

| Claimant | Claim No. | Billing Provider | Unbundled CPT Codes | DOS |
|---|---|---|---|---|
| | | | 77003 | |
| A.P. | 0566947263 | FJ Ortho | 64493 RT; 64493 LT; 64494 RT; 64494 LT; 64495 RT; 64495 LT; 77003 | 10/23/2020 |
| R.N. | 0605524628 | FJ Ortho | 64490 RT; 64490 LT; 64491 RT; 64491 LT; 64492 RT; 64492 LT; 77003 | 2/19/2021 |
| R.N. | 0605524628 | FJ Ortho | 64493 RT; 64493 LT; 64494 RT; 64494 LT; 64495 RT; 64495 LT; 77003 | 1/22/2021 |
| R.C. | 0538218017 | Lewin PC | 64490 RT; 64490 LT; 64491 RT; 64491 LT; 64492 RT; 64492 LT; 77003 | 7/31/2019 |
| R.C. | 0538218017 | Lewin PC | 64490 RT; 64490 LT; 64491 RT; 64491 LT; 64492 RT; 64492 LT; 77003 | 12/4/2019 |
| C.P. | 0561840729 | Lewin PC | 62323; 77003 | 6/24/2020 |

430.    Because FJ Ortho and Lewin PC improperly charged for fluoroscopic guidance under CPT code 77003 separately from the underlying interventional pain management procedures purportedly provided to Allstate Claimants when such imaging was part and parcel of the

underlying procedure, the charges submitted to Allstate in connection with these services are not compensable under New York's No-Fault laws, including, but not limited to, those bills listed in Exhibits 9-10.

        ii.    <u>Fraudulent Unbundling of Charges for Post-Operative Office Visits</u>

431.    Following the purported performance of unnecessary surgical procedures, including arthroscopic surgeries, FJ Ortho billed Allstate for post-operative office visits under CPT code 99024.

432.    FJ Ortho, however, submitted $150.00 in charges to Allstate for each post-operative visit on numerous occasions even though these post-operative visits were non-compensable under the NY Fee Schedule.

433.    Indeed, CPT code 99024 specifically states that such a follow-up visit is "normally included in the surgical package."

434.    The global surgical package includes all of the necessary services normally furnished by a surgeon before, during, and after a procedure.

435.    According to Surgery Ground Rule 1B of the Fee Schedule regarding "Package or Global Fee Concept," "[l]isted values for all surgical procedures include the surgery, local infiltration, digital or regional block, and/or topical anesthesia when used and *the normal follow-up care for the period indicated in days in the column headed 'FUD.'*" (Emphasis added.).

436.    The FUD column lists the follow-up days included in a surgical procedure's global charge.

437.    In counting follow-up days, day one is the day of the surgery.

438.    According to Surgery Ground Rule 6(A) regarding follow-up care or aftercare, "[n]ormal postoperative care is included with all services assigned follow-up days of 0, 10, or 90."

439.    The CPT codes for the surgical procedures reportedly performed for patients following up with FJ Ortho have ninety (90) assigned follow-up days in the column headed "FUD." Examples of such codes include, but are not necessarily limited to, those codes set forth in the chart below:

| CPT Code | Description | FUD |
|---|---|---|
| 27695 | Repair, primary, disrupted ligament, ankle; collateral | 090 |
| 29822 | Arthroscopy, shoulder, surgical; debridement, limited | 090 |
| 29827 | Arthroscopy, shoulder, surgical; with rotator cuff repair | 090 |
| 29880 | Arthroscopy, knee, surgical; with meniscectomy (medial AND lateral, including any meniscal shaving) including debridement/shaving of articular cartilage (chondroplasty), same or separate compartment(s), when performed | 090 |

440.    The office visits for normal post-operative care billed by FJ Ortho under CPT code 99024 often occurred within this ninety (90) day period, as illustrated in the chart below:

| Claimant | Claim No. | Date of Surgery | Date of Office Visit Under CPT Code 99024 | Amount Charged |
|---|---|---|---|---|
| W.V. | 0572777605 | 5/18/20 | 6/3/20 | $150.00 |
| D.R. | 0481555670 | 5/8/18 | 6/19/18 | $150.00 |
| S.S. | 0545721268 | 7/2/19 | 7/10/19 | $150.00 |
| S.S. | 0545721268 | 7/2/19 | 8/7/19 | $150.00 |
| S.S. | 0545721268 | 7/2/19 | 9/4/19 | $150.00 |
| T.M. | 0504027301 | 3/5/19 | 3/20/19 | $150.00 |
| T.M. | 0504027301 | 3/5/19 | 4/15/19 | $150.00 |

441.     Therefore, FJ Ortho was not entitled to reimbursement under the NY Fee Schedule for follow-up visits within the ninety (90) days following the surgeries because this normal follow-up care was included in the listed value for the surgical procedure.

442.     Indeed, CPT code 99024 is for administrative reporting only, and FJ Ortho's charges for $150.00 under this code were inappropriate and non-compensable.

443.     Because FJ Ortho's charges relating to post-operative follow-up visits purportedly provided to Allstate Claimants were charged in excess of the amount permitted under the NY Fee Schedule and were purposely misrepresented, the charges submitted to Allstate in connection with these services are not compensable under New York's No-Fault laws, including, but not limited to, those bills listed in Exhibit 11.

### E.     PROFIT SCHEME INVOLVING CPMS AND CTUS

444.     The Defendants stood to earn substantial profits by renting CPMs and CTUs to their patients.

445.     As illustrated in the charts attached as Exhibits 1-2, Advanced Recovery and ARES routinely billed Allstate under Healthcare Common Procedure Coding System (HCPCS) codes E0935 for CPM devices for the knee only, E0936 for CPM devices for use other than the knee, and E0218 for the CTU.

446.     Advanced Recovery and ARES own the CPMs and CTUs.

447.     Advanced Recovery and ARES billed for CPMs and CTUs rented to patients.

448.     Advanced Recovery and ARES charged Allstate a daily rate for the rental of the CPMs and CTUs.

449.    Advanced Recovery and ARES billed Allstate a rental rate of $75 per day for knee CPMs (CPT code E0935).

450.    Because knee CPMs were ordered for either twenty-eight (28) or forty-two (42) days, Advanced Recovery and ARES were able to bill Allstate $2,100 or $3,150 for the rental of each device.

451.    The Defendants paid $1,325.00 to purchase each knee CPM device (a Flexmate K500 Knee CPM).

452.    Thus, given the acquisition costs, the Defendants were able to recoup more than the entire purchase price of every knee CPM device through just one (1) prescription.

453.    Indeed, the amounts that Advanced Recovery and ARES billed Allstate for the rental of knee CPMs are grossly excessive when compared to commercially-available alternatives.

454.    For instance, a comparable knee CPM device is available for a four (4) week rental to the general public for approximately $625, which equates to a rate of just $22.32 per day.

455.    In contrast, Advanced Recovery and ARES billed Allstate a total of $2,100 for a twenty-eight (28) day knee CPM rental at a rate of $75 per day, which represents a mark-up exceeding 330% of the typical rental cost.

456.    For shoulder CPMs, Advanced Recovery and ARES charged Allstate a rental rate of $85 per day.

457.    Because shoulder CPMs were ordered for either twenty-eight (28) or forty-two (42) days, Advanced Recovery and ARES could bill Allstate between $2,380.00 and $3,570 for the rental of each shoulder CPM device.

458.    The Defendants paid $1,850 to purchase each shoulder CPM device rented by Advanced Recovery and ARES (a Flexmate S-500 Shoulder CPM).

459.    As with the knee CPM device, the Defendants were able to recoup the entire purchase price (and more) of each shoulder CPM device after only one (1) prescription.

460.    The amounts that Advanced Recovery and ARES billed Allstate for the rental of shoulder CPMs are grossly excessive when compared to commercially-available alternatives.

461.    For instance, a comparable shoulder CPM device is available for a six (6) week rental to the general public for $1,275, which equates to a rate of just $30.36 per day.

462.    In contrast, Advanced Recovery and ARES billed Allstate a total of $3,570 for each 6-week shoulder CPM rental—a rate of $85 per day—which represents a mark-up exceeding 275% of the typical rental cost.

463.    Advanced Recovery and ARES charged Allstate a rental rate of $36 per day for post-surgical CTU devices (CPT code E0218).

464.    Because the CTU devices were ordered for twenty-eight (28) days or forty-two (42) days, Advanced Recovery and ARES could bill Allstate between $1,008.00 and $1,512.00 for the rental of each CTU device.

465.    The Defendants pay between $63.01 (IceMan CTU) and $70.36 (Polar Care Cube CTU) to purchase each CTU device.

466.    As with the CPM devices, the Defendants are able to recoup the entire purchase price (and more) after only one (1) prescription.

467.    The amounts that Advanced Recovery and ARES billed Allstate for CTU rentals are grossly excessive when compared to commercially-available alternatives.

468.    Even assuming that the CTUs were medically necessary (they were not), the Defendants still billed Allstate for a 6-week rental at a price that exceeded their actual acquisition cost for the same unit by over 2,140%.

F.      **SPECIFIC EXAMPLES OF FRAUDULENT BILLING FOR MEDICALLY UNNECESSARY SERVICES**

1.      **Fraudulent Billing for Interventional Pain Management Procedures**

a.      *M.N. (claim no. 0506164565)*

469.    Claimant M.N. was supposedly involved in a motor vehicle accident on June 16, 2018 when the vehicle that he was operating was struck in the rear by another vehicle.

470.    On October 29, 2018, Simhaee purportedly examined M.N. and reported impressions of low back pain with lumbar radiculopathy, which diagnosis was not supported by the records of M.N.'s physical examination or diagnostic studies, and lumbar spondylosis, which is a degenerative condition.

471.    Indeed, the mechanism of injury of a rear-end motor vehicle accident is highly unlikely to cause significant trauma to the lumbar facet joints.

472.    Simhaee purportedly re-examined M.N. again on February 22, 2019, at which time Simhaee reported the same diagnoses identified in his report dated October 29, 2018, and also recommended medial branch blocks to the lumbar spine.

473.    On March 1, 2019, despite over eight (8) months having elapsed since the underlying motor vehicle accident, Simhaee purported to perform bilateral lumbar medial branch blocks under fluoroscopic visualization for M.N. over three (3) levels with a large volume of injectate consisting of Kenalog (a corticosteroid) and bupivacaine (an anesthetic) being placed at each of the six (6) separate injection sites.

474.    The large dosage of local anesthetic and steroid medication purportedly administered to M.N. significantly detracted from any diagnostic utility of this procedure.

475.    Rather, the apparent purpose of these lumbar medial branch nerve blocks was therapeutic (i.e., to decrease M.N.'s purported back pain) as opposed to diagnostic (i.e., to identify

the source of M.N.'s purported back pain); however, the use of medial branch blocks as a therapeutic measure is highly unusual whereas such procedures are typically used for diagnostic purposes only.

476.   Overall, the lumbar medial branch nerve blocks purportedly performed by Simhaee for M.N. on March 1, 2019 and billed to Allstate by FJ Ortho could not be reasonably attributed to the June 16, 2018 motor vehicle accident and were not medically necessary.

477.   M.N. further was subjected to MAC in connection with the medial branch nerve blocks purportedly performed on March 1, 2019 even though such anesthesia services are unnecessary and contra-indicated for such procedures.

478.   Because the medial branch nerve blocks billed to Allstate by FJ Ortho for M.N. were medically unnecessary and not causally related to the underlying motor vehicle accident, FJ Ortho's charges are false and fraudulent, and thus not compensable under New York's No-Fault laws.

### b.    *M.G. (claim no. 0522078328)*

479.   Claimant M.G. purportedly was involved in a motor vehicle accident on October 24, 2018.

480.   More than nine (9) months following the purported motor vehicle accident, on August 14, 2019, M.G. supposedly was examined by Horowitz, which office visit was billed to Allstate by FJ Ortho.

481.   According of the report of this initial examination submitted to Allstate, Horowitz diagnosed M.G. with cervical and lumbar radiculopathy and recommended ESI.

482.   Subsequently, on August 21, 2019, Horowitz purported to perform L5-S1 interlaminar ESI for M.G., which procedure was billed to Allstate by FJ Ortho along with

inappropriate charges for fluoroscopic guidance and an epidurogram, despite a lack of objective findings supporting the performance of this procedure and despite many months having elapsed since the underlying motor vehicle accident.

483.    Moreover, according to the records submitted to Allstate in connection with this ESI, M.G. was subjected to MAC during the procedure even though such anesthesia services are not necessary for this procedure.

484.    Horowitz supposedly re-examined M.G. on September 3, 2019 and noted ongoing neck and back pain.

485.    Lewin PC then billed Allstate for multiple procedures under the rubric of percutaneous discectomy purportedly performed by Horowitz for M.G. at Bergenfield on September 27, 2019.

486.    This aggressive treatment regimen carried out for M.G. on September 27, 2019 was not reasonable or appropriate due to a lack of clinical evidence of radiculopathy and the elevated risk for injury and complications accompanying the procedures.

487.    Following this procedure, on November 5, 2019, M.G. purportedly followed up with Horowitz, which office visit was billed to Allstate by FJ Ortho.

488.    According to Horowitz's report of this November 5, 2019 examination, M.G. was 50-60% improved following the procedures of September 27, 2019, even though such reported relief is below the threshold of clinical significance, and Horowitz recommended continued treatment, including medial branch blocks.

489.    Soon after, on November 22, 2019, Horowitz purportedly subjected M.G. to bilateral medial branch blocks over three (3) levels during which Horowitz injected M.G. with

significant amounts of Kenalog and bupivacaine, which indicates an inappropriate use of medial branch blocks for a therapeutic, rather than diagnostic, purpose.

490.    Indeed, the administration of large doses of steroid and local anesthetic rendered this procedure essentially useless as a diagnostic maneuver.

491.    Overall, the November 22, 2019 medial branch nerve blocks purportedly performed for M.G. were not reasonable or appropriate given the lack of evidence of traumatic facet arthritis and given the remote causal connection between M.G.'s supposed facet injuries and the underlying motor vehicle accident.

492.    Lewin PC submitted charges to Allstate for these medial branch nerve blocks, along with an additional inappropriate charge for fluoroscopic guidance, purportedly performed by Horowitz for M.G. on November 22, 2019 at Bergenfield, which also submitted facility fee charges to Allstate in connection with this unnecessary procedure.

493.    Further, Allstate was charged for unnecessary and unwarranted MAC purportedly rendered to M.G. in connection with the medial branch nerve blocks purportedly performed on November 22, 2019.

494.    Following a purported re-evaluation of M.G. on January 28, 2020 through FJ Ortho, Horowitz again purported to perform additional identical bilateral medial branch nerve blocks over three (3) levels for M.G. on February 5, 2020, which procedure (in addition to another unbundled charge for fluoroscopic guidance) was billed to Allstate by FJ Ortho and purportedly performed at an office-based surgical center.

495.    Again, Horowitz failed to meet appropriate clinical indications for this second set of medial branch nerve blocks purportedly performed for M.G.

496.    According to the records submitted to Allstate in connection with this second set of medial branch nerve blocks purportedly performed for M.G. on February 5, 2020, M.G. was placed under MAC even though such anesthesia services are not necessary for the performance of medial branch nerve blocks.

497.    Overall, because all of the treatment purportedly rendered by Horowitz to M.G. was not medically necessary and not causally related to the underlying motor vehicle accident, FJ Ortho's and Lewin PC's charges are false and fraudulent, and thus not compensable under New York's No-Fault laws.

        c.    *R.N. (claim no. 0605524628)*

498.    Claimant R.N. was purportedly involved in a motor vehicle accident on November 1, 2020 when the vehicle that he was operating was struck in the rear by another vehicle.

499.    R.N. was purportedly initially examined by Simhaee on November 12, 2020.

500.    Subsequently, on January 14, 2021, R.N. supposedly followed up with Simhaee at which visit Simhaee recommended that R.N. undergo cervical and lumbar medial branch nerve blocks.

501.    However, R.N. had underlying degenerative changes of the cervical and lumbar spine.

502.    Indeed, the lumbar and cervical spine MRIs purportedly performed for R.N. on December 10, 2020 revealed only expected age-related changes with no traumatic findings.

503.    As a result, the cervical and lumbar medial branch nerve blocks recommended by Simhaee for R.N. were to address an underlying degenerative condition of a non-traumatic origin.

504.    Nonetheless, on January 22, 2021, Simhaee purported to perform bilateral lumbar medial branch blocks at three (3) levels for R.N., which procedure was billed to Allstate by FJ Ortho, along with an unbundled charge for fluoroscopic guidance.

505.    Simhaee purported to administer high levels of injectate, including Kenalog and bupicavaine, at each level during the January 22, 2021 lumbar medial branch block procedure for R.N.

506.    In doing so, Simhaee purported to use the lumbar medial branch blocks as a therapeutic maneuver when they are appropriately used only as a diagnostic procedure to determine if the facet joints are the cause of axial back pain.

507.    Moreover, the reported mechanism of injury of a rear-end motor vehicle collision was unlikely to have caused any significant injury to the lumbar facet joints thus eliminating any causal connection between the accident and the lumbar medial branch blocks purportedly performed for R.N.

508.    On February 11, 2021, Simhaee supposedly reevaluated R.N. and recommended that R.N. undergo bilateral medial branch blocks of the cervical spine.

509.    Simhaee ultimately purportedly performed the cervical medial branch blocks for R.N. on February 19, 2021, which procedure was billed to Allstate by FJ Ortho along with an additional unbundled charge for fluoroscopic guidance.

510.    Again, as with the lumbar medial branch nerve blocks, Simhaee purported to administer very large volumes of injectate, including Kenalog and bupivacaine, at three (3) levels, which signals an inappropriate therapeutic use of this procedure.

511.    Simhaee represented in documentation submitted to Allstate that R.N. experienced significant and persistent benefit from these medial branch block procedures, which statements lack scientific credibility.

512.    Overall, because the lumbar and cervical medial branch blocks purportedly rendered by Simhaee to M.G. were not medically necessary and not causally related to the purported underlying motor vehicle accident, FJ Ortho's charges relating to these procedures are false and fraudulent, and thus not compensable under New York's No-Fault laws.

### d.    *M.F. (claim no. 0503277733)*

513.    Claimant M.F. was purportedly involved in an accident on May 22, 2018 as a pedestrian struck on her right side by a motor vehicle while she was attempting to cross the street.

514.    M.F. supposedly was evaluated by Simhaee on May 24, 2018 during an office visit billed to Allstate by FJ Ortho.

515.    FJ Ortho also submitted charges to Allstate for a follow-up visit purportedly performed of M.F. by Simhaee on June 11, 2018.

516.    Simhaee's report of this follow-up visit prescribed a lumbar ESI for M.F.

517.    Subsequently, on June 22, 2018, Simhaee purported to perform an interlaminar lumbar ESI for M.F. based on a diagnosis of lumbar radiculopathy, as well as a TPI, which procedures were billed to Allstate by FJ Ortho (along with unbundled charges for fluoroscopy) even though it is inappropriate to perform ESI and TPI concurrently.

518.    According to records submitted to Allstate, the ESI and TPI purportedly performed for M.F. on June 22, 2018 were completed under MAC, even though such anesthesia services are not necessary for ESI and TPI.

519.    The diagnosis of lumbar radiculopathy underlying these procedures wholly lacked objective clinical support and there was no evidence of a causal relationship between the diagnosis of presumptive lumbar radiculopathy and the underlying motor vehicle accident.

520.    Moreover, only approximately three (3) weeks had passed since the underlying motor vehicle accident at the time of the interventional pain management procedures purportedly performed on June 22, 2018, which did not afford M.F. sufficient time to undergo conservative treatment.

521.    Simhaee purportedly re-examined M.F. on October 18, 2018, which office visit was billed to Allstate by FJ Ortho.

522.    According to the report of this October 18, 2018 visit, M.F. complained of right buttock pain, and Simhaee diagnosed M.F. with radiculopathy of the lumbar region and sacroilitis, despite insufficient evidence to diagnose either of these conditions.

523.    Simhaee concluded his report of this October 18, 2018 evaluation with a recommendation that M.F. undergo a right sacroiliac joint injection despite a lack of objective findings and physical correlates to suggest the presence of a sacroiliac injury.

524.    Indeed, there was no evidence in the diagnostic studies purportedly performed for M.F. to suggest inflammation in the sacroiliac joint.

525.    The next day, on October 19, 2018, Simhaee purported to perform a right sacroiliac joint injection for M.F. along with additional TPI, which were billed to Allstate by FJ Ortho.

526.    According to the records submitted to Allstate in connection with the sacroiliac joint injection and TPI purportedly performed on October 19, 2018, M.F. was subjected to MAC during the administration of these injections even though such anesthesia services were wholly unnecessary for such procedures and exposed M.F. to additional risk.

527.    Subsequently, FJ Ortho billed for a follow-up examination purportedly performed of M.F. by Simhaee on November 1, 2018.

528.    Simhaee's report of this November 1, 2018 examination noted that M.F. reported relief from the sacroiliac joint injection, but the pain had returned.

529.    Simhaee concluded the report regarding the November 1, 2018 examination by recommending "a repeat right sacroiliac joint injection for symptomatic pain relief."

530.    FJ Ortho submitted charges to Allstate for a second set of injections purportedly performed by Simhaee for M.F. on November 2, 2018, including another right sacroiliac joint injection and additional TPI.

531.    M.F. again was purportedly subjected to MAC in connection with this repeat set of a sacroiliac joint injection and TPI even though, just as with the first set of such injections, these very simple procedures did not require any anesthesia other than local subcutaneous medication.

532.    Overall, because none of the interventional pain management procedures purportedly performed by Simhaee for M.F. were reasonable or necessary to treat any injuries purportedly sustained by M.F. in the underlying motor vehicle accident, FJ Ortho's charges relating to these procedures are false and fraudulent, and thus not compensable under New York's No-Fault laws.

### 2.    Fraudulent Billing for Arthroscopic Surgeries and DME

#### a.    Patient W.V. (claim no. 0572777605)

533.    Patient W.V. was purportedly involved in a motor vehicle accident on December 12, 2019.

534.    Subsequently, W.V. was purportedly examined by Winiarsky on December 30, 2019 at Brooklyn Premier's 1414 Newkirk Avenue location, which examination was billed to Allstate by FJ Ortho.

535.    Although Winiarsky's examination of W.V. apparently revealed right knee pain, Winiarsky reported no mechanical symptoms (e.g., locking or catching), no deformity, no effusion (i.e., excess fluid), and no bruising.

536.    Despite these findings, which were indicative of a soft tissue sprain, strain, or contusion, and only three weeks having elapsed since the supposed motor vehicle accident with no attempt at conservative treatment, Winiarsky prematurely and inappropriately ordered an MRI of W.V.'s right knee.

537.    Another provider, Daniel Popowitz, DPM ("Popowitz"), also later purportedly performed a further examination of W.V. on January 9, 2020, which also was billed to Allstate by FJ Ortho, to evaluate W.V.'s right ankle.

538.    Curiously, Winiarsky did not mention right ankle pain in his report regarding the December 30, 2019 examination of W.V.

539.    Indeed, Popowitz's notes of his evaluation of W.V., which purportedly took place just nine (9) days after Winiarsky's evaluation, made findings that were wholly absent from the report of Winiarsky's examination, including limited range of motion and swelling of the right ankle.

540.    Popowitz purportedly administered a cortisone injection to W.V.'s right ankle on January 9, 2020, but did not recommend physical therapy for W.V.'s supposed right ankle pain.

541.    Despite less than one month having elapsed since the alleged motor vehicle accident and no course of conservative therapy being completed or even recommended, Popowitz

instructed W.V. to follow-up in three (3) weeks and noted the possibility of "arthroscopy and exploration of the right ankle."

542.    Winiarsky purportedly re-examined W.V. on January 15, 2020 during a follow-up visit regarding W.V.'s purported right knee pain, which visit was billed to Allstate by FJ Ortho.

543.    Winiarsky specifically noted that W.V. was not attending physical therapy, and again recommended an MRI of W.V.'s right knee.

544.    Approximately one week later, FJ Ortho billed Allstate for another follow-up visit of W.V. purportedly performed by David Mandil, DPM ("Mandil") on January 23, 2020.

545.    The report summarizing the January 23, 2020 examination purportedly conducted as to W.V. notes that the claimant continued to have pain in his right ankle, which he had previously injured and which already contained hardware from a previous surgery.

546.    Based on W.V.'s history of a pre-existing right ankle injury and the total lack of any complaints regarding the right ankle during W.V.'s first orthopedic visit with Winiarsky, there was no clear right ankle injury related to the underlying motor vehicle accident.

547.    Mandil ordered x-rays and an MRI of W.V.'s right ankle to assist in "preoperative planning."

548.    W.V. purportedly underwent an MRI of his right ankle on February 7, 2020.

549.    This right ankle MRI did not show any acute findings other than mild bone contusions that would generally recover within approximately six (6) to twelve (12) weeks.

550.    Indeed, the MRI study of W.V.'s right ankle otherwise showed chronic findings without any mention of new injury.

551.    Popowitz supposedly re-examined W.V. on March 19, 2020, which visit also was billed to Allstate by FJ Ortho.

552.    The report of Popowitz's March 19, 2020 exam of W.V. characterized W.V.'s right ankle pain as "worsening" despite unknown conservative measures and cited to the "internal derangement as well as chronic ligament injury" supposedly shown in the MRI of W.V.'s right ankle as support for surgery.

553.    However, it is unclear what diagnosis the right ankle surgery was intended to treat given the lack of ankle instability and the nonspecific assessment of pain and "internal derangement."

554.    Ultimately, Popowitz and Mandil purportedly performed surgery on W.V.'s right ankle at Bergenfield on May 18, 2020, including debridement of the soft tissue and synovitis and hardware removal.

555.    Notably, Popowitz also reported that W.V.'s right ankle surgery included placement of an internal brace for "added support," as well as a ligament repair procedure intended to address ankle instability, even though the March 19, 2020 preoperative office note reported that W.V.'s right ankle had no instability.

556.    Indeed, even if W.V. had sprained ankle ligaments, the most reasonable initial course of treatment would have been physical therapy, rather than surgery.

557.    Therefore, the ligament repairs purportedly performed for W.V. on May 18, 2020 were not medically necessary.

558.    Popowitz also performed a medically unnecessary PRP injection to the surgical sites.

559.    Lewin PC submitted astronomical charges to Allstate in connection with this unnecessary surgical procedure that totaled over $110,000.

560.    For its part, Bergenfield charged Allstate more than an additional $70,000 for the facility fees in connection with W.V.'s right ankle surgery purportedly performed at the facility on May 18, 2020.

561.    Further, both ARES and Advanced Recovery submitted charges to Allstate for DME purportedly dispensed to W.V. to assist in his recovery from the unnecessary right ankle surgery.

562.    ARES billed Allstate for crutches purportedly provided to W.V. on May 18, 2020 and a CPM device purportedly provided to W.V. for a two-week rental on June 16, 2020, even though W.V. purportedly had already received a CPM device from another DME provider on May 19, 2020.

563.    The CPM device was not necessary for W.V.'s recovery from the right ankle surgery because standard postoperative physical therapy would suffice.

564.    Meanwhile, Advanced Recovery charged Allstate for a cam walker apparatus purportedly provided to W.V. on June 3, 2020.

565.    Finally, FJ Ortho billed Allstate under CPT code 99024 for a post-operative follow-up visit with Mandil for W.V. that purportedly occurred on June 3, 2020, fewer than ninety (90) days after the supposed surgery of May 18, 2020, even though such follow-up care cannot be charged separately.

566.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, ARES, and Advanced Recovery were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, ARES, and Advanced Recovery's bills for W.V. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

### b. *Patient I.M. (claim no. 0532030814)*

567.    Patient I.M. was purportedly involved in a motor vehicle accident on January 11, 2019.

568.    On May 9, 2019, I.M. purportedly underwent an initial examination conducted by Winiarsky's physician assistant.

569.    The report of this examination states that I.M. described an aching pain in his left knee, but that he had not started any physical therapy treatment.

570.    The report concluded that the diagnostic imaging revealed a left knee meniscus tear and left knee arthroscopy was recommended, which I.M. agreed to.

571.    Thereafter, on May 21, 2019, Winiarsky purportedly performed left knee surgery for I.M. at Bergenfield, which procedure was billed to Allstate by Lewin PC at excessive rates while Bergenfield submitted additional facility fee charges.

572.    According to Winiarsky, the "real pathology" identified during the surgery was an anterior cruciate ligament (ACL) tear, which was not visualized on the preoperative MRI study.

573.    Winiarsky also purportedly performed an unnecessary PRP injection into I.M.'s left knee during the procedure resulting in additional charges of $957.28 and $5,000.00 submitted to Allstate by Bergenfield and Lewin PC, respectively.

574.    Following this left knee surgery, ARES submitted charges to Allstate for a cane and knee orthosis prescribed by Winiarsky and purportedly dispensed to I.M. on May 21, 2019.

575.    Additionally, Advanced Recovery submitted charges for unnecessary post-operative DME supposedly provided I.M. on May 22, 2019, including CTU and CPM devices prescribed by Winiarsky.

576.    FJ Ortho subsequently submitted charges to Allstate for a post-operative visit for suture removal under CPT code 99024 purportedly performed by Winiarsky on June 5, 2019 and taking place at Brooklyn Premier's location at 1414 Newkirk Avenue in Brooklyn, even though such visits within ninety (90) days of the surgical procedure may not be separately charged under the applicable Fee Schedule.

577.    Winiarsky's report of this post-operative visit notes that he recommended that I.M. undergo a second surgery "for ACL repair."

578.    That same day, on June 5, 2019, I.M. also supposedly underwent another initial evaluation by Michael Horowitz, M.D. ("M. Horowitz"), which examination was billed to Allstate by FJ Ortho as taking place at a Brooklyn Premier location at 142 Joralemon Street in Brooklyn.

579.    M. Horowitz noted in his report summarizing his purported examination of I.M. that the previously performed MRI of I.M.'s left hand "show[ed] no significant injury other than the collateral ligament sprain" for which I.M. did not have any symptoms.

580.    M. Horowitz ordered imaging of I.M.'s left hand, wrist, and forearm to look for possible fracture or tendon rupture.

581.    I.M. purportedly underwent a new left knee MRI on July 2, 2019, but the radiologist did not find an ACL tear, which contradicts Winiarsky's previous arthroscopic findings.

582.    Nonetheless, less than two (2) weeks later, on July 16, 2019, Winiarsky purportedly performed a second left knee arthroscopic surgery for I.M. at Bergenfield.

583.    Notably, this procedure also found "no obvious tearing of the anterior cruciate ligament," which obviously contradicted Winiarsky's findings from the previous arthroscopic procedure from May 21, 2019.

584. Despite purporting to perform a limited diagnostic arthroscopy, Winiarsky inexplicably also purported to administer a PRP injection to I.M.'s left knee joint even though the procedure did not require a PRP injection.

585. Rather, this PRP injection merely served to inflate Lewin PC and Bergenfield's bills to Allstate by $5,000.00 and $957.28, respectively.

586. Winiarsky and his assistant surgeon's fees were charged to Allstate through Lewin PC, while Bergenfield also submitted facility fee charges in connection with I.M.'s second unnecessary left knee surgery.

587. ARES subsequently charged Allstate for crutches prescribed by Winiarsky and purportedly dispensed to I.M. on July 16, 2019 following this second left knee surgery.

588. Advanced Recovery further submitted charges to Allstate for unnecessary post-operative DME prescribed by Winiarsky, including CTU and CPM devices purportedly dispensed to I.M. for a twenty-eight (28) day rental on July 18, 2019, and an ACL brace billed at over $600.00 that was purportedly dispensed to I.M. on August 2, 2019 even though the July 16, 2019 operative note indicated that I.M.'s ACL was intact.

589. FJ Ortho moreover submitted charges for post-operative follow-up visits for I.M. purportedly performed by Winiarsky's physician assistant on August 1, 2019 and August 15, 2019 under CPT code 99024 even though such visits within ninety (90) days of the surgery cannot be separately charged under the applicable Fee Schedule.

590. Overall, the records submitted to Allstate by FJ Ortho, Lewin PC, and Bergenfield regarding Winiarsky's dual left knee arthroscopies for I.M. are highly unusual and do not support the medical necessity of either of the procedures.

591.    Moreover, the charges for both of these procedures submitted to Allstate by Lewin PC and Bergenfield were excessive.

592.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, ARES, and Advanced Recovery were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, ARES, and Advanced Recovery's bills for I.M. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

c.    *Patient L.D. (claim no. 0501906929)*

593.    Patient L.D. was purportedly injured on April 25, 2018 when she was struck by a motor vehicle while crossing the street.

594.    Nearly a year later, according to records submitted to Allstate, L.D. initiated care with the Defendants.

595.    First, FJ Ortho billed for an initial evaluation of L.D. purportedly conducted on March 22, 2019 by Marc Cohen, M.D. ("Cohen") at Brooklyn Premier's 1414 Newkirk Avenue location in Brooklyn.

596.    Approximately one week later, on March 29, 2019, Cohen purported to perform a cervical epidural steroid injection billed to Allstate by FJ Ortho even though such treatment was not fully indicated given a lack of clear neurocompressive pathology.

597.    FJ Ortho continued to submit charges to Allstate for services purportedly rendered by Cohen to L.D., including follow-up visits on April 19, 2019 and May 17, 2019.

598.    Concurrent with Cohen's treatment of L.D. through FJ Ortho, on April 17, 2019, L.D. next purported to initiate orthopedic care with Winiarsky for an evaluation of her reported left shoulder pain.

599.    Winiarsky concluded his report of the April 17, 2019 examination of L.D. by recommending arthroscopic surgery for the left shoulder.

600.    On April 30, 2019, Winiarsky purported to perform left shoulder arthroscopic surgery for L.D. at Bergenfield to treat a reported diagnosis of left shoulder impingement and bursitis.

601.    However, L.D. was only thirty-one (31) years old on April 30, 2019, which is quite young for a diagnosis of impingement.

602.    Moreover, shoulder impingement would not be caused by the reported mechanism of L.D.'s alleged injuries, which involved the twisting of her body upon impact by the motor vehicle without falling.

603.    Therefore, Winiarsky allegedly subjected L.D. to a surgery through Lewin PC and Bergenfield that was unrelated to the supposed accident.

604.    Winiarsky further purported to unnecessarily inject PRP in the subacromial space during this procedure for L.D.'s left shoulder.

605.    However, the PRP injection only served to inflate Lewin PC's charges to Allstate by $5,000 and Bergenfield's charges to Allstate by nearly $1,000.

606.    Indeed, the charges submitted by Lewin PC and Bergenfield related to the relatively simple arthroscopic procedure purportedly performed for L.D. on April 30, 2019 were excessive.

607.    This unnecessary procedure also spawned a proliferation of DME purportedly dispensed to L.D. by ARES and Advanced Recovery.

608.    First, ARES submitted charges to Allstate for a shoulder orthosis prescribed by Winiarsky and purportedly dispensed to L.D. on April 30, 2019.

609.    Additionally, Advanced Recovery submitted charges to Allstate for CPMs and CTUs prescribed by Winiarsky for a twenty-eight (28) day rental commencing May 5, 2019, which also were not necessary for L.D.'s recovery from this relatively simple arthroscopic decompression and synovectomy whereas standard post-operative physical therapy would suffice.

610.    Advanced Recovery subsequently submitted charges to Allstate for an additional fourteen (14) day rental of these unnecessary CPMs and CTUs commencing on June 2, 2019.

611.    FJ Ortho further submitted charges to Allstate under CPT code 99024 for post-operative examinations of L.R. purportedly conducted by Winiarsky on May 15, 2019 and June 5, 2019 even though such visits are not compensable under the applicable Fee Schedule within ninety (90) days of the underlying surgery, which supposedly took place on April 30, 2019.

612.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES's bills for L.D. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

**d.    *Patient D.R. (claim no. 0481555670)***

613.    Patient D.R. was supposedly involved in a motor vehicle accident on November 1, 2017.

614.    Based on the purported mechanism of injury of a low-speed accident wherein the vehicle in which D.R. was a passenger was slowly bumped by another vehicle while waiting at a red light, D.R., at most, according to records submitted to Allstate, only would have sustained mild self-limited soft tissue sprains or strains of the spine and right shoulder, which injuries generally carry a recovery time of less than twelve (12) weeks with a course of physical therapy or chiropractic treatment.

615.    D.R. purportedly initiated treatment with Winiarsky on January 5, 2018 with complaints of right shoulder pain and neck pain, which initial evaluation was billed to Allstate by FJ Ortho.

616.    Winiarsky's report of this initial examination indicated that an MRI of D.R.'s right shoulder confirmed a superior labrum anterior posterior (SLAP) tear.

617.    Winiarsky's report regarding his initial examination of D.R. also suggested that D.R. had failed conservative treatment even though no specific conservative treatment was documented.

618.    Winiarsky inappropriately recommended that D.R. undergo surgery for her right shoulder.

619.    However, at the time of Winiarsky's recommendation for surgery at D.R.'s initial visit, just over two (2) months had elapsed since the supposed motor vehicle accident, which did not afford D.R. sufficient time to recover from her self-limited soft tissue injury.

620.    FJ Ortho submitted charges to Allstate for a follow-up examination that Winiarsky purportedly performed of D.R. on March 21, 2018.

621.    In his report of this March 21, 2018 examination, Winiarsky again recommended arthroscopic treatment for the reported MRI finding of a SLAP tear even though not all superior labral tears require surgical treatment.

622.    Nonetheless, D.R. purportedly underwent a medically unnecessary right shoulder arthroscopy supposedly performed by Winiarsky through Lewin PC at Bergenfield on May 8, 2018.

623.    However, according to the report of the May 8, 2018 procedure, contrary to Winiarsky's justification for performing the right shoulder surgery in the first instance, D.R.

actually did not have an unstable SLAP tear and did not require either a SLAP repair or a biceps tenodesis.

624.    Rather, Winiarsky reported that he simply found a "posterior SLAP lesion," which he then debrided (i.e., trimmed or smoothed).

625.    Winiarsky additionally claimed to have performed a synovectomy and subacromial decompression during D.R.'s right shoulder surgery.

626.    However, such procedures were unnecessary because D.R. had not yet undergone a full course of conservative treatment for shoulder impingement, which diagnosis is also relatively uncommon for patients in their early thirties, such as D.R.

627.    Moreover, the pathologies reported by Winiarsky following the arthroscopic shoulder surgery purportedly performed for D.R. would not be expected to be post-traumatic in nature.

628.    In addition to being unnecessary and unrelated to the purported underlying motor vehicle accident, the May 8, 2018 arthroscopic procedure purportedly performed for D.R. was excessively charged.

629.    Moreover, this unnecessary procedure also served as justification for the prescription by Winiarsky of multiple post-operative DME items purportedly provided to D.R. by ARES and Advanced Recovery.

630.    First, ARES submitted charges to Allstate for a shoulder orthosis purportedly dispensed to D.R. on May 8, 2018.

631.    Further, Advanced Recovery billed Allstate more than $3,000 for a twenty-eight (28) day rental of a shoulder CPM device and CTU device purportedly dispensed to D.R. on May

9, 2018 even though such devices were not necessary following a relatively simple debridement and would not be more effective than standard post-operative physical therapy.

632.    Advanced Recovery further billed Allstate for an additional fourteen (14) day rental of this wholly unnecessary CPM device at an additional charge of over $1,000.

633.    Soon after the unnecessary shoulder surgery, FJ Ortho further billed Allstate for post-operative visits purportedly performed by Winiarsky for D.R. on May 22, 2018 and June 19, 2018, even though such post-operative visits are not permitted to be charged under the applicable Fee Schedule.

634.    On August 13, 2018, Winiarsky recommended a PRP injection for D.R., which he purportedly performed on October 22, 2018.

635.    However, this PRP injection, billed to Allstate by FJ Ortho at an excessive rate of over $5,000, was medically unnecessary and afforded D.R. only minimal relief.

636.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, and ARES were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, and ARES's bills for D.R. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

**e.    *Patient T.E. (claim no. 0491533535)***

637.    Patient T.E. was allegedly involved in a motor vehicle accident on February 10, 2018.

638.    According to records submitted to Allstate, T.E. began treating with Winiarsky on April 18, 2018, just over two (2) months after the purported motor vehicle accident.

639.    Specifically, FJ Ortho billed Allstate for an initial examination purportedly performed by Winiarsky on April 18, 2018 at Brooklyn Premier's 1414 Newkirk Avenue location in Brooklyn.

640.    Despite failing to provide a report of T.E.'s mechanical symptoms, physical exam findings regarding T.E., or an assessment of T.E.'s condition, Winiarsky recommended that T.E. undergo a right knee arthroscopy for an apparent degenerative pathology without affording T.E. sufficient time to recover from a soft tissue contusion.

641.    T.E. purportedly underwent right knee arthroscopic surgery performed by Winiarsky through Lewin PC on May 29, 2018 at Bergenfield.

642.    Following the procedure, Winiarsky diagnosed T.E. with arthritis, a medial meniscus tear, and synovitis.

643.    Notably, Winiarsky's operative note for T.E. did not clearly identify any post-traumatic findings, but, rather, simply a degenerative knee pathology.

644.    In addition to being medically unnecessary and unrelated to the purported underlying motor vehicle accident, the charges submitted to Allstate by Lewin PC and Bergenfield for the arthroscopic procedure of T.E.'s right knee were excessive.

645.    This unnecessary procedure purportedly performed for T.E. also generated billing opportunities for ARES and Advanced Recovery.

646.    First, Advanced Recovery billed Allstate for post-operative DME prescribed by Winiarsky, including a CPM device charged at over $2,000, even though a CPM device was not necessary for T.E.'s recovery from a simple debridement procedure.

647.    Additionally, ARES charged Allstate more than $500 for a knee orthosis prescribed by Winiarsky and supposedly dispensed to T.E. even though there was no evidence of ligamentous pathology, and such an item would not be indicated for a contusion or knee arthritis.

648.    Subsequently, FJ Ortho submitted charges to Allstate under CPT code 99024 for post-operative evaluations even though fewer than ninety (90) days had elapsed since the surgery, which charges are not permissible under the applicable Fee Schedule.

649.    Overall, the records submitted to Allstate regarding T.E. were most consistent with soft tissue sprains and strains, as well as a right knee contusion, which injuries, if sustained at all, would be self-limited injuries that would generally recover over the course of up to twelve (12) weeks.

650.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES's bills for T.E. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

**f.    *Patient S.S. (claim no. 0545721268)***

651.    Patient S.S. was purportedly involved in a motor vehicle accident on or about April 15, 2019.

652.    FJ Ortho billed Allstate for an initial evaluation of S.S. performed by Winiarsky's physician assistant supposedly taking place at The Center for Musculoskeletal Disorders' Forest Hills location on May 16, 2019.

653.    The report of this initial evaluation states that S.S.'s knees hit the dashboard during the accident, which is consistent with bilateral knee contusions, but S.S. nonetheless was recommended to undergo "MRI of the bilateral knees to evaluate for meniscus tear."

654.    Typically, soft tissue injuries, including contusions, such as those likely sustained by S.S. according to the records submitted to Allstate, will recover within up to twelve (12) weeks.

655.    Thus, MRI studies for S.S.'s knees were ordered prematurely before the expected resolution of any soft tissue injuries.

656.    According to the report of this May 16, 2019 office visit, S.S. reported that he had not received any injections, therapy, or other treatment.

657.    S.S. supposedly received a corticosteroid injection to his right knee at the time of the May 16, 2019 initial evaluation.

658.    Soon after, on May 20, 2019, FJ Ortho billed for an initial pain management evaluation of S.S. purportedly conducted by Simhaee at The Center for Musculoskeletal Disorders' Forest Hills location.

659.    According to the report of his examination, Simhaee referred S.S. for additional MRI studies of the cervical and lumbar spine.

660.    The results of the right knee MRI study purportedly performed for S.S. on May 19, 2019 did not clearly show any post-traumatic findings.

661.    The results of the left knee MRI study purportedly performed for S.S. on May 19, 2019 did not clearly show any acute findings apart from potential ligament sprains.

662.    The reports issued regarding the cervical and lumbar MRI studies purportedly performed for S.S. on May 26, 2019 suggested multiple levels of disc "herniations," which most likely represented degenerative disc disease.

663.    Following these MRI studies, FJ Ortho again billed for another evaluation of S.S. purportedly performed by another provider, Seth Grossman, M.D. ("Grossman"), on June 3, 2019.

664.    Grossman suggested in the report summarizing this visit that S.S. had persistent symptoms despite an extensive course of conservative management even though S.S. purportedly had only been undergoing physical therapy for two (2) weeks as of June 3, 2019.

665.    Grossman further failed to address the magnitude of the arthritic changes in S.S.'s knees.

666.    Grossman ultimately recommended a right knee arthroscopic procedure for S.S. after S.S. purportedly received only two (2) weeks of physical therapy and after only six (6) weeks having elapsed since the alleged underlying motor vehicle accident.

667.    Several days later, on June 7, 2019, S.S. purportedly returned to The Center for Musculoskeletal Disorders' Forest Hills location for a follow-up visit with Simhaee, which visit was billed to Allstate by FJ Ortho.

668.    Though S.S. was reported to be "doing well" with no significant pain down the arms and legs, Simhaee inexplicably maintained diagnoses of cervical and lumbar radiculopathy and noted consideration for cervical and lumbar injections.

669.    Lewin PC submitted charges to Allstate for a right knee arthroscopic surgery supposedly performed by Grossman at Bergenfield on July 2, 2019.

670.    Grossman's report relating to this procedure proclaimed that S.S. "had many months of severe pain" even though only approximately two and a half months had elapsed since the alleged underlying motor vehicle accident.

671.    In actuality, the right knee arthroscopy was planned before S.S. received sufficient conservative care.

672.    Further, the purported right knee arthroscopic procedure was performed in the presence of severe degenerative changes with a condition commonly described as "bone-on-bone" arthritis.

673.    Grossman also purported to unnecessarily inject S.S.'s right knee with PRP in connection with this procedure on July 2, 2019.

674.    Overall, the records submitted to Allstate by Lewin PC and Bergenfield reflect excessive charges for a relatively simply debridement procedure, along with a combined added cost of nearly $6,000 for the unnecessary PRP injection.

675.    Subsequently, ARES submitted charges to Allstate for multiple unnecessary DME items prescribed by Grossman and purportedly dispensed to S.S. in connection with his recovery from the right knee surgery, including a CTU device, a CPM device for the knee (even though such a device would not be indicated for a simple debridement of an arthritic knee with associated meniscal pathology), and a knee brace (despite a lack of significant ligamentous injury or instability).

676.    ARES submitted charges to Allstate for this unnecessary DME totaling approximately $3,600.

677.    Grossman purportedly re-examined S.S. post-operatively on July 10, 2019, August 7, 2019, and September 4, 2019, for which visits FJ Ortho billed Allstate under CPT code 99024 even though such post-surgical follow-up examinations performed fewer than ninety (90) days following the underlying surgical procedure cannot be separately charged under the applicable Fee Schedule.

678.    Even by December 2019, S.S. continued to purportedly receive treatment from Grossman according to bills and records submitted to Allstate by FJ Ortho, including those reflecting a corticosteroid injection purportedly administered to S.S. on December 4, 2019.

679.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, and ARES were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, and ARES's bills for S.S. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

### g.    *Patient G.M. (claim no. 0524200169)*

680.    Patient G.M. was purportedly involved in a motor vehicle accident on October 20, 2018.

681.    G.M. purportedly initiated treatment with the Defendants on January 18, 2019 when he was examined by Donald Heitman, M.D. ("Heitman") approximately three (3) months after the underlying motor vehicle accident.

682.    The report of this examination submitted to Allstate noted G.M.'s persistent knee pain and Heitman's discussion with G.M. regarding surgical options for his left knee.

683.    G.M. supposedly had previously undergone a premature MRI of his left knee on November 14, 2018 before G.M. had sufficient time to recover from any soft tissue injuries.

684.    Heitman indicated that the MRI of G.M.'s left knee showed evidence of a medial meniscus tear even though, according to Heitman, G.M.'s clinical examination only was "somewhat consistent" with such a diagnosis.

685.    According to Heitman's report of the January 18, 2019 examination, G.M. agreed to undergo a diagnostic arthroscopic procedure of his left knee.

686.    Lewin PC subsequently submitted charges to Allstate for an arthroscopy of G.M.'s left knee purportedly performed by Heitman at Bergenfield on February 7, 2019.

687.    Although the pre-operative diagnosis provided by Heitman was a left knee medial meniscus tear, Heitman reportedly found no meniscus tear at the time of the arthroscopy, which is consistent with the negative examination for meniscal pathology.

688.    Heitman reported that he performed a chondroplasty (repair of damaged cartilage) and a limited anterior synovectomy (removal of synovial tissue).

689.    This arthroscopic procedure allegedly performed for G.M. was medically unnecessary because it was performed when G.M. had not been maximally treated conservatively and was justified by a diagnosis of a supposed meniscal tear that was not strongly supported by the exam findings, and, ultimately, was not found to be present at all.

690.    Moreover, Lewin PC and Bergenfield submitted excessive charges for the relatively simple arthroscopic procedures purportedly performed for G.M.'s left knee.

691.    ARES also submitted excessive charges to Allstate for unnecessary DME prescribed by Heitman, including a twenty-eight (28) day rental of a CTU device and a CPM device not indicated for G.M.'s recovery from the simple debridement procedure, resulting in over $3,000 in charges to Allstate.

692.    Because the treatment, services, and DME billed to Allstate by Lewin PC, Bergenfield, and ARES were excessive, medically unnecessary, and falsely charged, Lewin PC, Bergenfield, and ARES's bills relating to G.M. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

**h.    *Patient T.M. (claim no. 0504027301)***

693.    Patient T.M. was allegedly involved in a motor vehicle accident on May 31, 2018.

694.    According to the records submitted to Allstate regarding the healthcare services purportedly rendered to T.M. following this alleged motor vehicle accident, T.M. likely sustained mere soft tissue sprains or strains.

695.    Such soft tissue injuries are generally self-limited in nature and would typically resolve within twelve (12) weeks, at most.

696.    FJ Ortho charged Allstate for an initial visit purportedly performed for T.M. on January 7, 2019 by Winiarsky to evaluate T.M.'s complaints of left shoulder pain.

697.    According to Winiarsky's report submitted to Allstate regarding this initial evaluation of T.M., the diagnostic imaging of T.M.'s left shoulder was notable for acromioclavicular osteoarthritis and a partial rotator cuff tear.

698.    Prior to this examination, the premature left shoulder MRI purportedly performed for T.M. just over one (1) month after the alleged motor vehicle accident showed degenerative findings of tendinopathy and acromioclavicular arthritis as well as a likely degenerative attritional tear of the rotator cuff, which findings are most often manageable with conservative treatment.

699.    Surgery should only be considered for such findings after the patient fails a full course of conservative treatment.

700.    However, Winiarsky recommended a left shoulder arthroscopy for T.M. at this initial visit before T.M. had undergone sufficient conservative treatment.

701.    Lewin PC then submitted charges to Allstate for a left shoulder arthroscopic surgery purportedly performed by Winiarsky as to T.M. on March 5, 2019 at Hudson Regional Hospital.

702.    As part of this procedure for T.M., Winiarsky purportedly administered a PRP injection in the subacromial space that was not indicated.

111

703.    The total charges submitted to Allstate regarding this left shoulder arthroscopic procedure were highly excessive with Hudson Regional Hospital submitting charges exceeding $179,000 and Lewin PC submitting charges exceeding $148,000.

704.    In actuality, assuming that the left shoulder arthroscopy purportedly performed for T.M. was medically necessary (it was not), under the applicable Fee Schedule, Hudson Regional Hospital was not entitled to more than $6,150.66 for the facility fee and Lewin PC was entitled to no more than $4,507.99 for the surgeon and assistant surgeon's fees.

705.    Following the surgery, Advanced Recovery submitted charges to Allstate for a twenty-eight (28) day rental of unnecessary CPMs and CTUs purportedly prescribed to T.M. by Winiarsky and dispensed on March 6, 2019 (with an additional fourteen (14) rental commencing on April 3, 2019) even though a shoulder CPM device has not been shown to be more effective than standard post-operative physical therapy.

706.    According to T.M., Winiarsky's nurse informed her that she would be receiving post-operative DME while T.M. was at the hospital for the surgery.

707.    T.M. reported that she "just agreed" with what the nurse told her regarding the forthcoming equipment and "wait[ed] until it came."

708.    Therefore, T.M. was not given any choice as to the DME provider for this post-operative DME prescribed by Winiarsky.

709.    FJ Ortho further charged Allstate under CPT code 99024 for a post-operative visit purportedly performed by Winiarsky for T.M. on April 15, 2019, even though such a follow-up visit within ninety (90) days of the underlying procedure is not permissible under the applicable Fee Schedule.

710.    Winiarsky purportedly examined T.M. again on June 17, 2019 through FJ Ortho and recommended that T.M. undergo another unnecessary PRP injection, which was purportedly provided to T.M. by Winiarsky on July 10, 2019 and charged to Allstate by FJ Ortho at a rate of $5,000.

711.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, and Advanced Recovery were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, and Advanced Recovery's bills for T.M. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

### i.    *Patient M.Z. (claim no. 0573283990)*

712.    Patient M.Z. was purportedly involved in an accident on December 8, 2019 as a pedestrian who fell to his knees after being struck by a motor vehicle.

713.    FJ Ortho submitted charges to Allstate for an initial evaluation of M.Z. purportedly conducted by Winiarsky on June 11, 2020 at Brooklyn Premier's 1414 Newkirk Avenue location in Brooklyn.

714.    Winarsky's report of this examination noted that the MRI of M.Z.'s left knee, prematurely obtained on or about January 9, 2020, showed a meniscal tear with extrusion.

715.    However, M.Z.'s mechanism of injury (i.e., falling forward onto his knees) would not cause a meniscus tear.

716.    Rather, according to records submitted to Allstate, M.Z. likely sustained soft tissue contusions to the front of his knees, which self-limited injuries would generally recover within twelve (12) weeks.

717.    Following this initial examination of M.Z., Winiarsky recommended left knee arthroscopy for M.Z.'s degenerative knee pathologies that were not causally related to the underlying motor vehicle accident.

718.    FJ Ortho submitted additional charges to Allstate for a follow-up visit purportedly performed of M.Z. by Winiarsky on June 19, 2020.

719.    According to Winiarsky's report of this June 19, 2020 visit, the purpose of the visit was for COVID-19 testing and "to discuss surgery," however, the report does not indicate what was discussed beyond that purportedly already reviewed at the initial visit.

720.    Subsequently, Lewin PC submitted charges for a left knee arthroscopic surgery for M.Z. purportedly performed on June 25, 2020 by Winiarsky at Bergenfield.

721.    According to Winiarsky's report of this procedure for M.Z.'s left knee, he performed a partial medial meniscectomy and synovectomy for reports of "very mild synovitis."

722.    Overall, the records submitted to Allstate reflect charges from Lewin PC and Bergenfield totaling over $70,000 for this relatively simple debridement procedure.

723.    The charges submitted to Allstate by Lewin PC and Bergenfield included charges for a PRP injection purportedly performed by Winiarsky during the left knee arthroscopic procedure for M.Z., which injection was not indicated.

724.    This unnecessary procedure served as an opportunity for Winiarsky to prescribe post-operative DME to be charged to Allstate by Advanced Recovery and ARES.

725.    Specifically, Winiarsky prescribed a knee CPM device for M.Z.'s use post-operatively even though such a device is not normally used for a simple meniscectomy and partial synovectomy.

726.    Advanced Recovery submitted excessive charges to Allstate for post-operative DME purportedly dispensed to M.Z., including $2,100 in charges to Allstate for the unnecessary knee CPM device, $1,000 in charges for a CTM device, and over $500 for a knee orthosis.

727.    Further, ARES submitted additional charges to Allstate for a cane purportedly provided to M.Z. following his left knee arthroscopic surgery purportedly performed by Winiarsky.

728.    FJ Ortho also billed Allstate for a post-operative visit for M.Z. under CPT code 99024 purportedly performed by Winiarsky for M.Z. even though fewer than ninety (90) days had elapsed since the underlying surgery and thus the visit was not permitted to be separately charged under the applicable Fee Schedule.

729.    Because the treatment, services, and DME billed to Allstate by FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES were excessive, medically unnecessary, and falsely charged, FJ Ortho, Lewin PC, Bergenfield, Advanced Recovery, and ARES's bills for M.Z. are false and fraudulent, and thus not compensable under New York's No-Fault laws.

## VI.    SPECIFIC ALLEGATIONS OF MAIL FRAUD RACKETEERING ACTIVITY

730.    Throughout the course of this entire scheme, Horowitz, Lewin, Winiarsky, Simhaee, and D. Horowitz—working through the Lewin PC, FJ Ortho, Bergenfield, ICP, Advanced Recovery, and ARES enterprises—(a) created, prepared, and submitted (or caused to be created, prepared, and submitted) false medical documentation, (b) intentionally violated the laws of the United States by devising, and intending to devise, schemes to defraud and obtain money and property by means of false and fraudulent pretenses in representations, and (c) placed, or caused to be placed, in a post office and/or authorized depository for mail matter, things to be

sent and delivered by the United States Postal Service, in violation of 18 U.S.C. § 1341 (mail fraud) for the purpose of executing, or attempting, such fraudulent schemes.

731.    Unless otherwise pled to the contrary, all documents, notes, reports, health insurance claim forms, letters, and requests for payment in connection with the insurance claims referenced throughout this pleading (and accompanying exhibits) traveled through the U.S. Mail.

732.    Every automobile insurance claim detailed within this Complaint involved at least one use of the U.S. Mail, including the mailing of, among other things, the notice of claim, initial policies, insurance payments, claim-related payments, and the return of the cancelled payment instruments to the financial institution(s) from which the draft(s) were drawn.

733.    The Defendants either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing patient medical records, prescriptions, bills, invoices, and other No-Fault claim documents from Lewin PC, FJ Ortho, Bergenfield, ICP, Advanced Recovery, and ARES to be mailed to Allstate, or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

### A.    FJ ORTHO ENTERPRISE

734.    Horowitz, Lewin, Winiarsky, and Simhaee either personally used the U.S. Mail to further this fraudulent scheme by causing medical bills and records from FJ Ortho to be mailed to Allstate and/or counsel for patients, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

735.    Horowitz, Lewin, Winiarsky, and Simhaee caused FJ Ortho to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that FJ Ortho mailed a demand for payment (i.e., invoice) to Allstate.

736.    The purported provision of treatment and services to patients of FJ Ortho that were medically unnecessary, not causally related to any injury sustained in a motor vehicle accident, and/or falsely charged rendered FJ Ortho completely ineligible for No-Fault reimbursement under New York law.

737.    Because FJ Ortho was not lawfully eligible to seek or collect No-Fault benefit payments under New York's No-Fault laws, Horowitz, Lewin, Winiarsky, and Simhaee purposely caused FJ Ortho to make a misrepresentation each and every time that FJ Ortho mailed a document to Allstate claiming eligibility for reimbursement.

738.    Moreover, because (a) FJ Ortho was not lawfully eligible to seek or collect No-Fault benefit payments, (b) Horowitz, Lewin, Winiarsky, and Simhaee caused FJ Ortho to seek No-Fault reimbursement from Allstate (even though FJ Ortho was not entitled to such reimbursement), and (c) FJ Ortho used the U.S. Mail to seek reimbursement, it is clear that Horowitz, Lewin, Winiarsky, and Simhaee committed mail fraud.

739.    At all relevant times, the Physician Defendants knew that FJ Ortho, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, and/or Allstate would use the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by FJ Ortho.

740.    Allstate estimates that the unlawful operation of the FJ Ortho enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 12 and incorporated by reference as if set forth in its entirety.

### B.    LEWIN PC ENTERPRISE

741.    Horowitz, Lewin, Winiarsky, and Simhaee either personally used the U.S. Mail to further this fraudulent scheme by causing medical bills and records from Lewin PC to be mailed

to Allstate and/or counsel for patients, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

742.    Horowitz, Lewin, Winiarsky, and Simhaee caused Lewin PC to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault Laws each time that Lewin PC mailed a demand for payment (i.e., invoice) to Allstate.

743.    The purported provision of treatment and services to patients of Lewin PC that were medically unnecessary, not causally related to any injury sustained in a motor vehicle accident, and/or falsely charged rendered Lewin PC completely ineligible for No-Fault reimbursement under New York law.

744.    The Defendants further engaged in unlawful and improper self-referral practices when referring Allstate Claimants to Lewin PC in violation of applicable law, which further rendered Lewin PC ineligible for No-Fault reimbursement under New York law.

745.    Because Lewin PC was not lawfully eligible to seek or collect No-Fault benefit payments under New York's No-Fault laws, Horowitz, Lewin, Winiarsky, and Simhaee purposely caused Lewin PC to make a misrepresentation each and every time that Lewin PC mailed a document to Allstate claiming eligibility for reimbursement.

746.    Moreover, because (a) Lewin PC was not lawfully eligible to seek or collect No-Fault benefit payments, (b) Horowitz, Lewin, Winiarsky, and Simhaee caused Lewin PC to seek No-Fault reimbursement from Allstate (even though Lewin PC was not entitled to such reimbursement), and (c) Lewin PC used the U.S. Mail to seek reimbursement, it is clear that Horowitz, Lewin, Winiarsky, and Simhaee committed mail fraud.

747.    At all relevant times, Horowitz, Lewin, Winiarsky, and Simhaee knew that Lewin PC, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, and/or

Allstate would use the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by Lewin PC.

748.    Allstate estimates that the unlawful operation of the Lewin PC enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 13 and incorporated by reference as if set forth in its entirety.

### C.    BERGENFIELD ENTERPRISE

749.    Horowitz, Lewin, Winiarsky, Simhaee, and ICP either personally used the U.S. Mail to further this fraudulent scheme by causing medical bills and records from Bergenfield to be mailed to Allstate and/or counsel for patients, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

750.    Horowitz, Lewin, Winiarsky, Simhaee, and ICP caused Bergenfield to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault laws each time that Bergenfield mailed a demand for payment (i.e., invoice) to Allstate.

751.    The provision of medically unnecessary services not causally related to the purported underlying motor vehicle accidents through Lewin PC at Bergenfield rendered Bergenfield completely ineligible for No-Fault reimbursement under New York law for facility fees relating to these medically unnecessary services.

752.    The Defendants caused Bergenfield to submit inflated charges for facility fees in connection with these medically unnecessary services, which also rendered Bergenfield completely ineligible for No-Fault reimbursement under New York law.

753.    The Defendants further engaged in unlawful and improper self-referral practices when referring Allstate Claimants to Bergenfield in violation of applicable law, which further rendered Bergenfield ineligible for No-Fault reimbursement under New York law.

754.    Because Bergenfield was not lawfully eligible to seek or collect No-Fault benefit payments under New York's No-Fault laws, Horowitz, Lewin, Winiarsky, Simhaee, and ICP purposely caused Bergenfield to make a misrepresentation each and every time that Bergenfield mailed a document to Allstate claiming eligibility for reimbursement.

755.    Moreover, because (a) Bergenfield was not lawfully eligible to seek or collect No-Fault benefit payments, (b) Bergenfield was caused to seek No-Fault reimbursement from Allstate (even though Bergenfield was not entitled to such reimbursement), and (c) Bergenfield used the U.S. Mail to seek reimbursement, it is clear that Horowitz, Lewin, Winiarsky, Simhaee, and ICP committed mail fraud.

756.    At all relevant times, the Defendants knew that Bergenfield, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider and/or Allstate would use the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by Bergenfield.

757.    Allstate estimates that the unlawful operation of the Bergenfield enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 14 and incorporated by reference as if set forth in its entirety.

**D.    ICP ENTERPRISE**

758.    Horowitz, Lewin, Winiarsky, and Simhaee used the ICP enterprise to gain control over the operation and management of Bergenfield, and to facilitate this scheme.

759.    In furtherance of the operation and management of the ICP enterprise, Horowitz, Lewin, Winiarsky, and Simhaee either personally used (or caused the use of) the U.S. Mail to further this fraudulent scheme by causing Allstate Claimants' medical records and invoices/bills

from Bergenfield to be mailed to Allstate (and/or counsel for claimants), or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

760.    As explained above, Horowitz, Lewin, Winiarsky, and Simhaee caused Bergenfield to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault laws each time that Bergenfield mailed (or was caused to mail) a demand for payment (i.e., invoice or bill) to Allstate.

761.    As a result of the above-described conduct, Horowitz, Lewin, Winiarsky, and Simhaee purposely caused Bergenfield to make a misrepresentation each and every time that Bergenfield mailed (or was caused to mail) a document to Allstate claiming eligibility for No-Fault reimbursement even though, at all relevant times, Bergenfield was not entitled to such reimbursement under New York law.

762.    At all relevant times, Horowitz, Lewin, Winiarsky, and Simhaee knew that ICP and Bergenfield (including their employees, owner(s), contractors, and agents), a customer, an Allstate Claimant, an insurance carrier, an Allstate Claimants' attorney, other healthcare provider, or Allstate would use (or be caused to use) the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon the documentation mailed by (or on behalf of) Bergenfield.

763.    These payments issued by Allstate through the U.S. Mail in reliance on the false and fraudulent documentation mailed by (or on behalf of) Bergenfield were diverted, in part, to ICP, as the majority owner of Bergenfield, for the benefit of one or more of the Physician Defendants as members of ICP.

764.    As a result of the above-described conduct, it is clear that Horowitz, Lewin, Winiarsky, and Simhaee committed mail fraud in the furtherance of the operation and management of the ICP enterprise.

765.    Allstate estimates that the unlawful operation of the ICP enterprise generated hundreds of mailings.  A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 14 and incorporated herein by reference as if set forth in its entirety.

### E.    ADVANCED RECOVERY ENTERPRISE

766.    D. Horowitz, Horowitz, Winiarsky, and Simhaee either personally used the U.S. Mail to further this fraudulent scheme by causing Advanced Recovery's invoices and other claim submission documents to be mailed to Allstate and/or the claimants or their counsel, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

767.    D. Horowitz (and/or other persons working at D. Horowitz's direction and/or on D. Horowitz's behalf) caused Advanced Recovery to falsely certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault laws each time that Advanced Recovery mailed demands for payment (i.e., invoices) or other claim submission documents to Allstate.

768.    During the entire course of this scheme, Advanced Recovery was ineligible for No-Fault reimbursement under New York law because certain services that it provided to Allstate Claimants were the product of improper and unlawful referrals from Horowitz, Winiarsky, and Simahee (or other individuals acting under their direction or control) in violation of applicable law.

769.    Advanced Recovery was also completely ineligible for No-Fault reimbursement under New York law because the CPMs and CTUs purportedly dispensed to Allstate Claimants,

including those prescribed by Horowitz, Winiarsky, and Simhaee, or other individuals acting under their direction, were unwarranted, unneeded, and not medically necessary.

770.    Therefore, because (a) Advanced Recovery was not lawfully eligible to seek or collect No-Fault benefit payments, (b) D. Horowitz (and/or other persons working at D. Horowitz's direction and/or on D. Horowitz's behalf) caused Advanced Recovery to seek No-Fault reimbursement from Allstate (even through Advanced Recovery was not entitled to such reimbursement), and (c) Advanced Recovery used the U.S. Mail to seek reimbursement, it is clear that D. Horowitz, Horowitz, Winiarsky, and Simhaee committed mail fraud.

771.    At all relevant times, D. Horowitz, Horowitz, Winiarsky, and Simhaee knew that Advanced Recovery, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, and/or Allstate would use the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by Advanced Recovery.

772.    Allstate estimates that the unlawful operation of the Advanced Recovery enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 15 and incorporated by reference as if set forth in its entirety.

F.    **ARES ENTERPRISE**

773.    D. Horowitz, Horowitz, and Winiarsky either personally used the U.S. Mail to further this fraudulent scheme by causing ARES's invoices and other claim submission documents to be mailed to Allstate and/or the claimants or their counsel, and/or acted with knowledge that the use of the U.S. Mail would follow in the ordinary course of business.

774.    D. Horowitz (and/or other persons working at D. Horowitz's direction and/or on D. Horowitz's behalf) caused ARES to falsely certify that it was, in all respects, eligible to be

reimbursed under New York's No-Fault laws each time that ARES mailed demands for payment (i.e., invoices) or other claim submission documents to Allstate.

775.    During the entire course of this scheme, Advanced Recovery was ineligible for No-Fault reimbursement under New York law because certain services that it provided to Allstate Claimants were the product of improper and unlawful referrals from Horowitz, Winiarsky, and Simahee (or other individuals acting under their direction or control) in violation of applicable law.

776.    ARES was also completely ineligible for No-Fault reimbursement under New York law because the CPMs and CTUs purportedly dispensed to Allstate Claimants, including those prescribed by Horowitz and Winiarsky, or other individuals acting under their direction, were unwarranted, unneeded, and not medically necessary.

777.    Therefore, because (a) ARES was not lawfully eligible to seek or collect No-Fault benefit payments, (b) D. Horowitz (and/or other persons working at D. Horowitz's direction and/or on D. Horowitz's behalf) caused ARES to seek No-Fault reimbursement from Allstate (even through ARES was not entitled to such reimbursement), and (c) ARES used the U.S. Mail to seek reimbursement, it is clear that D. Horowitz, Horowitz, and Winiarsky committed mail fraud.

778.    At all relevant times, D. Horowitz, Horowitz, and Winiarsky knew that ARES, a patient, a claimant, an insurance carrier, patient's attorney, other medical provider, and/or Allstate would use the U.S. Mail in connection with each of the fraudulent claims, including issuing payments based upon documentation mailed by ARES.

779.    Allstate estimates that the unlawful operation of the ARES enterprise generated hundreds of mailings. A table highlighting selected examples of mailings made in furtherance of this scheme is annexed at Exhibit 16 and incorporated by reference as if set forth in its entirety.

## VII. SPECIFIC ALLEGATIONS OF FRAUDULENT CONCEALMENT AND MATERIAL MISREPRESENTATIONS MADE TO AND RELIED UPON BY ALLSTATE

### A. THE FJ ORTHO AND LEWIN PC ENTERPRISES

780.    At all relevant times, Horowitz, Lewin, Winiarsky, and Simhaee purposely and falsely certified that Lewin PC and FJ Ortho, were, in all respects, eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to surgical procedures and other healthcare services purportedly provided to Allstate Claimants.

781.    Indeed, Horowitz, Lewin, Winiarsky, and Simhaee attested (or caused the attestation) to the medical necessity of the services that they (or persons under their direction and control) allegedly performed and/or provided in connection with patients of Lewin PC and FJ Ortho, as well as the validity of the charges for such services.

782.    At all relevant times, Horowitz, Lewin, Winiarsky, and Simhaee, as duly licensed physicians, were legally and ethically obligated to act honestly and with integrity, and were also legally and ethically obligated to act in accordance with each and every other aspect of their oath as licensed physicians.

783.    As alleged above, Horowitz, Lewin, Winiarsky, and Simhaee (or those persons working under their control) caused Lewin PC and FJ Ortho to create and submit to Allstate No-Fault claim reimbursement documents and demands for payment relative to surgical procedures and other healthcare services that were (a) unlawful, (b) fraudulently reported, (c) completely unnecessary, (d) premature, (e) not causally related to the underlying accident, (f) falsely charged, and/or (g) not actually provided as represented.

784.    As further alleged above, Horowitz, Lewin, Winiarsky, and Simhaee (or those persons working under their control) further caused Lewin PC to create and submit to Allstate No-

125

Fault claim reimbursements documents and demands relative to surgical procedures and other healthcare services that were purportedly rendered pursuant to improper and unlawful referrals.

785.    Such conduct is unlawful, and rendered each claim non-compensable under New York's No-Fault laws.

786.    Many of the false, fraudulent, and unlawful acts are not readily evidenced within the four corners of the documents submitted to Allstate by these defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim at issue in this matter.

787.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements, or, for professional healthcare services provided in New Jersey, that were provided in accord with all applicable New Jersey licensing requirements.

788.    Thus, every time that Horowitz, Lewin, Winiarsky, and Simhaee (along with individuals working under their control) submitted, or caused Lewin PC and FJ Ortho to submit, No-Fault reimbursement demands to Allstate, they (and those individuals working under their control) necessarily certified that Lewin PC and FJ Ortho were, in all respects, eligible to be reimbursed under New York's No-Fault laws.

789.    The Physician Defendants' purposeful concealment of Lewin PC and FJ Ortho's lack of eligibility for No-Fault reimbursement allowed the scheme to continue undetected.

790.    For example, Horowitz, Lewin, Winiarsky, and Simhaee undertook steps to prevent detection of this scheme by, among other things, causing Lewin PC and FJ Ortho to operate as seemingly separate entities to conceal the volume of billing submitted to Allstate by these

defendants, when, in actuality, the Physician Defendants treated Lewin PC and FJ Ortho as one homogenous business interest in disregard of the Provider Defendants' individual corporate forms.

791.    Consequently, the full extent of Horowitz, Lewin, Winiarsky, and Simhaee's fraudulent and unlawful acts relative to their operation of the Lewin PC and FJ Ortho enterprises was not, and could not have been, known to Allstate until shortly before it commenced this action.

### B.    THE ICP AND BERGENFIELD ENTERPRISES

792.    At all relevant times, Horowitz, Lewin, Winiarsky, and Simhaee, individually and acting through ICP, purposely and falsely caused Bergenfield to certify that it was, in all respects, eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to surgical procedures and other healthcare services purportedly provided to Allstate Claimants.

793.    Indeed, Horowitz, Lewin, Winiarsky, and Simhaee attested (or caused the attestation) to the medical necessity of the services that they (or persons under their direction and control) allegedly performed and/or provided in connection with patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC at Bergenfield.

794.    At all relevant times, Horowitz, Lewin, Winiarsky, and Simhaee, as duly licensed physicians, were legally and ethically obligated to act honestly and with integrity, and were also legally and ethically obligated to act in accordance with each and every other aspect of their oath as licensed physicians.

795.    As alleged above, Horowitz, Lewin, Winiarsky, and Simhaee (or those persons working under their control), individually and acting through ICP, caused Bergenfield to create and submit to Allstate No-Fault claim reimbursement documents and demands for payment for facility fees relative to surgical procedures and other healthcare services that were (a) unlawful,

(b) fraudulently reported, (c) completely unnecessary, (d) premature, (e) not causally related to the underlying accident, and/or (f) not actually provided as represented.

796.    Moreover, as alleged above, Horowitz, Lewin, Winiarsky, and Simhaee (or those persons working under their control), individually and acting through ICP, caused Bergenfield to create and submit to Allstate No-Fault claim reimbursement documents and demands for payment for facility fees that were falsely charged and purportedly rendered pursuant to improper and unlawful referrals.

797.    Such conduct is unlawful, and rendered each claim non-compensable under New York's No-Fault laws.

798.    Many of the false, fraudulent, and unlawful acts are not readily evidenced within the four corners of the documents submitted to Allstate by Bergenfield and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim at issue in this matter.

799.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements, or, for professional healthcare services provided in New Jersey, that were provided in accord with all applicable New Jersey licensing requirements.

800.    Thus, every time that Horowitz, Lewin, Winiarsky, and Simhaee (along with individuals working under their control), individually and acting through ICP, submitted, or caused Bergenfield to submit, No-Fault reimbursement demands to Allstate, the Physician Defendants (and those individuals working under their control) necessarily certified that Bergenfield was, in all respects, eligible to be reimbursed under New York's No-Fault laws.

801.    The Physician Defendants' purposeful concealment of Bergenfield's lack of eligibility for No-Fault reimbursement allowed the scheme to continue undetected.

802.    Consequently, the full extent of Horowitz, Lewin, Winiarsky, and Simhaee's fraudulent and unlawful acts relative to their participation in the operation of the Bergenfield and ICP enterprises was not, and could not have been, known to Allstate until shortly before it commenced this action.

### C.    THE ADVANCED RECOVERY AND ARES ENTERPRISES

803.    At all relevant times, D. Horowitz purposely and falsely certified that Advanced Recovery and ARES, were, in all respects, eligible to be reimbursed under New York's No-Fault laws as a means to induce Allstate to promptly pay charges related to DME purportedly provided to Allstate Claimants.

804.    Indeed, D. Horowitz attested (or caused the attestation) to the medical necessity of the equipment that he (or persons under his direction and control) allegedly provided to Allstate Claimants, as well as the validity of the charges submitted to Allstate for such services.

805.    Likewise, through letters of medical necessity submitted to Allstate, the Physician Defendants also attested (or caused the attestation) to the medical necessity of the equipment that one or more of the Physician Defendants (or persons under their direction and control) allegedly prescribed to Allstate Claimants.

806.    Certain items of medically unnecessary DME, including CPMs and CTUs, purportedly were dispensed to Allstate Claimants by Advanced Recovery and ARES pursuant to improper and unlawful referrals in violation of applicable law.

807.    Subsequently, when preparing, and submitting (or causing the submission of), letters of medical necessity and/or rebuttals to Allstate in support of the charges for the medically

unnecessary DME purportedly dispensed by Advanced Recovery and ARES to Allstate Claimants, the Physician Defendants (or individuals acting under their direction and control) falsely claimed that Advanced Recovery and ARES were eligible for No-Fault reimbursement.

808.    As alleged above, D. Horowitz (or those persons working under his control) caused Advanced Recovery and ARES to create and submit to Allstate No-Fault claim reimbursement documents and demands for payment relative to DME that was (a) completely unnecessary, (b) falsely charged, and (c) in certain instances, prescribed and dispensed pursuant to improper and unlawful referrals.

809.    Such conduct is unlawful, and rendered each claim non-compensable under New York's No-Fault laws.

810.    Many of the false, fraudulent, and unlawful acts are not readily evidenced within the four corners of the documents submitted to Allstate by these defendants and upon which Allstate relied in adjusting the claims and tendering payment in connection with each discrete patient claim at issue in this matter.

811.    Claims under New York's No-Fault laws can only be submitted, and reimbursed, for services that were provided in accord with all applicable New York state licensing requirements.

812.    Thus, every time that D. Horowitz (along with individuals working under his control) submitted, or caused Advanced Recovery and ARES to submit, No-Fault reimbursement demands to Allstate for DME prescribed by Horowitz, Winiarsky, or Simhaee (or someone acting under the their direction and control), D. Horowitz (and those individuals working under his control) necessarily certified that Advanced Recovery and ARES were, in all respects, eligible to be reimbursed under New York's No-Fault laws.

813.    D. Horowitz's purposeful concealment of Advanced Recovery's and ARES's lack of eligibility for No-Fault reimbursement allowed the scheme to continue undetected.

814.    Specifically, D. Horowitz undertook steps to prevent detection of this scheme by, among other things, submitting letters of medical necessity and rebuttals to Allstate on behalf of Advanced Recovery and ARES, including letters and rebuttals signed by the Physician Defendants (or those individuals acting under their direction and control), falsely attesting to the medical necessity of the DME purportedly provided to Allstate Claimants.

815.    Therefore, Allstate—even acting with reasonable diligence—could not possibly have discovered the nature and extent of Advanced Recovery's and ARES's material misrepresentations to Allstate.

816.    Consequently, the full extent of Advanced Recovery's and ARES's fraudulent and unlawful acts was not, and could not have been, known to Allstate until shortly before it commenced this action.

## VIII.    ALLSTATE'S JUSTIFIABLE RELIANCE

817.    Each claim submitted to Allstate by (or on behalf of) Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES was verified pursuant to Insurance Law § 403.

818.    At all relevant times, Horowitz, Lewin, Winiarsky, and Simhaee, as duly licensed physicians, were legally and ethically obligated to act honestly and with integrity, and were also legally and ethically obligated to act in accordance with each and every other aspect of their oath as a licensed physician.

819.    To induce Allstate to promptly pay Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES, the defendants submitted (or caused to be submitted) to Allstate NF-3,

CMS-1500, or UB-04 forms certifying that Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES were eligible to be reimbursed under New York's No-Fault laws.

820.    Further, to induce Allstate to promptly pay the fraudulent charges for healthcare services and DME purportedly provided to Allstate Claimants, the defendants hired attorneys and law firms to pursue collection of the fraudulent and/or non-compensable charges from Allstate. These attorneys and law firms routinely file time-consuming and expensive lawsuits and arbitration matters against Allstate in the event that Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES' charges are not promptly paid in full.

821.    Allstate is under statutory and contractual obligations to promptly and fairly process claims within thirty (30) days.  The facially valid documents submitted to Allstate by (or on behalf of) Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES in support of the fraudulent and/or non-compensable charges at issue, combined with the material misrepresentations described above, were designed to, and did, cause Allstate to justifiably rely on them.

822.    At all relevant times, as alleged above, the defendants concealed from Allstate the truth regarding Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES' reimbursement eligibility under New York law.

823.    In reasonable reliance on these misrepresentations, Allstate paid money to Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES to its detriment.

824.    Allstate would not have paid these monies had the defendants provided true and accurate information about Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES' reimbursement eligibility under New York law, including (a) Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES' reimbursement eligibility under N.Y. Insurance Law § 5101, *et seq*., and (b) the fact and necessity of the services purportedly provided to those Allstate Claimants

and patients of Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES eligible for insurance coverage under an automobile insurance policy issued by Allstate.

825.    As a result, Allstate was caused to make No-Fault payments totaling over $819,000 to Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES.

826.    Allstate made payments to Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES in reasonable reliance on the documents and representations submitted by the Defendants in support of their No-Fault claims, including the (false) warranties that Lewin PC, FJ Ortho, Bergenfield, Advanced Recovery, and ARES were eligible for payment under New York's No-Fault laws.

## X.    DAMAGES

827.    The defendants' pattern of fraudulent and unlawful conduct injured Allstate in its business and property by reason of the aforesaid violations of state and federal law.  Although it is not necessary for Allstate to calculate its damages with specificity at this stage of the litigation (whereas Allstate's damages continue to accrue), Allstate's injury includes, but is not limited to, compensatory damages for:

a.    Payments made to Advanced Recovery Equipment and Supplies LLC in connection with No-Fault benefit claims totaling over $438,055.00, the exact amount to be determined at trial.  The chart annexed at Exhibit 17, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Advanced Recovery in connection with No-Fault benefit claims determined to be fraudulent and not compensable as of the filing of this Complaint.

b.    Payments made to ARES Medical Supplies LLC in connection with No-Fault benefit claims totaling over $42,154.00, the exact amount to be determined at trial.  The chart annexed at Exhibit 18, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to ARES in connection with No-Fault benefit claims determined to be fraudulent and not compensable as of the filing of this Complaint.

c. Payments made to FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC in connection with No-Fault benefit claims totaling over $71,004.00, the exact amount to be determined at trial. The chart annexed at Exhibit 19, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to FJ Ortho in connection with No-Fault benefit claims determined to be fraudulent and not compensable as of the filing of this Complaint.

d. Payments made to Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey in connection with No-Fault benefit claims totaling over $99,482.00, the exact amount to be determined at trial. The chart annexed at Exhibit 20, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Lewin PC in connection with No-Fault benefit claims determined to be fraudulent and not compensable as of the filing of this Complaint.

e. Payments made to Bergenfield Surgical Center, LLC in connection with No-Fault benefit claims totaling over $168,827.00, the exact amount to be determined at trial. The chart annexed at Exhibit 21, and incorporated herein as if set forth in its entirety, identifies Allstate's payments to Bergenfield in connection with No-Fault benefit claims determined to be fraudulent and not compensable as of the filing of this Complaint.

## XI.  CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### ADVANCED RECOVERY EQUIPMENT AND SUPPLIES LLC
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

828.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

829.    In furtherance of their operation and management of Advanced Recovery Equipment and Supplies LLC ("Advanced Recovery"), Defendants Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics

and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and

Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center

for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for

Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey (collectively,

"Count I Defendants") intentionally prepared and mailed (or caused to be prepared and mailed)

false medical documentation in connection with Allstate insurance claims, in furtherance of their

scheme to defraud.

830.    The Count I Defendants employed one or more mailings to demand and/or receive

payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit

15.

831.    Among other things, NF-3 and/or CMS-1500 forms, medical billing invoices,

medical reports, applications for insurance, and premium checks were routinely delivered to

Allstate through the U.S. Mail.

832.    Policies of insurance were delivered to insureds through the U.S. Mail.

833.    Payments made by Allstate to Advanced Recovery were delivered through the U.S.

Mail.

834.    As documented above, the Count I Defendants repeatedly and intentionally

submitted, or caused to be submitted, NF-3 forms and/or CMS-1500 forms and other claim-related

documentation to Allstate for items of DME and related services that were purportedly provided

by Advanced Recovery for the purpose of collecting payment from Allstate under the Personal

Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

835.    As a result of, and in reasonable reliance upon, the mailing and/or submission of

these misleading documents and materially false representations, Allstate, by its agents and

employees, issued drafts to Advanced Recovery, for the benefit of one or more of the Count I Defendants, that would not otherwise have been paid.

836.    The Count I Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count I Defendants to continue without being detected.

837.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

838.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count I Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

839.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Advanced Recovery for the benefit of the Count I Defendants.

840.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

841.    Advanced Recovery constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

842.    The Count I Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

843.   Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property by reason of the Count I Defendants' conduct.

844.   The Count I Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

845.   By virtue of the Count I Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>COUNT II</u>
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**ADVANCED RECOVERY EQUIPMENT AND SUPPLIES LLC**
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan**
**Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a**
**Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC**
**f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for**
**Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center**
**for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

846.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

847.   Throughout their participation in the operation and management of Advanced Recovery Equipment and Supplies LLC ("Advanced Recovery"), Defendants Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New

Jersey (collectively, "Count II Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

848.    The Count II Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Advanced Recovery by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 15, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 and/or CMS-1500 forms, to Allstate.

849.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Advanced Recovery, even though Advanced Recovery, as a result of the Count II Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

850.    The purpose of the conspiracy was also to seek No-Fault benefit payments from Allstate on behalf of Advanced Recovery in connection with DME that was not medically necessary.

851.    The Count II Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 and/or CMS-1500 forms, containing material misrepresentations and/or material omissions.

852.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count II Defendants' unlawful conduct described herein.

853.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count II Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count II Defendants three (3) times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT III**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**ARES MEDICAL SUPPLIES LLC**
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

854.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

855.    In furtherance of their operation and management of ARES Medical Supplies LLC ("ARES"), Defendants Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey (collectively, "Count III Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

856.    The Count III Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 16.

139

857.    Among other things, NF-3 and/or CMS-1500 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

858.    Policies of insurance were delivered to insureds through the U.S. Mail.

859.    Payments made by Allstate to ARES were delivered through the U.S. Mail.

860.    As documented above, the Count III Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 and/or CMS-1500 forms and other claim-related documentation to Allstate for items of DME and related services that were purportedly provided by ARES for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

861.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to ARES, for the benefit of one or more of the Count III Defendants, that would not otherwise have been paid.

862.    The Count III Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count III Defendants to continue without being detected.

863.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

864.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an

ongoing scheme, the Count III Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

865.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to ARES for the benefit of the Count III Defendants.

866.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

867.    ARES constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

868.    The Count III Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

869.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property by reason of the Count III Defendants' conduct.

870.    The Count III Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

871.    By virtue of the Count III Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

<u>COUNT IV</u>
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**ARES MEDICAL SUPPLIES LLC**
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

872.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

873.    Throughout their participation in the operation and management of ARES Medical Supplies LLC ("ARES"), Defendants Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey (collectively, "Count IV Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

874.    The Count IV Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of ARES by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 16, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 and/or CMS-1500 forms, to Allstate.

875.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of ARES, even though ARES, as a result of the Count IV Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

876.    The purpose of the conspiracy was also to seek No-Fault benefit payments from Allstate on behalf of ARES in connection with DME that was not medically necessary.

877.    The Count IV Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 and/or CMS-1500 forms, containing material misrepresentations and/or material omissions.

878.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count IV Defendants' unlawful conduct described herein.

879.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count IV Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count IV Defendants three (3) times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### FJ ORTHOPAEDICS AND PAIN MANAGEMENT PLLC
### f/k/a FJ ORTHOPAEDICS, PLLC
### (Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)

880.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

881.    In furtherance of their operation and management of FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), Defendants Steven Horowitz,

M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey (collectively, "Count V Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

882.    The Count V Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 12.

883.    Among other things, NF-3 and/or CMS-1500 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

884.    Policies of insurance were delivered to insureds through the U.S. Mail.

885.    Payments made by Allstate to FJ Ortho were delivered through the U.S. Mail.

886.    As documented above, the Count V Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 and/or CMS-1500 forms, and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at FJ Ortho for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

887.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and

employees, issued drafts to FJ Ortho, for the benefit of one or more of the Count V Defendants, that would not otherwise have been paid.

888.    The Count V Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count V Defendants to continue without being detected.

889.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

890.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count V Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

891.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to FJ Ortho for the benefit of the Count V Defendants.

892.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

893.    FJ Ortho constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

894.    The Count V Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

895.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property by reason of the Count V Defendants' conduct.

896.    The Count V Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

897.    By virtue of the Count V Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT VI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### FJ ORTHOPAEDICS AND PAIN MANAGEMENT PLLC
### f/k/a FJ ORTHOPAEDICS, PLLC
### (Against Steven Horowitz, M.D., Jonathan Lewin, M.D.,
### Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)

898.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

899.    Throughout their participation in the operation and management of FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), Defendants Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey (collectively, "Count VI Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

900.    The Count VI Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of FJ Ortho by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 12, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 and/or CMS-1500 forms, to Allstate.

901.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of FJ Ortho, even though FJ Ortho, as a result of the Count VI Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

902.    The purpose of the conspiracy was also to seek No-Fault benefit payments from Allstate on behalf of FJ Ortho in connection with medical services that were falsely reported, not medically necessary, falsely charged, and/or intentionally misrepresented to justify medically unnecessary arthroscopic surgical procedures and other services.

903.    The Count VI Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 and/or CMS-1500 forms containing material misrepresentations and/or material omissions.

904.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VI Defendants' unlawful conduct described herein.

905.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count VI Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count VI Defendants three (3) times the damages sustained by reason of the claims submitted by the

defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VII**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**JONATHAN LEWIN, MD P.C. a/k/a CENTER FOR MUSCULOSKELETAL DISORDERS a/k/a CENTER FOR PAIN MANAGEMENT OF NEW JERSEY a/k/a CENTER FOR SPINAL DISORDERS OF NEW JERSEY a/k/a CENTER FOR HAND DISORDERS OF NEW JERSEY**
**(Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Bergenfield Surgical Center, LLC, and Interstate Capital Partners, LLC)**

906.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

907.    In furtherance of their operation and management of Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC"), Defendants Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Bergenfield Surgical Center, LLC, and Interstate Capital Partners, LLC (collectively, "Count VII Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

908.    The Count VII Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 13.

909.    Among other things, NF-3 and/or CMS-1500 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

910.    Policies of insurance were delivered to insureds through the U.S. Mail.

911.    Payments made by Allstate to Lewin PC were delivered through the U.S. Mail.

912.    As documented above, the Count VII Defendants repeatedly and intentionally submitted, or caused to be submitted, NF-3 and/or CMS-1500 forms, and other claim-related documentation to Allstate related to expenses and/or services that were purportedly performed at Lewin PC for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

913.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Lewin PC, for the benefit of one or more of the Count VII Defendants, that would not otherwise have been paid.

914.    The Count VII Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count VII Defendants to continue without being detected.

915.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

916.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an

ongoing scheme, the Count VII Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

917.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Lewin PC for the benefit of the Count VII Defendants.

918.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

919.    Lewin PC constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

920.    The Count VII Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

921.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property by reason of the Count VII Defendants' conduct.

922.    The Count VII Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

923.    By virtue of the Count VII Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT VIII**
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**JONATHAN LEWIN, MD P.C. a/k/a CENTER FOR MUSCULOSKELETAL**
**DISORDERS a/k/a CENTER FOR PAIN MANAGEMENT OF NEW JERSEY a/k/a**
**CENTER FOR SPINAL DISORDERS OF NEW JERSEY a/k/a CENTER FOR HAND**
**DISORDERS OF NEW JERSEY**

**(Against Steven Horowitz, M.D., Jonathan Lewin, M.D.,
Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain
Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and
Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Bergenfield Surgical Center, LLC,
and Interstate Capital Partners, LLC)**

924.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

925.    Throughout their participation in the operation and management of Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC"), Defendants Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Bergenfield Surgical Center, LLC, and Interstate Capital Partners, LLC (collectively, "Count VIII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

926.    The Count VIII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Lewin PC by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 13, and through the preparation and mailing of fraudulent documents and other claim-related documents, including NF-3 and/or CMS-1500 forms, to Allstate.

927.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Lewin PC, even though Lewin PC, as a result of the Count VIII Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

928.    The purpose of the conspiracy was also to seek No-Fault benefit payments from Allstate on behalf of Lewin PC in connection with medical services that were not medically necessary, falsely charged, not causally related to the purported underlying motor vehicle accident, and/or purportedly rendered pursuant to referral made in violation of applicable law.

929.    The Count VIII Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including NF-3 and/or CMS-1500 forms, containing material misrepresentations and/or material omissions.

930.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count VIII Defendants' unlawful conduct described herein.

931.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count VIII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count VIII Defendants three (3) times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### BERGENFIELD SURGICAL CENTER, LLC
### (Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)

932.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

933.    In connection with the operation and management of Bergenfield Surgical Center, LLC ("Bergenfield"), Defendants Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky,

M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC (collectively, "Count IX Defendants") intentionally prepared and mailed (or caused to be prepared and mailed) false medical documentation in connection with Allstate insurance claims, in furtherance of their scheme to defraud.

934.    The Count IX Defendants employed one or more mailings to demand and/or receive payment on certain dates, including, but not limited to, those dates identified in the chart at Exhibit 14.

935.    Among other things, UB-04 forms, medical billing invoices, medical reports, applications for insurance, and premium checks were routinely delivered to Allstate through the U.S. Mail.

936.    Policies of insurance were delivered to insureds through the U.S. Mail.

937.    Payments made by Allstate to Bergenfield were delivered through the U.S. Mail.

938.    As documented above, the Count IX Defendants repeatedly and intentionally submitted, or caused to be submitted, UB-04 forms, and other claim-related documentation to Allstate related to expenses and/or facility services relating to surgeries and injections that were purportedly performed at Bergenfield in New Jersey for the purpose of collecting payment from Allstate under the Personal Injury Protection benefits portion of the Allstate policies and applicable New York No-Fault laws.

939.    As alleged above, the surgeries and injections purportedly performed upon patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC at Bergenfield in New Jersey were medically unnecessary.

940.    Nevertheless, the Count IX Defendants knowingly caused Bergenfield to submit, through the U.S. Mail, invoices and other documentation to Allstate demanding payment for the

facility services that Bergenfield purportedly provided in connection with the medically unnecessary surgeries and injections that were purportedly performed upon patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC at Bergenfield in New Jersey.

941.    As further alleged above, the facility services purportedly provided by Bergenfield in connection with the medically unnecessary surgeries and injections purportedly performed upon patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC at Bergenfield in New Jersey were (a) falsely reported, (b) fraudulently billed, and (c) in certain instances, rendered pursuant to an unlawful and improper referral from a Physician Defendant (or someone acting under the Physician Defendants' direction and control) in violation of applicable law.

942.    As a result of, and in reasonable reliance upon, the mailing and/or submission of these misleading documents and materially false representations, Allstate, by its agents and employees, issued drafts to Bergenfield, for the benefit of one or more of the Count IX Defendants, that would not otherwise have been paid.

943.    The Count IX Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, also prevented Allstate from discovering this scheme for a long period of time, thus enabling the Count IX Defendants to continue without being detected.

944.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

945.    By creating and then mailing to Allstate (or directing the creation and subsequent mailing to Allstate) of numerous fraudulent documents and other claim-related materials in an ongoing scheme, the Count IX Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

946.    The activities alleged in this case had the direct effect of causing funds to be transferred from Allstate to Bergenfield for the benefit of the Count IX Defendants.

947.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

948.    Bergenfield constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

949.    The Count IX Defendants associated with the foregoing enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

950.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property by reason of the Count XI Defendants' conduct.

951.    The Count IX Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

952.    By virtue of the Count IX Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

## COUNT X
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### BERGENFIELD SURGICAL CENTER, LLC
### (Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)

953.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

954.    Throughout their participation in the operation and management of Bergenfield Surgical Center, LLC ("Bergenfield"), Defendants Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC (collectively, "Count X Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

955.    The Count X Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of Bergenfield by means of a pattern of racketeering activity, including numerous instances of mail fraud as set forth in Exhibit 14, and through the preparation and mailing of fraudulent documents and other claim-related documents, including UB-04 forms, to Allstate.

956.    The purpose of the conspiracy was to obtain No-Fault benefit payments from Allstate on behalf of Bergenfield, even though Bergenfield, as a result of the Count X Defendants' unlawful conduct, was not eligible to collect such No-Fault benefit payments.

957.    The purpose of the conspiracy was also to seek No-Fault benefit payments from Allstate on behalf of Bergenfield in connection with facility services that were not medically necessary, falsely reported, fraudulently billed, and performed as the direct result of an unlawful patient referral.

958.    The Count X Defendants were aware of this purpose, and agreed to take steps to meet the conspiracy's objectives, including the creation of and mailing of documents and other claim-related materials, including UB-04 forms, containing material misrepresentations and/or material omissions.

959.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault claim payments as a result of the Count X Defendants' unlawful conduct described herein.

960.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count X Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the Count X Defendants three (3) times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

### COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### INTERSTATE CAPITAL PARTNERS, LLC
### (Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)

961.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 827 as if fully set forth herein.

962.    In furtherance of their operation and management of Interstate Capital Partners, LLC ("ICP"), Defendants Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D. (collectively, "Count XI Defendants") used ICP to carry-out their scheme to defraud Allstate.

963.    As alleged above, the Count XI Defendants used ICP to control and operate Bergenfield Surgical Center, LLC.

964.    As further alleged above, the Count XI Defendants, by and through ICP, caused Bergenfield Surgery Center, LLC to submit charges to Allstate under New York's No-Fault laws for facility services that were medically unnecessary, falsely reported, fraudulently billed, and performed as the direct result of an unlawful patient referral.

965.    Specifically, the Count XI Defendants employed one or more mailings on behalf of Bergenfield Surgical Center, LLC to demand and receive No-Fault benefit payments from Allstate on certain dates, including, but not limited to, those dates identified in the charts at Exhibit 14.

157

966.    The Count XI Defendants mailed the following documents to Allstate using the U.S. Mail:  UB-04 forms, documents, notes, reports, invoices, assignment of benefit forms, and other No-Fault claim reimbursement documents relating to facility services purportedly provided to Allstate Claimants by Bergenfield Surgical Center, LLC during the relevant treatment period.

967.    Policies of insurance were delivered to two or more Allstate Claimants through the U.S. Mail.

968.    Payments made by Allstate to Bergenfield Surgical Center, LLC—the proceeds of which were, in part, diverted to ICP for the benefit of Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.—were delivered through the U.S. Mail.

969.    When the Count XI Defendants mailed (or caused the mailing of) UB-04 forms and other claim-related documents to Allstate seeking No-Fault reimbursement, they materially misrepresented Bergenfield Surgical Center, LLC's No-Fault reimbursement eligibility under New York law.

970.    Allstate, by its agents and employees, made payments to Bergenfield Surgical Center, LLC, for the benefit, through ICP, of one or more of the Count XI Defendants, as a direct and proximate result of, and in reasonable reliance upon, the misrepresentations and omissions of material fact made in the documents that they or their agents mailed to Allstate.

971.    The Count XI Defendants' pattern of preparing and mailing (or causing/directing the preparation and mailing of) these documents and other claim-related materials, each appearing legitimate on their face, prevented Allstate from discovering this scheme for a significant period of time, thus enabling the Count XI Defendants to continue perpetrating this scheme without being detected.

972.    The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud).

973.    The Count XI Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c).

974.    The activities alleged in this case had the direct effect of causing No-Fault monies to be transferred from Allstate to Bergenfield Surgical Center, LLC, and then to ICP for the benefit of one or more of the Count XI Defendants.

975.    Allstate is in the business of writing insurance and paying claims in the State of New York.  Insurance fraud schemes practiced here and elsewhere have a deleterious impact on Allstate's overall financial well-being and adversely affect insurance rates.

976.    ICP constitutes an enterprise engaged in, and the activities of which affect, interstate commerce.

977.    The Count XI Defendants associated with the ICP enterprise, and participated—both directly and indirectly—in the conduct of this enterprise through a pattern of racketeering activities.

978.    Allstate is a "person" as defined by 18 U.S.C. § 1961(3) injured in its business or property by reason of the Count XI Defendants' conduct.

979.    The Count XI Defendants' conduct in violation of 18 U.S.C. § 1962(c) was the direct and proximate cause of Allstate's injury.

980.    By virtue of the Count XI Defendants' violations of 18 U.S.C. § 1962(c), Allstate is entitled to recover from them three (3) times the damages sustained by reason of the claims submitted by them, and others acting in concert with them, on behalf of Bergenfield Surgical Center, LLC, together with the costs of suit, including reasonable attorney's fees.

## COUNT XII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### INTERSTATE CAPITAL PARTNERS, LLC
### (Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D.,
### Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)

981.    Allstate re-alleges, re-pleads, and incorporates by reference all paragraphs set forth above in paragraphs 1 through 827 as if fully set forth herein.

982.    Through their participation in the operation and management of Interstate Capital Partners, LLC ("ICP"), Defendants Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D. (collectively, the "Count XII Defendants") conspired with each other to violate 18 U.S.C. § 1962(c).

983.    The Count XII Defendants each agreed to participate in a conspiracy to violate 18 U.S.C. § 1962(c) by agreeing to conduct the affairs of ICP by means of a pattern of racketeering activity through Bergenfield Surgical Center, LLC, including numerous instances of mail fraud as set forth in Exhibit 14, which involved the preparation and mailing of fraudulent documents and other claim-related documents, including UB-04 forms, to Allstate.

984.    The purpose of the conspiracy was to use ICP to (a) control and operate Bergenfield Surgical Center, LLC, (b) cause Bergenfield Surgical Center, LLC to seek No-Fault benefits to which it was not entitled under New York's No-Fault laws, and (c) collect No-Fault benefit payments from Allstate to be funneled through ICP for the benefit of the Count XII Defendants.

985.    The Count XII Defendants were aware of these purposes, and agreed to take steps to meet the conspiracy's objectives.

986.    Allstate has been injured in its business and property by reason of this conspiratorial conduct whereas Allstate has been induced to make No-Fault benefit payments as a result of the Count XII Defendants' unlawful conduct described herein.

987.    By virtue of this violation of 18 U.S.C. § 1962(d), the Count XII Defendants are jointly and severally liable to Allstate, and Allstate is entitled to recover from each of the defendants identified three (3) times the damages sustained by reason of the claims submitted by the defendants, and others acting in concert with them, together with the costs of suit, including reasonable attorney's fees.

**COUNT XIII**
**COMMON-LAW FRAUD**
**(Against Advanced Recovery Equipment and Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

988.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

989.    Defendants Advanced Recovery Equipment and Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC ("Brooklyn Premier"), FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC") (collectively, "Count XIII Defendants") did conspire to defraud Allstate through the referrals of patients of Brooklyn Premier, FJ Ortho, and Lewin PC to Advanced Recovery Equipment and Supplies LLC ("Advanced Recovery") for the provision of items of medically unnecessary DME that were charged to Allstate at inflated rates.

990.   The Count XIII Defendants intentionally and knowingly made false and fraudulent statements of material fact to Allstate, and also concealed material facts from Allstate during the course of this scheme and in the course of their submission of bills seeking payment for DME under New York's No-Fault laws.

991.   The false and fraudulent statements of material fact and acts of fraudulent concealment include representations: (a) that each item of DME purportedly dispensed by Advanced Recovery to an Allstate Claimant, including CPMs and CTUs, was necessary for the Claimants' purported recovery from surgical procedures; (b) that the referrals to Advanced Recovery of Allstate Claimants who were patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC were made by one or more of the Physician Defendants, including, but not necessarily limited to, Steven Horowitz, M.D., Raz Winiarsky, M.D., or Jonathan Simhaee, M.D., or someone acting under the Physician Defendants' control, in accordance with applicable law; and (c) that the charges for the items of DME purportedly dispensed by Advanced Recovery to Allstate Claimants, including CPMs and CTUs, were billed in accordance with the applicable Fee Schedule.

992.   Allstate reasonably relied, to its detriment, upon the Count XIII Defendants' material misrepresentations concerning Advanced Recovery's eligibility to receive No-Fault reimbursement in paying numerous bills for healthcare expenses pursuant to No-Fault insurance claims.

993.   Allstate has been injured in its business and property by reason of the above-described conduct because Allstate has made No-Fault benefit payments totaling over $438,055.00 in connection with fraudulent bills submitted by the Count XIII Defendants through Advanced Recovery.

**COUNT XIV**
**COMMON-LAW FRAUD**

**(Against ARES Medical Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

994.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations made in paragraphs 1 through 827 as if set forth fully herein.

995.    Defendants ARES Medical Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics , PLLC ("Brooklyn Premier"), FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC") (collectively, "Count XIV Defendants") did conspire to defraud Allstate through the referrals of patients of Brooklyn Premier, FJ Ortho, and Lewin PC to ARES Medical Supplies LLC ("ARES") for the provision of items of medically unnecessary DME that were charged to Allstate at inflated rates.

996.    The Count XIV Defendants intentionally and knowingly made false and fraudulent statements of material fact to Allstate, and also concealed material facts from Allstate during the course of this scheme and in the course of their submission of bills seeking payment for DME under New York's No-Fault laws.

997.    The false and fraudulent statements of material fact and acts of fraudulent concealment include representations: (a) that each item of DME purportedly dispensed by ARES to an Allstate Claimant, including CPMs and CTUs, was necessary for the Claimants' purported

163

recovery from surgical procedures; (b) that the referrals to ARES of Allstate Claimants who were patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC were made by one or more of the Physician Defendants, including, but not necessarily limited to, Raz Winiarsky, M.D., or someone acting under the Physician Defendants' control, in accordance with applicable law; and (c) that the charges for the items of DME purportedly dispensed by ARES to Allstate Claimants, including CPMs and CTUs, were billed in accordance with the applicable Fee Schedule.

998.    Allstate reasonably relied, to its detriment, upon the Count XIV Defendants' material misrepresentations concerning ARES's eligibility to receive No-Fault reimbursement in paying numerous bills for healthcare expenses pursuant to No-Fault insurance claims.

999.    Allstate has been injured in its business and property by reason of the above-described conduct because Allstate has made No-Fault benefit payments totaling over $42,154.00 in connection with fraudulent bills submitted by the Count XIV Defendants through ARES.

### COUNT XV
### COMMON-LAW FRAUD
**(Against Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

1000.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1001.    Defendants Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz

Winiarsky, M.D., and Jonathan Simhaee, M.D. (collectively "Count XV Defendants") did conspire to defraud Allstate through their unlawful operation of Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC ("Brooklyn Premier"), FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC").

1002.  The Count XV Defendants intentionally and knowingly made false and fraudulent statements of material fact to Allstate, and also concealed material facts from Allstate during the course of this scheme and in the course of their submission of bills seeking payment for medical services under New York's No-Fault laws.

1003.  The false and fraudulent statements of material fact and acts of fraudulent concealment include representations: (a) that the billed-for treatment and services were medically necessary and causally related to the purported underlying motor vehicle accident; (b) that the referrals to Lewin PC of Allstate Claimants who were patients of Brooklyn Premier and/or FJ Ortho were made by Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D., or someone acting under their control, in accordance with applicable law; and (c) that the charges for the medical services submitted by Brooklyn Premier, FJ Ortho, and Lewin PC were billed in accordance with the applicable Fee Schedule.

1004.  Allstate reasonably relied, to its detriment, upon the Count XV Defendants' material misrepresentations concerning Lewin PC and FJ Ortho's eligibility to receive No-Fault reimbursement in paying numerous bills for healthcare expenses pursuant to No-Fault insurance claims.

1005.   Allstate has been injured in its business and property by reason of the above-described conduct because Allstate has made No-Fault benefit payments totaling over $170,486.00 in connection with fraudulent bills submitted by the Count XV Defendants through FJ Ortho and Lewin PC.

**COUNT XVI**
**COMMON-LAW FRAUD**
**(Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)**

1006.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1007.   Defendants Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC (collectively "Count XVI Defendants") did conspire to defraud Allstate through their unlawful operation of Bergenfield Surgical Center, LLC ("Bergenfield").

1008.   The Count XVI Defendants intentionally and knowingly made false and fraudulent statements of material fact to Allstate, and also concealed material facts from Allstate during the course of this scheme and in the course of their submission of bills seeking payment for medical services under New York's No-Fault laws.

1009.   The false and fraudulent statements of material fact and acts of fraudulent concealment include representations: (a) that the billed-for facility fees were submitted in relation to treatment and services that were medically necessary and causally related to the purported underlying motor vehicle accident; (b) that the referrals to Bergenfield of Allstate Claimants made by one or more of the Physician Defendants, or someone acting under the Physician Defendants' control, in accordance with applicable law; and (c) that the charges for the facility services submitted by Bergenfield were billed in accordance with the applicable Fee Schedule.

166

1010.   Allstate reasonably relied, to its detriment, upon the Count XVI Defendants' material misrepresentations concerning Bergenfield's eligibility to receive No-Fault reimbursement in paying numerous bills for healthcare expenses pursuant to No-Fault insurance claims.

1011.   Allstate has been injured in its business and property by reason of the above-described conduct because Allstate has made No-Fault benefit payments totaling over $168,827.00 in connection with fraudulent bills submitted by the Count XVI Defendants through Bergenfield.

<u>**COUNT XVII**</u>
**UNJUST ENRICHMENT**
**(Against Advanced Recovery Equipment and Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

1012.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1013.   As alleged herein, Defendants Advanced Recovery Equipment and Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC ("Brooklyn Premier"), FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC") (collectively, "Count XVII Defendants") conspired to induce Allstate to make numerous and substantial payments to

Advanced Recovery Equipment and Supplies LLC ("Advanced Recovery") pursuant to New York's No-Fault laws.

1014.   As alleged herein, Advanced Recovery was not eligible for reimbursement under New York's No-Fault laws because, during the relevant period, Advanced Recovery submitted to Allstate inflated charges for items of medically unnecessary DME, and other falsely charged services, that, in certain instances, were the direct result of referrals of patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC to Advanced Recovery in violation of applicable law.

1015.   When Allstate paid Advanced Recovery, Allstate reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Count XVII Defendants, or those persons working under their control, made concerning Advanced Recovery Equipment and Supplies LLC's reimbursement eligibility under New York's No-Fault laws.

1016.   Each and every No-Fault reimbursement payment that Allstate was caused to make to Advanced Recovery during the course of the scheme constitutes a benefit that the Count XVII Defendants aggressively caused Advanced Recovery to seek and voluntarily accept.

1017.   Throughout the course of their scheme, the Count XVII Defendants caused Advanced Recovery to wrongfully obtain from Allstate No-Fault benefit payments totaling at least $438,855.00 as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

1018.   Throughout the duration of this scheme, the Count XVII Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Allstate was wrongfully induced to make to Advanced Recovery.

1019.  Retention of those benefits by the Count XVII Defendants would violate fundamental principles of justice, equity, and good conscience.

**<u>COUNT XVIII</u>**
**UNJUST ENRICHMENT**
**(Against ARES Medical Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

1020.  Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1021.  As alleged herein, Defendants ARES Medical Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC ("Brooklyn Premier"), FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho"), and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC") (collectively, "Count XVIII Defendants") conspired to induce Allstate to make numerous and substantial payments to ARES Medical Supplies LLC ("ARES") pursuant to New York's No-Fault laws.

1022.  As alleged herein, ARES was not eligible for reimbursement under New York's No-Fault laws because, during the relevant period, ARES submitted to Allstate charges for items of medically unnecessary DME, and other falsely charged services, that, in certain instances, were the direct result of referrals of patients of Brooklyn Premier, FJ Ortho, and/or Lewin PC to ARES in violation of applicable law.

169

1023.   When Allstate paid ARES, Allstate reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Count XVIII Defendants, or those persons working under their control, made concerning ARES's reimbursement eligibility under New York's No-Fault laws.

1024.   Each and every No-Fault reimbursement payment that Allstate was caused to make to ARES during the course of the scheme constitutes a benefit that the Count XVIII Defendants aggressively caused ARES to seek and voluntarily accept.

1025.   Throughout the course of their scheme, the Count XVIII Defendants caused ARES to wrongfully obtain from Allstate No-Fault benefit payments totaling at least $42,154.00 as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

1026.   Throughout the duration of this scheme, the Count XVIII Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Allstate was wrongfully induced to make to ARES.

1027.   Retention of those benefits by the Count XVIII Defendants would violate fundamental principles of justice, equity, and good conscience.

### COUNT XIX
### UNJUST ENRICHMENT
**(Against Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

1028.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1029.  As alleged herein, Defendants Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D. (collectively "Count XIX Defendants") conspired to induce Allstate to make numerous and substantial payments to FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC ("FJ Ortho") and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey ("Lewin PC") pursuant to New York's No-Fault Laws.

1030.  As alleged herein, Lewin PC and FJ Ortho were not eligible for reimbursement under New York's No-Fault laws because, during the relevant treatment period, they submitted charges to Allstate for patient examinations, surgical and pain management procedures, and other services that were medically unnecessary, premature, not causally related to the purported underlying motor vehicle accident, falsely charged, not rendered as represented, and/or, in certain instances, rendered pursuant to patient referrals made in violation of applicable law.

1031.  When Allstate paid Lewin PC and FJ Ortho, Allstate reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Count XIX Defendants, or those persons working under their control, made concerning Lewin PC and FJ Ortho's reimbursement eligibility under New York's No-Fault Laws.

1032.   Each and every No-Fault reimbursement payment that Allstate was caused to make to Lewin PC and FJ Ortho during the course of the scheme constitutes a benefit that the Count XIX Defendants aggressively caused Lewin PC and FJ Ortho to seek and voluntarily accept.

1033.   Throughout the course of their scheme, the Count XIX Defendants caused Lewin PC and FJ Ortho to wrongfully obtain from Allstate No-Fault benefit payments totaling at least $170,486.00 as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

1034.   Throughout the duration of this scheme, the Count XIX Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Allstate was wrongfully induced to make to Lewin PC and FJ Ortho.

1035.   Retention of those benefits by the Count XIX Defendants would violate fundamental principles of justice, equity and good conscience.

### COUNT XX
### UNJUST ENRICHMENT
**(Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)**

1036.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1037.   As alleged herein, Defendants Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC (collectively "Count XX Defendants") conspired to induce Allstate to make numerous and substantial payments to Bergenfield Surgical Center, LLC ("Bergenfield") pursuant to New York's No-Fault Laws.

1038.   As alleged herein, Bergenfield was not eligible for reimbursement under New York's No-Fault Laws because, during the relevant period, the facility services provided and billed for in connection with surgeries performed upon patients of Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, and/or FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC at Bergenfield were medically unnecessary, premature, not causally related to the underlying motor vehicle accident, falsely charged, and/or, in certain instances, were the direct product of patient referrals made in violation of applicable law.

1039.   Because Bergenfield's facility services failed to comply with all relevant New Jersey state licensing requirements applicable to ambulatory care facilities, Bergenfield's claims for reimbursement in connection with such services were not eligible for compensation under New York's No-Fault laws.

1040.   When Allstate paid Bergenfield, Allstate reasonably believed that it was legally obligated to make such payments based upon the misrepresentations and omissions that the Count XX Defendants, or those persons working under their control, made concerning Bergenfield's compliance with all applicable New Jersey licensing requirements and its reimbursement eligibility under New York's No-Fault Laws.

1041.   Each and every No-Fault reimbursement payment that Allstate was caused to make to Bergenfield during the course of the scheme constitutes a benefit that the Count XX Defendants aggressively caused Bergenfield to seek and voluntarily accept.

1042.    Throughout the course of their scheme, the Count XX Defendants caused Bergenfield to wrongfully obtain from Allstate No-Fault benefit payments totaling at least $168,827.00 as a direct and proximate result of the unlawful conduct detailed throughout this Complaint.

1043.    Throughout the duration of this scheme, the Count XX Defendants obtained substantial monetary benefits as the result of their unlawful conduct, benefits that were derived, in part, directly from the No-Fault reimbursement payments that Allstate was wrongfully induced to make to Bergenfield.

1044.    Retention of those benefits by the Count XX Defendants would violate fundamental principles of justice, equity and good conscience.

<u>COUNT XXI</u>
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Advanced Recovery Equipment and Supplies LLC)**

1045.    Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1046.    To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

1047.    In view of its (a) purported dispensing of medically unnecessary items of DME pursuant to improper and unlawful referrals in violation of applicable law, and (b) submission of excessive charges, Advanced Recovery Equipment and Supplies LLC, was not eligible for No-Fault reimbursement under New York law during the relevant period, and thus has no standing to submit or receive assigned benefits under New York's No-Fault Law.

1048.   Advanced Recovery Equipment and Supplies LLC continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1049.   Advanced Recovery Equipment and Supplies LLC continues to challenge Allstate's prior claim denials.

1050.   Advanced Recovery Equipment and Supplies LLC continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1051.   A justifiable controversy exists between Allstate and Advanced Recovery Equipment and Supplies LLC because Advanced Recovery Equipment and Supplies LLC rejects Allstate's ability to deny such claims.

1052.   Allstate has no adequate remedy at law.

1053.   Advanced Recovery Equipment and Supplies LLC will also continue to bill Allstate for No-Fault benefits payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or any future No-Fault claims submitted by Advanced Recovery Equipment and Supplies LLC.

1054.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 22 U.S.C. §§ 2201 and 2202, declaring that Advanced Recovery Equipment and Supplies LLC, at all relevant times, acted unlawfully when it (a) purportedly dispensed, and submitted charges for, medically unnecessary items of DME, including DME purportedly dispensed pursuant to improper and unlawful referrals made in violation of applicable law, and (b) submitted excessive charges to Allstate, and thus has no standing to submit or receive assigned No-Fault benefits under New York No-Fault Law.

175

**COUNT XXII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against ARES Medical Supplies LLC)**

1055.   Allstate re-alleges, re-pleads, and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1056.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

1057.   Additionally, under New York law, a provider of healthcare services is not eligible for No-Fault reimbursement if the provider fails to meet any licensing requirement necessary to perform the service in the state in which the service was performed (e.g., New Jersey).

1058.   In view of its (a) purported dispensing of medically unnecessary items of DME equipment, including DME purportedly dispensed pursuant to improper and unlawful referrals made in violation of applicable law, and (b) submission of excessive charges, ARES Medical Supplies LLC, was not eligible for No-Fault reimbursement under New York law during the relevant period, and thus has no standing to submit or receive assigned benefits under New York's No-Fault Law.

1059.   ARES Medical Supplies LLC continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1060.   ARES Medical Supplies LLC continues to challenge Allstate's prior claim denials.

1061.   ARES Medical Supplies LLC continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1062.   A justifiable controversy exists between Allstate and ARES Medical Supplies LLC because ARES Medical Supplies LLC rejects Allstate's ability to deny such claims.

1063.   Allstate has no adequate remedy at law.

1064.   ARES Medical Supplies LLC will also continue to bill Allstate for No-Fault benefits payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or any future No-Fault claims submitted by ARES Medical Supplies LLC.

1065.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 22 U.S.C. §§ 2201 and 2202, declaring that ARES Medical Supplies LLC, at all relevant times, acted unlawfully when it (a) purportedly dispensed, and submitted charges for, medically unnecessary items of DME, including DME purportedly dispensed pursuant to improper and unlawful referrals made in violation of applicable law, and (b) submitted excessive charges to Allstate, and thus has no standing to submit or receive assigned No-Fault benefits under New York No-Fault Law.

## COUNT XXIII
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
#### (Against FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC)

1066.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1067.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

1068.   In view of its (a) billing for medically unnecessary healthcare services not causally related to the underlying motor vehicle accident, and (b) billing for healthcare services in excess of the amounts permitted under the applicable Fee Schedule, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC was not eligible for No-Fault reimbursement

under New York law during the relevant period, and thus has no standing to submit or receive assigned benefits under New York's No-Fault Law.

1069.   FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1070.   FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC continues to challenge Allstate's prior claim denials.

1071.   FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1072.   A justifiable controversy exists between Allstate and FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC because FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC rejects Allstate's ability to deny such claims.

1073.   Allstate has no adequate remedy at law.

1074.   FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC will also continue to bill Allstate for No-Fault benefits payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or any future No-Fault claims submitted by FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC.

1075.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 22 U.S.C. §§ 2201 and 2202, declaring that FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, at all relevant times, submitted inflated charges for medically unnecessary healthcare treatment and services not causally related to the purported underlying

motor vehicle accident and thus has no standing to submit or receive assigned No-Fault benefits under New York No-Fault Law.

**COUNT XXIV**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

1076.    Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1077.    To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

1078.    Additionally, under New York law, a provider of healthcare services is not eligible for No-Fault reimbursement if the provider fails to meet any licensing requirement necessary to perform the service in the state in which the service was performed (e.g., New Jersey).

1079.    In view of its (a) billing for medically unnecessary healthcare services not causally related to the underlying motor vehicle accident, (b) billing for healthcare services purportedly performed pursuant to improper and unlawful referrals of patients to Lewin PC made in violation of applicable law, and (c) billing for healthcare services in excess of the amounts permitted under the applicable Fee Schedule, Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey was not eligible for No-Fault reimbursement under New York law during the relevant period, and thus has no standing to submit or receive assigned benefits under New York's No-Fault Law.

179

1080.   Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1081.   Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey continues to challenge Allstate's prior claim denials.

1082.   Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1083.   A justifiable controversy exists between Allstate and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey because Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey rejects Allstate's ability to deny such claims.

1084.   Allstate has no adequate remedy at law.

1085.   Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey will also continue to bill Allstate for No-Fault benefits payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or any future No-Fault claims submitted by Jonathan

Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey.

1086.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 22 U.S.C. §§ 2201 and 2202, declaring that Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, at all relevant times, was (a) engaged in providing and billing for healthcare services pursuant to improper and unlawful patient referrals made in violation of applicable law, and (b) submitted inflated charges for medically unnecessary healthcare treatment and services not causally related to the purported underlying motor vehicle accident and thus has no standing to submit or receive assigned No-Fault benefits under New York No-Fault Law.

## COUNT XXV
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
### (Against Bergenfield Surgical Center, LLC)

1087.   Allstate re-alleges, re-pleads and incorporates by reference the allegations set forth in paragraphs 1-827 as if set forth fully herein.

1088.   To be eligible to receive assigned No-Fault benefits, an assignee provider must adhere to all applicable New York statutes that grant the authority to provide healthcare services in New York.

1089.   Additionally, under New York law, a provider of healthcare services is not eligible for No-Fault reimbursement if the provider fails to meet any licensing requirement necessary to perform the service in the state in which the service was performed (e.g., New Jersey).

1090.   In view of its (a) billing for facility fees in connection with services and procedures that were medically unnecessary and bore no causal connection to the underlying motor vehicle accident; (b) billing for facility services provided in connection with surgeries and other procedures purportedly performed pursuant to patient referrals in violation of applicable law; and (c) its submission of inflated facility fees in excess of the amounts permitted to be charged under the applicable Fee Schedule, Bergenfield Surgical Center, LLC was not eligible for No-Fault reimbursement under New York law during the relevant period, and thus has no standing to submit or receive assigned benefits under New York's No-Fault Law.

1091.   Bergenfield Surgical Center, LLC continues to submit assigned No-Fault claims to Allstate demanding payment, and other assigned No-Fault claims remain pending with Allstate.

1092.   Bergenfield Surgical Center, LLC continues to challenge Allstate's prior claim denials.

1093.   Bergenfield Surgical Center, LLC continues to commence litigation against Allstate seeking payment of No-Fault benefits allegedly due and owing.

1094.   A justifiable controversy exists between Allstate and Bergenfield Surgical Center, LLC because Bergenfield Surgical Center, LLC rejects Allstate's ability to deny such claims.

1095.   Allstate has no adequate remedy at law.

1096.   Bergenfield Surgical Center, LLC will also continue to bill Allstate for No-Fault benefits payments absent a declaration by this Court that its activities are unlawful, and that Allstate has no obligation to pay the pending, previously denied, and/or any future No-Fault claims submitted by Bergenfield Surgical Center, LLC.

1097.   Accordingly, Allstate requests a judgment pursuant to the Declaratory Judgment Act, 22 U.S.C. §§ 2201 and 2202, declaring that Bergenfield Surgical Center, LLC, at all relevant

times, was (a) engaged in providing and billing for facility services pursuant to improper and unlawful patient referrals made in violation of applicable law, and (b) submitted inflated charges for facility fees relating to medically unnecessary treatment and services not causally related to the purported underlying motor vehicle accident and thus has no standing to submit or receive assigned No-Fault benefits under New York No-Fault Law.

## XII.    DEMAND FOR RELIEF

WHEREFORE, plaintiffs, Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company (collectively, "Allstate" or "plaintiffs"), respectfully pray that judgment enter in their favor, as follows:

**COUNT I**
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**ADVANCED RECOVERY EQUIPMENT AND SUPPLIES LLC**
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.    AWARD Allstate's actual and consequential damages to be established at trial;

b.    AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.    GRANT injunctive relief enjoining the Count I Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.    GRANT all other relief this Court deems just.

## COUNT II
**VIOLATIONS OF 18 U.S.C. § 1962(d)**
**ADVANCED RECOVERY EQUIPMENT AND SUPPLIES LLC**
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.    AWARD Allstate's actual and consequential damages to be established at trial;

b.    AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.    GRANT injunctive relief enjoining the Count II Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.    GRANT all other relief this Court deems just.

## COUNT III
**VIOLATIONS OF 18 U.S.C. § 1962(c)**
**ARES MEDICAL SUPPLIES LLC**
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.    AWARD Allstate's actual and consequential damages to be established at trial;

b.    AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.    GRANT injunctive relief enjoining the Count III Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.     GRANT all other relief this Court deems just.

## COUNT IV
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### ARES MEDICAL SUPPLIES LLC
**(Against Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.     AWARD Allstate's actual and consequential damages to be established at trial;

b.     AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.     GRANT injunctive relief enjoining the Count IV Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.     GRANT all other relief this Court deems just.

## COUNT V
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### FJ ORTHOPAEDICS AND PAIN MANAGEMENT PLLC
### f/k/a FJ ORTHOPAEDICS, PLLC
**(Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

a.     AWARD Allstate's actual and consequential damages to be established at trial;

b.     AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.     GRANT injunctive relief enjoining the Count V Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.      GRANT all other relief this Court deems just.


## COUNT VI
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### FJ ORTHOPAEDICS AND PAIN MANAGEMENT PLLC
### f/k/a FJ ORTHOPAEDICS, PLLC
### (Against Steven Horowitz, M.D., Jonathan Lewin, M.D.
### Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.      GRANT injunctive relief enjoining the Count VI Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.      GRANT all other relief this Court deems just.


## COUNT VII
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### JONATHAN LEWIN, MD P.C. a/k/a CENTER FOR MUSCULOSKELETAL
### DISORDERS a/k/a CENTER FOR PAIN MANAGEMENT OF NEW JERSEY a/k/a
### CENTER FOR SPINAL DISORDERS OF NEW JERSEY a/k/a CENTER FOR HAND
### DISORDERS OF NEW JERSEY
### (Against Steven Horowitz, M.D., Jonathan Lewin, M.D.,
### Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.      GRANT injunctive relief enjoining the Count VII Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.      GRANT all other relief this Court deems just.

186

## COUNT VIII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
**JONATHAN LEWIN, MD P.C. a/k/a CENTER FOR MUSCULOSKELETAL DISORDERS a/k/a CENTER FOR PAIN MANAGEMENT OF NEW JERSEY a/k/a CENTER FOR SPINAL DISORDERS OF NEW JERSEY a/k/a CENTER FOR HAND DISORDERS OF NEW JERSEY**
**(Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

a.    AWARD Allstate's actual and consequential damages to be established at trial;

b.    AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.    GRANT injunctive relief enjoining the Count VIII Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.    GRANT all other relief this Court deems just.

## COUNT IX
### VIOLATIONS OF 18 U.S.C. § 1962(c)
**BERGENFIELD SURGICAL CENTER, LLC**
**(Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)**

a.    AWARD Allstate's actual and consequential damages to be established at trial;

b.    AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.    GRANT injunctive relief enjoining the Count IX Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.    GRANT all other relief this Court deems just.

## COUNT X
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### BERGENFIELD SURGICAL CENTER, LLC
**(Against Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)**

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.      GRANT injunctive relief enjoining the Count X Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.      GRANT all other relief this Court deems just.

## COUNT XI
### VIOLATIONS OF 18 U.S.C. § 1962(c)
### INTERSTATE CAPITAL PARTNERS, LLC
**(Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.      GRANT injunctive relief enjoining the Count XI Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.      GRANT all other relief this Court deems just.

## COUNT XII
### VIOLATIONS OF 18 U.S.C. § 1962(d)
### INTERSTATE CAPITAL PARTNERS, LLC
**(Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate's treble damages pursuant to 18 U.S.C. § 1964, interests, costs, and attorneys' fees;

c.      GRANT injunctive relief enjoining the Count XII Defendants from engaging in the wrongful conduct alleged in the Complaint; and

d.      GRANT all other relief this Court deems just.

## COUNT XIII
## COMMON-LAW FRAUD
**(Against Advanced Recovery Equipment and Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of defendants' illegal conduct;

c.      AWARD Allstate its costs in defending No-Fault collection suits filed by defendants seeking payment of false and fraudulent invoices; and

d.      GRANT all other relief this Court deems just.

## COUNT XIV
## COMMON-LAW FRAUD
**(Against ARES Medical Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of defendants' illegal conduct;

c.      AWARD Allstate its costs in defending No-Fault collection suits filed by defendants seeking payment of false and fraudulent invoices; and

d.      GRANT all other relief this Court deems just.

## COUNT XV
## COMMON-LAW FRAUD
**(Against Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of defendants' illegal conduct;

c.      AWARD Allstate its costs in defending No-Fault collection suits filed by defendants seeking payment of false and fraudulent invoices; and

d.      GRANT all other relief this Court deems just.

## COUNT XVI
## COMMON-LAW FRAUD
**(Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)**

a.      AWARD Allstate's actual and consequential damages to be established at trial;

b.      AWARD Allstate its costs, including, but not limited to, investigative costs incurred in the detection of defendants' illegal conduct;

c.    AWARD Allstate its costs in defending No-Fault collection suits filed by defendants seeking payment of false and fraudulent invoices; and

d.    GRANT all other relief this Court deems just.

## COUNT XVII
### UNJUST ENRICHMENT
**(Against Advanced Recovery Equipment and Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.    AWARD Allstate's actual and consequential damages to be established at trial; and

b.    GRANT all other relief this Court deems just.

## COUNT XVIII
### UNJUST ENRICHMENT
**(Against ARES Medical Supplies LLC, Daniel Horowitz, Steven Horowitz, M.D., Raz Winiarsky, M.D., Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, and Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

a.    AWARD Allstate's actual and consequential damages to be established at trial; and

b.    GRANT all other relief this Court deems just.

## COUNT XIX
### UNJUST ENRICHMENT
**(Against Brooklyn Premier Orthopedics and Pain Management PLLC f/k/a Brooklyn Premier Orthopedics, PLLC, FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., and Jonathan Simhaee, M.D.)**

a.    AWARD Allstate's actual and consequential damages to be established at trial; and

b.    GRANT all other relief this Court deems just.

**COUNT XX**
**UNJUST ENRICHMENT**
**(Against Bergenfield Surgical Center, LLC, Steven Horowitz, M.D., Jonathan Lewin, M.D., Raz Winiarsky, M.D., Jonathan Simhaee, M.D., and Interstate Capital Partners, LLC)**

a.    AWARD Allstate's actual and consequential damages to be established at trial; and

b.    GRANT all other relief this Court deems just.

**COUNT XXI**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against Advanced Recovery Equipment and Supplies LLC)**

(a) DECLARE that Advanced Recovery Equipment and Supplies LLC, at all relevant times, purportedly dispensed medically unnecessary items of DME pursuant to improper self-referrals, and submitted excessive charges to Allstate, and thus has no standing to submit or receive assigned benefits under New York's No-Fault Law.

(b) DECLARE that Advanced Recovery Equipment and Supplies LLC's activities are unlawful;

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied and/or future No-Fault insurance claims submitted by Advanced Recovery Equipment and Supplies LLC; and

(d) GRANT all other relief this Court deems just.

**COUNT XXII**
**DECLARATORY RELIEF UNDER 28 U.S.C. § 2201**
**(Against ARES Medical Supplies LLC)**

192

(a) DECLARE that ARES Medical Supplies LLC, at all relevant times, purportedly dispensed medically unnecessary items of DME pursuant to improper self-referrals, and submitted excessive charges to Allstate, and thus has no standing to submit or receive assigned benefits under New York's No-Fault Law.

(b) DECLARE that ARES Medical Supplies LLC's activities are unlawful;

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied and/or future No-Fault insurance claims submitted by ARES Medical Supplies LLC; and

(d) GRANT all other relief this Court deems just.

## COUNT XXIII
## DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC)**

(a) DECLARE that FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC, at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physician services in New York;

(b) DECLARE that FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC's activities are unlawful;

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied and/or future No-Fault insurance claims submitted by FJ Orthopaedics and Pain Management PLLC f/k/a FJ Orthopaedics, PLLC; and

(d) GRANT all other relief this Court deems just.

## COUNT XXIV
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey)**

(a) DECLARE that Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey, at all relevant times, has been operated in violation of at least one New York state and/or local licensing requirement necessary to provide and bill for professional physician services in New York and New Jersey;

(b) DECLARE that Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey's activities are unlawful;

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied and/or future No-Fault insurance claims submitted by Jonathan Lewin, MD P.C. a/k/a Center for Musculoskeletal Disorders a/k/a Center for Pain Management of New Jersey a/k/a Center for Spinal Disorders of New Jersey a/k/a Center for Hand Disorders of New Jersey; and

(d) GRANT all other relief this Court deems just.

## COUNT XXV
### DECLARATORY RELIEF UNDER 28 U.S.C. § 2201
**(Against Bergenfield Surgical Center, LLC)**

(a) DECLARE that Bergenfield Surgical Center, LLC, at all relevant times, has been operated in violation of at least one New Jersey state and/or local licensing requirements necessary to provide services as an ambulatory care facility in New Jersey

and in violation of at least one New York state and/or local licensing requirement necessary to bill for such facility services under New York's No-Fault laws;

(b) DECLARE that Bergenfield Surgical Center, LLC's activities are unlawful;

(c) DECLARE that Allstate has no obligation to pay any pending, previously-denied and/or future No-Fault insurance claims submitted by Bergenfield Surgical Center, LLC; and

(d) GRANT all other relief this Court deems just.

## **JURY TRIAL DEMAND**

The plaintiffs demand a trial by jury on all claims.

KING, TILDEN, MCETTRICK & BRINK, P.C.

*/s/ Richard D. King, Jr.*
_____
Richard D. King, Jr. (RK8381)
rking@ktmpc.com
Nathan A. Tilden (NT0571)
ntilden@ktmpc.com
Michael W. Whitcher (MW 7455)
mwhitcher@ktmpc.com
Jasmine G. Vieux (JG1805)
jvieux@ktmpc.com
Caitlin F. Keresey (CK3994)
ckeresey@ktmpc.com
100 Ring Road West, Suite 211
Garden City, NY 11530
Ph: (347) 710-0050

Attorneys for the Plaintiffs,
*Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company*

Dated: September 1, 2022